# EXHIBIT A

**EFiled: Jan 21 2011 3:53PM**
**Transaction ID 35510697**
**Case No. N11C-01-220 JRJ**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| JONATHAN AND TRUDE YARGER, | ) | |
| a married couple, and JAMES CRAMER, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| ING BANK, FSB, D/B/A ING DIRECT, | ) | |
| | ) | |
| Defendant. | ) | |

### PRAECIPE

PLEASE ISSUE SUMMONS to the Sheriff of New Castle County for service of the

Summons and Complaint upon the defendant at the address set forth below:

> ING BANK, FSB, d/b/a ING DIRECT
> c/o Kristine Wellman, General Counsel
> ING Bank, fsb
> 1 S. Orange Street
> Wilmington, DE 19801

Jeffrey S. Goddess (No. 630)
Rosenthal, Monhait & Goddess, P.A.
Suite 1400, 919 Market Street
P. O. Box 1070
Wilmington, DE 19899
(302) 656-4433
*Attorney for Plaintiffs*

January 21, 2011

EFiled: Jan 21 2011 3:53PM
Transaction ID 35510697
Case No. N11C-01-220 JRJ

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| JONATHAN AND TRUDE YARGER, | ) | |
| a married couple, and JAMES CRAMER, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | |
| ING BANK, FSB D/B/A ING DIRECT, | ) | TRIAL BY JURY DEMANDED |
| | ) | |
| Defendant. | ) | |

**THE STATE OF DELAWARE,**
**TO THE SHERIFF OF NEW CASTLE COUNTY:**
**YOU ARE COMMANDED:**

To summon the above-named defendant so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall file with the Prothonotary's Office and serve upon Jeffrey S. Goddess, Esquire, plaintiffs' attorney, whose address is Suite 1401, 919 Market Street, P. O. Box 1070, Wilmington, Delaware 19899, an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon defendant a copy hereof of the Complaint (and of the affidavit of demand if any has been filed by plaintiff).

Dated: _____

_____
Prothonotary

_____
Per Deputy

**TO THE ABOVE NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to file with the Prothonotary's Office and serve on plaintiffs' attorney named above an answer to the complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the complaint (or in the affidavit of demand, if any).

_____
Prothonotary

_____
Per Deputy

EFiled: Jan 21 2011 3:53PM
Transaction ID 35510697
**SUPERIOR COURT** Case No. N11C-01-220 JRJ
**CIVIL CASE INFORMATION STATEMENT (CIS)**

COUNTY: <u>N</u>   K   S          CIVIL ACTION NUMBER: _____

| | |
|---|---|
| **CAPTION:**<br><br>JONATHAN AND TRUDE YARGER, a married couple, and JAMES CRAMER,<br><br>    Plaintiffs,<br><br>    v.<br><br>ING BANK, FSB, D/B/A ING DIRECT,<br><br>    Defendants. | **Civil Case Code:** <u>CCLD</u><br><br>**Civil Case Type:** <u>Complex</u> <u>Commercial Litigation</u> <u>Division</u><br>    (SEE REVERSE SIDE FOR CODE AND TYPE)<br><br>**NAME AND STATUS OF PARTY FILING DOCUMENT:**<br><br>JONATHAN AND TRUDE YARGER, a married couple, and JAMES CRAMER, Plaintiffs<br><br>**DOCUMENT TYPE:** (E.G., COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>CLASS ACTION COMPLAINT<br><br>    **JURY DEMAND** <u>X</u> YES   __ NO |
| **ATTORNEY NAME(S):**<br><br>Jeffrey S. Goddess, Esquire<br><br>**ATTORNEY ID(S):** 630<br><br>**FIRM NAME:**<br><br>Rosenthal, Monhait & Goddess, P.A.<br><br>**ADDRESS:**<br><br>919 Market Street, Suite 1401<br>P. O. Box 1070<br>Wilmington, DE 19899-1070<br><br>**TELEPHONE NUMBER:**<br>(302) 656-4433<br><br>**FAX NUMBER:**<br>(302) 658-7567<br><br>**E-MAIL ADDRESS:**<br>jgoddess@rmgglaw.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS<br><br>_____<br>_____<br>_____<br><br>EXPLAIN THE RELATIONSHIP(S):<br><br>_____<br>_____<br>_____<br>_____<br>_____<br>_____<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>_____<br>_____<br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGES) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

Revised 3/2008

EFiled: Jan 21 2011 3:53PM
Transaction ID 35510697
Case No. N11C-01-220 JRJ

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

|  |  |
|---|---|
| JOHNATHAN AND TRUDE YARGER, a married couple, and JAMES CRAMER<br><br>Plaintiffs,<br><br>v.<br><br>ING BANK, FSB, D/B/A ING DIRECT,<br><br>Defendants. | C.A. No. _____<br><br><br>TRIAL BY JURY DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiffs Johnathan and Trude Yarger, a married couple, and James Cramer ("Plaintiffs"), by and through their undersigned counsel, upon knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

1.     Plaintiffs bring this action on behalf of themselves and all other similarly-situated individual borrowers (the "Class" or "Class members") who purchased an Easy Orange Loan or Orange Loan home mortgage ("Orange Loan") from defendant ING Direct (the operating name of ING Bank, fsb) ("ING"), both of which necessarily included and were marketed with a guaranteed right to a flat-fee refinance for $500 or $750 for the remaining life of the loan (the "Rate Renew Guarantee").

### BACKGROUND

2.     Beginning in or around 2006, the precise date of which Plaintiffs are unaware, ING began marketing Orange Loans with the Rate Renew Guarantee.

3.     The Rate Renew Guarantee is extremely valuable because it allows borrowers to refinance at any time to take advantage of better rates at a low, fixed cost, whereas refinancing most mortgages is expensive and potentially cost prohibitive.

4.     A low-cost, guaranteed-flat-fee refinance gives homeowners peace of mind, especially in circumstances where, as here, they likely will require refinancing before the loan term ends.  The Orange Loans came with fixed-rate interest for a five- or seven-year term.  Once that fixed-rate interest period expires, however, either:  (a) the entire balance of the loan is due in one lump-sum payment, or (b) the loan reverts to an adjustable-rate mortgage.

5.     Mortgage loans that provide for a short period of fixed-rate interest before requiring repayment of the remaining balance in full are commonly referred to as "Balloon Loans" or "Reset Mortgages."  The overwhelming majority of borrowers of such Balloon Loans will be unable to pay the full balance owing on their mortgage loans after the fixed-rate period expires.  As a result, most borrowers of Balloon Loans must refinance their loans before the entire amount becomes due.

6.     Adjustable Rate Mortgage loans ("ARMs") provide for a short period of fixed-rate interest before requiring an adjustment, usually upwards, in the interest rate.  As with Balloon Loans, many borrowers with ARMs will face difficulties paying the monthly mortgage payments under the adjusted rate after the fixed-rate period expires.  As a result, most borrowers with ARMs refinance their loans before the fixed-rate period expires.

7.     Due to the fact that the Orange Loans result in either a Balloon Loan or ARM after just five or seven years, the ability of Plaintiffs and Class members to refinance at a low, fixed cost is particularly important because, absent the ability to refinance, they will face difficulties paying the mortgage loan once the balloon payment becomes due or the interest rate adjusts.

8.     Despite ING's express and material representation to Plaintiffs and all Class members that Orange Loans come with a Rate Renew Guarantee, ING has not honored

and does not honor its Rate Renew Guarantee. Instead, when Plaintiffs and Class members like them have sought to take advantage of the Rate Renew Guarantee, ING has denied them the ability to do so outright on the basis that they do not qualify, and/or charged them an amount in excess of the promised flat fee to do so.

9.      All of the claims asserted herein arise out of ING's express and material representations regarding the Rate Renew Guarantee feature of the Orange Loans, upon which Plaintiffs and Class members justifiably relied in deciding to purchase a mortgage from ING instead of another lender.

10.      On information and belief, ING advertised and marketed the Orange Loans as having a Rate Renew Guarantee in many places, including: (1) on its website, (2) in monthly billing statements sent to ING borrowers, and (3) in targeted mailings to ING borrowers. Sample copies of such express representations from ING's website and marketing materials, in which ING represented and advertised to Plaintiffs and the Class that the Orange Loans had a Rate Renew Guarantee, are attached as Exhibits A and B.

11.      One ING Easy Orange advertisement promised:

> Extend your fixed-rate period any time after the first six months for another 5 years by locking in at the current rate for only $750.
>
> *      *      *
>
> Read the fine print, and pay attention to asterisks (you'll notice we don't use any).

Exh. A.

12.      ING's website described the Orange Loans as follows:

**The mortgage for Savers**

> Easy Orange is not your ordinary mortgage – it's all electronic and has a great 5 year fixed rate, with a payment based on 30 years. At the end of the fixed rate term, the remaining balance will be due. But then, we offer Rate Renew, which provides an opportunity to qualify to relock your rate and extend your fixed rate period for

> another 5 years at the Easy Orange rate at that time.  With Easy Orange, you'll have your mortgage paid off in no time.
>
> **Rate Renew**
>
> No need to refinance.  Just qualify and relock your rate anytime and extend your fixed rate for another 5 years at the Easy Orange rate at that time for a flat charge of $750.

Exh. B.

13.    The marketing materials with the Rate Renew Guarantee advertised the period of repayment, but failed to disclose all required loan details.

14.    In addition to uniform website and marketing materials, on information and belief, ING representatives followed standardized scripts that explained ING's Rate Renew Guarantee to customers who spoke with ING representatives by telephone.

15.    On information and belief, ING followed a uniform practice of recording all customer calls in which ING representatives reiterated ING's Rate Renew Guarantee.

16.    ING intended that Plaintiffs and Class members rely on the Rate Renew Guarantee in making their decision to purchase the Orange Loans.

17.    ING's representations and promises regarding the Rate Renew Guarantee were material, in that Plaintiffs and Class members would not have purchased the Orange Loans if they had known that ING would not honor the Rate Renew Guarantee.

18.    When they purchased their Orange Loans, Plaintiffs and Class members justifiably relied upon ING's representations and promises and reasonably expected their Orange Loans to have the Rate Renew Guarantee and that ING would honor the Rate Renew Guarantee for the life of the mortgage, as ING promised.

19.    Plaintiffs' experiences – mirroring those of other borrowers of Orange Loans—reveal that ING's representations and promises were false, in that ING has not honored and does not honor its Rate Renew Guarantee.

20.     Instead of honoring the Rate Renew Guarantee, ING instead: (1) quietly changed the "flat-fee" promised to the amount of each loan holder's monthly mortgage payment, a difference of up to several thousands of dollar per refinance, and (2) added qualification requirements to the Rate Renew Guarantee not described in its advertising which, as noted above, specifically represented that ING "do[es]n't use any" of the typical "fine print" or "asterisks" to qualify its promises.

21.     As a direct result of ING's false and misleading statements regarding the Rate Renew Guarantee, Plaintiffs and Class members purchased Orange Loans with fixed-rate terms that will expire within five or seven years of origination unless they refinance, for which ING has refused to honor the Rate Renew Guarantees.

22.     Plaintiffs and Class members have been damaged in that they: (a) already have paid ING more than the promised flat fee to refinance their Orange Loans, or (b) will be required to pay more than the promised flat fee to refinance their Orange Loans if they wish to avoid the financial hardship of paying off the entire balance of their loan (as a result of the Balloon Loan nature of the mortgages), or alternatively having their interest rate reset (as a result of the ARM feature of the mortgages), or (c) have incurred and/or are reasonably certain to incur increased finance costs as a result of their inability to refinance their Orange Loans. In each instance, Plaintiffs and Class members have suffered, or are reasonably certain to suffer, monetary damages as a result of ING's false promises.

23.     Plaintiffs and Class members are entitled to damages in the amount of: (1) the money they paid ING to refinance beyond the promised flat fee, (2) the amount of increased loan payments due to their inability to refinance, and/or (3) increased finance costs resulting from their inability to take advantage of the promised Rate Renew Guarantee, as well as (4) a declaration that they are entitled to the full benefit of the Rate Renew Guarantee for the life of their Orange Loans.

## PARTIES

24.     Plaintiffs Johnathan and Trude Yarger ("the Yargers") are married and residents of the State of Minnesota.  On or around May 15, 2006, the Yargers jointly closed an Orange Loan with a fixed interest rate for the first five years.

25.     Plaintiff James Cramer ("Cramer") was and is a resident of the State of Colorado.  In or around November 2008, Plaintiff Cramer originally closed an Orange Loan with a fixed interest rate for the first five years.

26.     Defendant ING Bank, FSB, also known as ING Direct ("ING"), is a U.S. federal savings bank chartered by the Office of Thrift Supervision.  ING is headquartered in Wilmington, Delaware, with satellite locations throughout the United States.  ING claims to be one of the world's largest online banks.  Like most banks, ING has a division dedicated to mortgage loans.  As a mortgage company, ING works with prospective borrowers to provide them with loans against either a new home for purchase or an existing home when refinancing.

27.     Upon information and belief, at all relevant times, ING was present and transacted, solicited, and conducted business in the State of Delaware, through its employees, agents and/or sales representatives, and derived substantial revenue from such business.

28.     At all relevant times, ING expected or should have expected that its acts and omissions would have consequences within the United States and the State of Delaware.

## FACTUAL ALLEGATIONS

### Johnathan and Trude Yarger's Experience

29.     Plaintiffs Johnathan and Trude Yarger, prior to closing their home mortgage with ING, had been long-time customers of another, well-known international bank. ING offered them an Orange Loan with a fixed interest rate for the first five years that was competitive with other banks.  ING also offered something that the other banks did not – a guaranteed, $750 flat-fee refinance for the life of the loan without ever reapplying for a mortgage.

30.     The Yargers first learned about ING Orange Loans with the Rate Renew Guarantee from their mortgage broker.  The Yargers chose the Orange Loan because of ING's unique Rate Renew Guarantee offer.

31.     In or around May 2007, the Yargers received a postcard offering a $750 Rate Renew Guarantee.

32.     Given the continually changing interest rates and the significant costs associated with refinancing a home loan, the Yargers chose to keep their home loan with ING because of the Rate Renew Guarantee, as opposed to going to another lender to get a more traditional loan.

33.     In or around May 2008, the Yargers contacted ING to request the "rate renew" option.  The Yargers recall that ING recorded this phone call.  In or around June 2008, the Yargers paid $750 to reset a five-year Orange Loan.  An ING representative assured the Yargers that the Rate Renew Guarantee still would be available for the life of the loan and would only affect the margin and rate caps of the loan, if applicable, at the time(s) the Yargers renewed.  The Yargers were also assured that this feature was not like a traditional refinance where they would need to reapply, have an appraisal, and have their credit scores pulled, as part of the normal underwriting process.  The Rate Renew Guarantee purported to allow them to modify the loan at any time without refinancing

34.     In September 2009, the Yargers contacted ING to again take advantage of the Rate Renew Guarantee. The Yargers recall that ING recorded this phone call.  Much to their surprise, ING informed the Yargers that the rules had changed; instead of a flat $750 charge, they would now be charged the equivalent of one month's mortgage payment, approximately $788.  The Yargers realized that if they wanted to take advantage of reduced interest rates they would be stuck paying the $788.

35.     In October 2009, the Yargers finalized the refinance of their home loan and paid ING $788 to do so, not the $750 flat fee that ING promised them.  The Yargers thus

suffered $38 in monetary damages as a result of ING's October 2009 failure to honor the Rate Renew Guarantee.

36.     On August 23, 2010, the Yargers contacted ING Direct to request paperwork for the "rate renew" option again.  The Yargers recall that ING recorded this phone call.  ING's representative told the Yargers that they "no longer qualified" for a flat-fee rate as there were new qualification requirements for condominiums.  Instead, ING's representative told the Yargers that new loan-to-value regulations required that the Yargers pay down the loan balance by $34,900 or having the property assessed with a value over $177,800 to be eligible for the "rate renew" option.  The Yargers are unable to satisfy either condition.

37.     After many frustrating phone calls with ING representatives to determine why the Rate Renew Guarantee was not being honored, the Yargers realized that they could not take advantage of reduced interest rates by refinancing under the Rate Renew Guarantee due to ING's change in requirements.  As a result of ING's refusal to honor its Rate Renew Guarantee, the Yargers have suffered, and will continue to suffer, damages in the amount of the difference in interest payments they are required to make and those they would make had they been permitted by ING to refinance in keeping with the terms of the Rate Renew Guarantee.

### Plaintiff Cramer's Experience

38.     Prior to closing his home mortgage with ING, Plaintiff Cramer had been a long-time customer of another, well-known international bank.  ING offered him an Orange Loan that was competitive with other banks.  ING also offered something that the other banks did not – a guaranteed, $750 flat-fee refinance for the life of the loan.

39.     Mr. Cramer spoke with ING representatives many times during the process of finalizing and closing his home loan. On several occasions, Mr. Cramer asked representatives of ING to confirm that his loan did in fact have a $750 flat-rate Rate Renew Guarantee for the life of the loan.  Each time the ING representatives specifically confirmed the terms to be the same.

40.    Given the continually changing interest rates and the significant costs associated with refinancing a home loan, Mr. Cramer chose to purchase a home loan through ING because of the Rate Renew Guarantee.

41.    In or around October 2009, Mr. Cramer contacted ING to take advantage of ING's Rate Renew Guarantee. ING's representative told Mr. Cramer that he was not eligible for the Rate Renew Guarantee.

42.    In or around November 2009, Mr. Cramer again contacted ING to ask about ING's Rate Renew Guarantee. ING's representative told Mr. Cramer that he could renew his Orange Mortgage through ING, but that the cost would be approximately $2500, not the $750 ING promised. ING representatives told Mr. Cramer several reasons why ING purportedly could not honor the Rate Renew Guarantee, including that the ING representatives who offered him the $750 Rate Renew Guarantee had not been properly trained and that ING "never put this [$750 Rate Renew Guarantee] in writing."

43.    Mr. Cramer was livid and made several calls to ING's headquarters to complain.

44.    After many frustrating phone calls with ING representatives to determine why his Rate Renew Guarantee was not being honored, Mr. Cramer realized that if he wanted to take advantage of reduced interest rates he would be stuck paying the $2,500.

45.    In or around December 2009, Mr. Cramer finalized the refinance of his home loan and paid ING $2,500 to do so, not the $750 flat-fee that ING promised him. Mr. Cramer thus suffered $1,750 in monetary damages as a result of ING's failure to honor the Rate Renew Guarantee.

46.    In or around September 2010, Mr. Cramer contacted ING to request paperwork for the "rate renew" option again.

47.    ING's representative told Mr. Cramer that the rate renew fee had risen yet again to approximately $4,500. Mr. Cramer again explained his many interactions with ING

and ING's repeated promise of a $750 Rate Renew Guarantee.  ING still refused to honor the

Rate Renew Guarantee.

       48.     After several calls, Mr. Cramer was prepared to send ING a check for

$4,500 to take advantage of lower interest rates, but advised ING that he would hire an attorney

if ING did not honor its Rate Renew Guarantee.  Only after Mr. Cramer made this statement did

an ING representative state to Mr. Cramer that ING would allow Mr. Cramer a "one-time only"

rate renew for $750.  As a result, Mr. Cramer lost the ability to take advantage of future

refinancing under the Rate Renew Guarantee.

## FRAUD ALLEGATIONS

       49.     Absent discovery, Plaintiffs are unaware of, and unable through

reasonable investigation to obtain, the true names and identities of those individuals at ING

responsible for the false and misleading statements regarding the Rate Renew Guarantee.  ING

necessarily is in possession of all of this information.

       50.     Plaintiffs make the following specific fraud allegations with as much

specificity as possible absent access to the information necessarily available only to ING:

      a.      ***Who***:  Defendant ING.

      b.      ***What***:  ING expressly represented that Orange Loans come with a

Rate Renew Guarantee (that ING has not honored) by stating, *inter alia*:

> Extend your fixed-rate period any time after the first six months
> for another 5 years by locking in at the current rate for only $750.
>
>    *     *     *
>
> [W]e offer Rate Renew, which provides an opportunity to qualify
> to relock your rate and extend your fixed rate period for another 5
> years at the Easy Orange rate at that time.
>
> No need to refinance.  Just qualify and relock your rate anytime
> and extend your fixed rate for another 5 years at the Easy Orange
> rate at that time for a flat charge of $750

Exhs. A-B.

    c.    *When*: Starting no later than 2006, and on an ongoing basis through at least April 2010.

    d.    *Where*: On ING's website and in advertisements and letters distributed to Plaintiffs, Class members, and the public.

    e.    *How*: ING has affirmatively misrepresented that the Orange Loans come with a Rate Renew Guarantee (that ING has not honored).

    f.    *Why*: For the purpose of inducing Plaintiffs and Class members to purchase the Orange Loans, rather than choosing competitors' mortgage loans. Had ING disclosed the truth, Plaintiffs and Class members would not have purchased their home loans from ING.

## TOLLING OF STATUTES OF LIMITATION

51.    All applicable statutes of limitation are and have been tolled by ING's misrepresentations and fraudulent concealment of the truth about the Rate Renew Guarantee.

52.    Plaintiffs and Class members could not, in the exercise of reasonable diligence, have discovered the falsity of ING's representations regarding the Rate Renew Guarantee unless and until they sought to take advantage of it and ING refused to honor it. As such, all statutes of limitation are and have been tolled until such date(s) as ING refused to honor the Rate Renew Guarantee.

## CLASS ACTION ALLEGATIONS

53.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as Class members pursuant to Rule 23 of the Delaware Superior Court Rules of Civil Procedure.

54.    The Class is defined and proposed as follows:

All individuals who purchased an Easy Orange or Orange Loan from ING with a Rate Renew Guarantee.

55.     Excluded from the Class are ING, any entity in which ING has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (3) claims for emotional distress.

56.     Plaintiffs reserve the right to modify the Class definition after discovery and at any time up to and including trial.

57.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Delaware Superior Court Rule of Civil Procedure Rule 23.

58.     The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of Class members is presently unknown to Plaintiffs, but it is believed to comprise tens of thousands of homeowners who purchased Orange Loans, making joinder impractical. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased an ING Orange Loan with a Rate Renew Guarantee.

59.     Common questions of fact and law exist as to all Class members, which predominate over questions affecting only individual Class members. These include, but are not limited to, the following:

a.     Whether ING misrepresented to Plaintiffs and the Class that the Orange Loans came with a Rate Renew Guarantee;

b.     Whether ING was and is obligated to honor the terms of the Rate Renew Guarantee;

c.     Whether ING advertised the Orange Loans with the intent not to sell them as advertised or represented;

d.     Whether ING advertised the Orange Loans without all of the required disclosures under the Truth in Lending Act, 15 U.S.C. § 1600, *et seq.*;

-12-

e.      Whether ING's representations about the Orange Loans were material;

f.      Whether ING's representations about the Orange Loans were fraudulent;

g.      Whether Plaintiffs' and Class members' reliance on those representations was justifiable;

h.      Whether Plaintiffs and the Class are entitled to damages and or declaratory relief;

i.      Whether ING was unjustly enriched at the expense of Plaintiffs and Class members.

60.     Plaintiffs' claims are typical of the claims of other Class members, in that Plaintiffs, like all Class members, were sold Orange Loans with a Rate Renew Guarantee that ING has not honored.

61.     The factual bases of ING's misconduct are common to all Class members and represent a common thread of fraudulent misconduct resulting in injury to all Class members. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other Class members.

62.     Plaintiffs are adequate representatives of the Class because they are Class members and do not have interests that conflict with those of the other Class members they seek to represent. Plaintiffs are represented by experienced and able counsel who have litigated numerous class action lawsuits, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and Plaintiffs' counsel can fairly and adequately protect the interests of all Class members.

63.     A class action is the best available method for the efficient adjudication of this litigation. It would be impracticable and undesirable for each member of the Class who has suffered or may suffer harm to bring a separate action for these claims. In addition, the

commencement of separate actions would put a substantial and unnecessary burden on the courts, while a single class action can determine the rights of all Class members with judicial economy.

64.     Damages to the Class exceed one million dollars.

### COUNT I
### (Violation of the Delaware's Consumer Fraud Act,
### 6 Del. C. §§ 2511-27, 2580-84)

65.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

66.     Defendant ING is a "person" as defined by 6 Del. C. §§ 2511(7).

67.     The Orange Loans are "merchandise" within the meaning of 6 Del. C. §§ 2511(6).

68.     The Rate Renew Guarantee is an "advertisement" within the meaning of 6 Del. C. §§ 2511(1).

69.     Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513.

70.     ING violated the Delaware Consumer Fraud Act's proscription against the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact by:  (a) affirmatively misrepresenting at all times to Plaintiffs and Class members that the Orange Loans come with a Rate Renew Guarantee when, in fact, ING has not honored that Rate Renew

Guarantee, and/or (b) concealing from Plaintiffs and all Class members that it would not honor the Rate Renew Guarantee.

71.     ING intended that Plaintiffs and members of the Proposed Class would rely upon its Rate Renew Guarantee when purchasing the Orange Loans.

72.     ING's Rate Renew Guarantee occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as:  (1) at least of the some deceiving conduct that violates 6 Del. C. § 2513 originated, arose, was directed, and emanated from Delaware, and/or (2) the presence of ING in Delaware is sufficient grounds for the Delaware Consumer Fraud Act to apply.

73.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

74.     In addition to compensatory damages, Plaintiffs and the Class are entitled to punitive damages because ING's conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

75.     Elderly or disabled Class members are entitled to a civil penalty of $10,000, court costs, attorneys' fees, and treble damages for each violation of the Delaware Consumer Fraud Act. 6 Del. C. §§ 2581, 2583.

## COUNT II
### (Common Law Fraud)

76.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

77.     ING misrepresented material facts to, and/or concealed material facts from, Plaintiffs and Class members by representing that the Orange Loans came with a Rate Renew Guarantee and/or not disclosing that it would not honor that Guarantee.

78.     ING's representation that the Orange Loans came with a Rate Renew Guarantee was false.

79.     ING knew its representation that the Orange Loans came with a Rate Renew Guarantee was false, and/or was reckless with respect to that representation.

80.     ING intended for Plaintiffs and Class members to rely on its representations about the Rate Renew Guarantee and to defraud them to induce them to purchase Orange Loans.

81.     Plaintiffs and Class members were unaware of the fact that ING would not honor the Rate Renew Guarantee.

82.     ING's representations were made with a reckless indifference to the truth that they would not honor the Rate Renew Guarantee to all persons.

83.     Plaintiffs and Class members justifiably relied upon ING's representations and/or concealment of material facts, as evidenced by their purchase of Orange Loans with the Rate Renew Guarantee. The Rate Renew Guarantee was the primary selling point of the Orange Loans: had Plaintiffs and Class members known that ING would not honor the Rate Renew Guarantee, they would have chosen another lender.

84.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

85.     In addition to compensatory damages, Plaintiffs and the Class are entitled to punitive damages because ING's conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

## COUNT III
### (Promissory Estoppel)

86.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     ING represented and promised to Plaintiffs and Class members that the Orange Loans came with a Rate Renew Guarantee.

88.     Plaintiffs and Class members were unaware of the fact that ING would not honor the Rate Renew Guarantee.

89.     Plaintiffs and Class members justifiably relied on ING's Rate Renew Guarantee, as evidenced by their purchase of Orange Loans with the Rate Renew Guarantee. The Rate Renew Guarantee was the primary selling point of the Orange Loans:  had Plaintiffs and Class members known that ING would not honor the Rate Renew Guarantee, they would have chosen another lender.

90.     ING did not honor its Rate Renew Guarantee to Plaintiffs and Class members.

91.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

## COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

92.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.     As a result of ING's misrepresentations regarding the Rate Renew Guarantee, each Plaintiff and Class member entered into, and duly executed, a binding contract with ING in the form of Orange Loans.

94.     The implied covenant of good faith and fair dealing obligates ING to honor the Rate Renew Guarantee even if the Guarantee was not part of the express terms of the Orange Loans.

95.     ING breached this covenant by not honoring the Rate Renew Guarantee.

96.     As a direct and proximate result of ING's breach of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

-17-

## COUNT V
### (Violation of the Truth in Lending Act,
### 15 U.S.C. § 1600, *et seq.*)

97.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

98.    This Court has jurisdiction over Truth in Lending Act claims pursuant to 15 U.S.C. § 1640(e).

99.    At all times relevant hereto, in the ordinary course of its business, ING has been a "creditor" within the meaning of the Truth in Lending Act because ING regularly extended or offered to extend consumer credit:  (a) for which a finance charge is or may be imposed or (b) which, by written agreement, is payable in more than four installments.  15 U.S.C. § 1602(g); Regulation Z, 12 C.F.R. § 226.2(a)(17).

100.    At all times relevant hereto, Plaintiffs and Class members were "consumers" within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(i), and Regulation Z, 12 C.F.R. § 226.2(a)(11).

101.    The Orange Loan advertisements with the Rate Renew Guarantee are "advertisements" within the meaning of 12 C.F.R. § 226.2(a)(2).

102.    Offering mortgage loan refinancing is an offer for "closed-end credit" within the meaning of 12 C.F.R. § 226.2(a)(10).

103.    "Closed-end" credit loan documentation must include "[t]he number, amount, and due dates or period of payments scheduled to repay the total of payments."  15 U.S.C. § 1638(a)(6).

104.    "Closed-end" credit advertisements that include "the number of installments or the period of repayment" must also include a disclosure of:  (1) the amount or percentage of the down payment;  (2) the terms of repayment, which reflect the repayment obligations over the full term of the loan, including any balloon payment; and  (3) the "annual

percentage rate," using that term, and, if the rate may be increased after consummation, that fact. 15 U.S.C. § 1664(d); 12 C.F.R. § 226.24(d).

105.    The Rate Renew Guarantee included the number of installments or period of repayment for refinanced Orange Loans.

106.    ING violated the Truth in Lending Act, 15 U.S.C. § 1600, *et seq.*, and Regulation Z, 12 C.F.R. § 226.1, *et seq.* by failing to disclose all material terms of the Orange Loans with the Rate Renew Guarantee, in violation of 15 U.S.C. §§ 1638(a)(6) & 1664(d), and 12 C.F.R. § 226.24(d).

107.    Plaintiffs and Class members are entitled to an award of class damages for ING's failure to comply with 15 U.S.C. §§ 1638(a)(6) & 1664(d), and 12 C.F.R. § 226.24(d). 15 U.S.C. § 1640(a)(2)(B).

108.    As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**COUNT VI**
**(Unjust Enrichment)**

109.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

110.    Plaintiffs plead this Count in the alternative.

111.    ING derived profits and was otherwise unjustly enriched from its refusal to honor the Rate Renew Guarantee, to the detriment of Plaintiffs and Class members. ING profited and otherwise derived payments and fees collected from Plaintiffs and Class members.

112.    To the detriment of Plaintiffs and Class members, ING has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for Orange Loans, interest, and refinances.

113.    ING's enrichment is directly and causally related to Plaintiffs and Class members' detriment.

114.    As alleged above, ING defrauded Plaintiffs and Class members, and acted in bad faith, and thereby breached its duties to Plaintiffs and the Class, and therefore ING is not justified to collect or retain payments or fees.

115.    As between the parties, it would be unjust for ING to retain the benefits attained by its actions.  Accordingly, Plaintiffs and the Class seek full restitution of ING's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

116.    Plaintiffs and the Class do not have an adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs and Class members request that the Court enter judgment against ING, awarding the following relief:

(A)    An Order certifying this action as a class action (and certifying any appropriate subclasses), appointing Plaintiffs as Class Representatives and their counsel of record jointly as Class Counsel;

(B)    A declaration that the Rate Renew Guarantee is an enforceable obligation to all holders of Orange Loan purchased during the Class period;

(C)    Compensatory damages;

(D)    Statutory damages and treble damages and such other relief as provided by the statutes cited herein;

(E)    Punitive damages for ING's fraudulent, gross, oppressive, and/or reckless conduct.

(F)    Prejudgment and post-judgment interest on such monetary relief;

(G)     The costs of bringing this suit, including reasonable attorneys' fees and

costs; and

(H)     All other relief to which Plaintiffs and Class members may be entitled

which the Court deems proper.

Dated:  January 21, 2011             ROSENTHAL, MONHAIT & GODDESS, P.A.


By:  */s/ Jeffrey S. Goddess*_____
     Jeffrey S. Goddess (No. 630)
     P. Bradford deLeeuw (No. 3569)
     jgoddess@rmgglaw.com
     bdeleeuw@rmgglaw.com

     ROSENTHAL, MONHAIT & GODDESS, P.A.
     919 Market Street, Suite 1401
     Wilmington, Delaware 19899-1070
     Telephone: (302) 656-4433
     Telecopier: (302) 658-7567

     Jonathan D. Selbin
     jselbin@lchb.com
     Daniel R. Leathers
     dleathers@lchb.com
     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
     250 Hudson Street, 8th Floor
     New York, New York  10013-1413
     Telephone: (212) 355-9500
     Facsimile: (212) 355-9592

     Daniel M. Hutchinson
     dhutchinson@lchb.com
     LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
     San Francisco, California  94111-3339
     Telephone: (415) 956-1000
     Facsimile: (415) 956-1008

David P. Meyer
dmeyer@dmlaws.com
Matthew R. Wilson
mwilson@dmlaws.com
DAVID P. MEYER & ASSOCIATES, CO., LPA
1320 Dublin Road, Ste. 100, Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Proposed Class*

# EXHIBIT A

DRIGHT STUFF

**April 2009**

**$9,090,006,698** Interest paid out to all ING DIRECT Customers as of March 31, 2009.

## How to resolve an insecurity complex.

Here are some great online tips to keep your savings and personal information safe.

- Protect yourself from online fraud and ID Theft with FREE state-of-the-art Rapport security software from Trusteer.

- Don't click pop-ups and don't download files from websites you don't trust.

- When making online transactions, be sure web addresses begin with https (not http) and look for a key or padlock icon in your browser window.

- Don't surf to other sites while you are visiting a secure banking site; finish banking, always log out and close your browser before you move on.

- Don't click links or open attachments in suspicious emails. We will never ask you to give personal information by email.

- Never send personal or sensitive information by email.

- Choose passwords that are difficult to guess and change them on a regular basis.

- Don't use the same passwords for other websites that you use for secure sites like ingdirect.com.

- Back up your important computer files at least once a month.

**Learn more about how to keep yourself protected at the Security Zone.**

## Protect what's yours.

You know we're always updating our safety features at ING DIRECT. It's a priority for us. We do our part to protect you and your information, keep you informed and provide you with the necessary tools and resources. But you need to do your part.

Just following a few simple rules can make all the difference. Logging off browsers. Using different passwords. Only doing business with companies you know are reputable. Small things. But important rules of the road when it comes to keeping your personal information safe.

Statistically speaking, transactions on the Internet are more secure than getting paper statements. But it's still important to be vigilant.

You worked hard for what you have.



**Arkadi Kuhlmann**
President of ING DIRECT
CEOofSavings@ingdirect.com

- Take the roof rack off of your car when you're not using it and boost your car's fuel efficiency by as much as six miles per gallon.

- Check out the local beauty college for hair coloring and styling – it can cost one-third to one-half of the price of a salon.

- Cut dryer sheets in half and double the value of every box.

- Make an extra mortgage payment each year – it will take thousands off the total interest you'll pay and years off the time it takes to pay off the loan.

**Get more tips like these at ingdirect.com/tips.**

## CEO of Savings Q&As



**Q: Are rates affected by more than just market conditions?**

**Arkadi:** Absolutely. For example, with the FDIC's increased exposure to failed banks comes an increased cost. Member banks like ING DIRECT must pay to offset this cost. The fact is, FDIC insurance isn't free. We, the consumers, must pay the FDIC to insure our deposits. The largest impact? Lower interest rates on our savings. It's a burden we all have to bear – but one that's necessary to get this great country of ours back on track.

Many banks are feeling the effects of the economic crisis. Fees are more important than ever to compensate for any loss of their income. In a world where savings and investment returns are more modest and less certain, those few dollars a month on your bank statement suddenly matter a lot more. Americans are paying an average of $1,000 per year in sneaky fees. The average overdraft fee alone is now $27 and the average ATM surcharge is up 11% from last year, now at $1.97.

Take a hard look at what banks make you pay to access your money and what you're getting in return:

- Keep tabs on your money – track all ATM fees, bill payments, dormancy fees, electronic funds transfers and other transaction charges.

- Make your bank explain the charges – if you think a charge isn't fair, say so.

- Consider your options – shop around and don't just look at what you're getting from those products, look at what that bank is taking from you in return.

- Read the fine print, and pay attention to asterisks (you'll notice we don't use any).



## Can't remember your Customer Number?

It's that time again – your eStatement is available. You go to ingdirect.com to sign in and view it and then it happens – you draw a complete blank. You forgot your Customer Number, again.

But did you know you have another option for signing in? Set up a Saver ID, a unique username that you can use in place of your Customer Number when signing into the website.

**To create your own easy-to-remember Saver ID:**

1. Sign in to ingdirect.com with your Customer Number (use the Online Customer Number Lookup Tool to look it up if you forgot it) and PIN

2. Click on the 'My Info' tab

3. Select the 'Change' button in the 'Saver ID' section

4. Enter a Saver ID you can easily remember



## Saving starts with your home.

You make it easy for us and we'll return the favor by helping you own your home faster. That's the idea behind Easy Orange. All you have to do is apply online, make bi-weekly electronic payments (you'll pay your mortgage off faster and be a little more green), and have good credit. No big deal, right? Want to know what's in it for you?

- Great 5-year fixed rate of 4.25% (4.24% APR)

- Same low rate for loans up to $750,000

- Free bi-weekly payments so you can own your home sooner



---

the right pot size on the same-size burner (rather than too large or too small) can save about $36 annually in electric or $18 in gas.

- **Save water with every flush** when you put a half-gallon, sand-filled milk jug in your toilet tank. The average American family will save 20 gallons of water a day.

- **Download new music.** CD cases are often made with polyvinyl chloride, which doesn't recycle easily, and most packaging and CDs end up in a landfill. Plus it reduces production costs and energy.

- **Use your microwave or slow cooker.** Electric and convection stoves and ovens drain tons of energy. Crock pots, microwaves and toaster ovens are more efficient.

---

**Tweet and Re-Tweet about ING DIRECT.**

Keep your finger on the pulse of what's happening at ING DIRECT on Twitter – a site for friends, family, and co-workers to communicate and stay connected through the exchange of quick, frequent answers to one simple question: What are you doing? **Follow us @ingdirect.**

---

**ING DIRECT meets your iGoogle page.**

As if we didn't make saving easy enough, now you can get a quick and easy savings tip from your iGoogle home page. It could be anything from saving money at the gas pump to reducing your winter heating bills. After all, every little bit helps.

# EXHIBIT B

Easy Orange information from ING DIRECT   http://web.archive.org/web/20090625085908/http://home.ingdirect.com/produc...





**Save Your Money ®**

#### Easy Orange™
- Overview
- Rates and Closing Costs
- Why an Easy Orange?
- How an Easy Orange works?
- Apply Now

**The mortgage for Savers**

Easy Orange is not your ordinary mortgage - it's all electronic and has a great 5 year fixed rate, with a payment based on 30 years. At the end of the fixed rate term, the remaining balance will be due. But then, we offer Rate Renew, which provides an opportunity to qualify to relock your rate and extend your fixed rate period for another 5 years at the Easy Orange rate at that time. With Easy Orange, you'll have your mortgage paid off in no time.

**Low Rates**

Get rewarded for having great credit - low rates and no points could save you thousands.

**Low Closing Costs**

Unlike other banks, we don't charge application fees, points or other junk fees. See for yourself.

**Bi-weekly payments**

Own more of your home sooner, and unlike most banks, you won't get charged a fee for this feature.

**Rate Renew**

No need to refinance. Just qualify and relock your rate anytime and extend your fixed rate for another 5 years at the Easy Orange rate at that time for a flat charge of $750.

**Quick and Easy Application**

Apply online in minutes and even do your closing online or by phone.

**Not For Everyone**

If you're the type of person that prefers managing your mortgage online and making bi-weekly payments electronically, this is the mortgage for you. It will save you thousands and help you own more of your home sooner, as long as you don't need to borrow more than 75% of the value of your home and you will not get a second mortgage in the future. For those that are looking for something similar to Easy Orange, we also have the Orange Mortgage.

Learn more if Easy Orange is a fit for you. Apply online now, and in most cases, you'll receive a decision in minutes.

Questions? Call us. We'll listen. **1-866-327-4599**.

| Home | Contact | Legal | Security Guarantee & Privacy | Join Our Team | Cafés | The Shop | Kids |

**MEMBER FDIC**



1/27/11

EFiled: Jan 29 2011 7:52AM
~~Transaction ID 29963338PM~~
~~Case No. N11C-01-220 JRJ~~
Case No. N11C-01-220 JRJ

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

JONATHAN AND TRUDE YARGER,  )
a married couple, and JAMES CRAMER, )
                                   )
      Plaintiffs,       )     C.A. No. N11C-01-220 JRJ
                                 )
      v.                )
                                 )     TRIAL BY JURY DEMANDED
ING BANK, FSB, D/B/A ING DIRECT,  )
                                 )
      Defendant.     )

### PRAECIPE

PLEASE ISSUE SUMMONS to the Sheriff of New Castle County for service of the

Summons and Complaint upon the defendant at the address set forth below:

      ING BANK, FSB, d/b/a ING DIRECT
      c/o Kristine Wellman, General Counsel
      ING Bank, fsb
      1 S. Orange Street
      Wilmington, DE 19801

(1) writ issued
check # 49266  30.00

Jeffrey S. Goddess (No. 630)
Rosenthal, Monhait & Goddess, P.A.
Suite 1400, 919 Market Street
P. O. Box 1070
Wilmington, DE  19899
(302) 656-4433
*Attorney for Plaintiffs*

January 21, 2011

EFiled: Feb 7 2011 2:34PM
Transaction ID 35799130
Case No. N11C-01-220 JRJ





**Sheriff's Office**
800 N. French Street, 5th Floor
Wilmington, Delaware 19801
302-395-8450, Fax: 302-395-8460

State of Delaware
New Castle County
**Trinidad Navarro**
Sheriff

2/3/2011

Court Case # N11C-01-220 JRJ

JONATHAN AND TRUDE YARGER AND JAMES CRAMER
vs.
ING BANK FSB DBA ING DIRECT

Service on ING BANK FSB

By leaving a copy of the within Summons and Complaint with TOM BECKSON, ACCOUNT MANAGER SECURITY, at KRISTINE WELLMAN GENERAL COUNSEL ONE SOUTH ORANGE STREET WILMINGTON, DE 19801 , on 2/2/2011 at 1:34 PM.

Fees Paid:  $30.00

Per:  Deputy Sheriff, Deane Cressman

SO ANS;
SHERIFF

PER  Crystal Hatcher

Document #  11-001628

2011 FEB -4  AM 10: 28

EFiled: Jan 31 2011 4:52PM
Transaction ID 35678129
Case No. N11C-01-220 JRJ

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

JOHNATHAN AND TRUDE YARGER,          )
a married couple, and JAMES CRAMER,          )
                                    )
        Plaintiffs,          )
                                      )
        v.          )          C.A. No. N11C-01-220 JRJ
                                      )          (CCLD)
ING BANK, FSB, D/B/A ING DIRECT,          )

## STIPULATION REGARDING CONSENT
## AND WAIVER OF SERVICE OF SUMMONS AND COMPLAINT

WHEREAS the undersigned counsel for defendant ING Bank, fsb ("ING") is authorized and has agreed to accept service of process of the Summons and Complaint in this case on behalf of ING; and

WHEREAS this acceptance of service is valid for all purposes and, as a result, ING waives any right to assert a defense in this action based on improper service of the Summons and Complaint;

WHEREAS all other rights and defenses of ING and any affiliated entity or individual are expressly preserved for purposes of this action and otherwise;

IT IS HEREBY STIPULATED AND AGREED among the undersigned counsel that the Summons and Complaint shall be deemed to have been properly served on Defendant ING as of the date hereof for all intents and purposes, and Defendant ING's time to answer or otherwise respond to the Complaint pursuant to the Rules of this Court shall run from the date hereof.

Dated: January 31, 2011

ROSENTHAL, MONHAIT &
   GODDESS, P.A

By:/s/ P. Bradford deLeeuw
   Jeffrey S. Goddess (Del. Bar No. 630)
   P. Bradford deLeeuw (Del. Bar No. 3569)
   919 Market Street, Suite 1401
   P.O. Box 1070
   Wilmington, DE 19899-1070
   (302) 656-4433

OF COUNSEL:

Jonathan D. Selbin
jselbin@lchb.com
Daniel R. Leathers
dleathers@lchb.com
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

David P. Meyer
dmeyer@dmlaws.com
Matthew R. Wilson
mwilson@dmlaws.com
DAVID P. MEYER & ASSOCIATES,
   CO., LPA
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the
Proposed Class*

MONTGOMERY, McCRACKEN,
   WALKER & RHOADS, LLP

By: /s/ R. Montgomery Donaldson
   R. Montgomery Donaldson (Del. Bar No. 4367)
   Lisa Zwally Brown (Del. Bar No. 4328)
   1105 N. Market Street, Suite 1500
   Wilmington, Delaware 19801
   (302) 504-7800

OF COUNSEL:

Frank A. Hirsch, Jr.
Matthew P. McGuire
ALSTON & BIRD LLP
4721 Emperor Blvd.
Suite 400
Durham, NC 27703
(919) 862-2200

*Attorneys for Defendant ING Bank,
fsb*