## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHNATHAN AND TRUDE YARGER, a married couple, | |
| Plaintiffs, | Civil Action No.:  11-154-LPS |
| v. | |
| ING BANK, FSB D/B/A/ ING DIRECT, | DEMAND FOR JURY TRIAL |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Johnathan and Trude Yarger, a married couple ("Plaintiffs"), by and through their undersigned counsel, upon knowledge as to themselves and upon information and belief as to all other matters, allege as follows:

### NATURE OF ACTION

1.     Plaintiffs bring this action on behalf of themselves and all other similarly-situated individual borrowers (the "Class" or "Class members") who purchased an Easy Orange Loan or Orange Loan home mortgage from defendant ING Direct (the operating name of ING Bank, fsb) ("ING"), both of which necessarily included and were marketed with a guaranteed right to a flat-fee rate renew for $500 or $750 for the remaining life of the loan (the "Rate Renew Guarantee").

### BACKGROUND

2.     Beginning in or around October 2005, ING began marketing Orange Loans with the Rate Renew Guarantee.  Specifically, ING marketed Orange Loans with a $500 Rate Renew Guarantee from in or around October 2005 through May 2008, and Orange and

3. The Rate Renew Guarantee is extremely valuable because it allows borrowers to reset the interest rate on their mortgages at any time to take advantage of lower interest rates for a low, fixed cost, whereas resetting or refinancing most mortgages is expensive and potentially cost-prohibitive.

4. A low-cost, guaranteed-flat-fee interest rate reset gives homeowners peace of mind, especially in circumstances where, as here, they likely will require resetting or refinancing before the loan term ends. ING's Orange Loans came with fixed-rate interest for a three-, five-, or seven-year term. Once that fixed-rate interest period expires, however, the interest rate on the loan resets to whatever interest rate is in effect at that time, and the loan reverts to an adjustable-rate mortgage the interest rate on which adjusts each year. ING's Easy Orange loans, offered by ING from in or around June 2008 through the present, came with fixed-rate interest for a five- or ten-year term. Once that fixed-rate interest period expires, however, the entire balance of the loan is due in one lump-sum payment. Mortgage loans that provide for a short period of fixed-rate interest before requiring repayment of the remaining balance in full are commonly referred to as "Balloon Loans" or "Reset Mortgages." ING's Easy Orange loans are Balloon Loans. The overwhelming majority of borrowers of such Balloon Loans will be unable to pay the full balance owing on their mortgage loans after the fixed-rate period expires. As a result, most borrowers of Balloon Loans must reset or refinance their loans before the entire amount becomes due.

5. Adjustable Rate Mortgage loans ("ARMs") provide for a short period of fixed-rate interest before requiring an adjustment in the interest rate. ING's Orange loans are ARMs. As with Balloon Loans, many borrowers with ARMs will face difficulties paying the monthly mortgage payments under the adjusted rate after the fixed-rate period expires. As a

-2-

result, most borrowers with ARMs reset or refinance their loans before the fixed-rate period expires.

6. Due to the fact that the Orange Loans result in an interest rate adjustment after just three, five, or seven years, and the fact that Easy Orange Loans result in the necessity of a balloon payment after just five or ten years, the ability of Plaintiffs and Class members to reset the interest rate on their mortgages at a low, fixed cost is particularly important because, absent the ability to refinance, they will face difficulties paying the mortgage loan once the interest rate adjusts or the balloon payment becomes due.

7. Despite ING's express and material representation to Plaintiffs and all Class members that Orange and Easy Orange Loans come with a Rate Renew Guarantee, ING has not honored and does not honor its Rate Renew Guarantee. Instead, when Plaintiffs and Class members like them have sought to take advantage of the Rate Renew Guarantee, ING has denied them the ability to do so outright on the basis that they do not qualify, and/or charged them an amount in excess of the promised flat fee to do so.

8. All of the claims asserted herein arise out of ING's express and material representations regarding the Rate Renew Guarantee feature of the Orange and Easy Orange Loans, upon which Plaintiffs and Class members justifiably relied in deciding to purchase a mortgage from ING instead of another lender.

9. On information and belief, ING advertised and marketed the Orange and Easy Orange Loans as having a Rate Renew Guarantee in many places, including: (1) on its website, (2) in monthly billing statements sent to ING borrowers, and (3) in targeted mailings to ING borrowers. Sample copies of such express representations from ING's website and marketing materials, in which ING represented and advertised to Plaintiffs and the Class that its loans had a Rate Renew Guarantee, are attached as Exhibits A, B, and C.

10. For example, one ING Orange advertisement for the time period from in or around October 2005 through May 2008 promised:

> Is your fixed-rate period about to end?  Relax, you don't need a new loan.  Just have us modify your existing Orange Mortgage.  For $500 you can lock your rate for 5 more years as low as [interest rate] without extending the time to pay off your mortgage. . . .

Exh. A.

11.     One ING Easy Orange advertisement promised:

> Extend your fixed-rate period any time after the first six months for another 5 years by locking in at the current rate for only $750.

> *       *       *

> Read the fine print, and pay attention to asterisks (you'll notice we don't use any).

Exh. B.

12.     ING's website described the Easy Orange Loans as follows:

> **The mortgage for Savers**
>
> Easy Orange is not your ordinary mortgage – it's all electronic and has a great 5 year fixed rate, with a payment based on 30 years.  At the end of the fixed rate term, the remaining balance will be due.  But then, we offer Rate Renew, which provides an opportunity to qualify to relock your rate and extend your fixed rate period for another 5 years at the Easy Orange rate at that time.  With Easy Orange, you'll have your mortgage paid off in no time.
>
> **Rate Renew**
>
> No need to refinance.  Just qualify and relock your rate anytime and extend your fixed rate for another 5 years at the Easy Orange rate at that time for a flat charge of $750.

Exh. C.

13.     In addition to uniform website and marketing materials, on information and belief, ING representatives were trained to discuss ING's Rate Renew Guarantee with customers who spoke with them by telephone in conformance with the material terms of the written advertising materials.

-4-

949281.4

14.     On information and belief, ING followed a uniform practice of recording all customer calls in which ING representatives reiterated ING's Rate Renew Guarantee.

15.     ING intended that Plaintiffs and Class members rely on the Rate Renew Guarantee in making their decision to purchase the Orange and Easy Orange Loans.

16.     ING's representations and promises regarding the Rate Renew Guarantee were material, in that Plaintiffs and Class members would not have purchased the Orange and Easy Orange Loans if they had known that ING would not honor the Rate Renew Guarantee.

17.     When they purchased their Orange and Easy Orange Loans, Plaintiffs and Class members justifiably relied upon ING's representations and promises and reasonably expected their Orange and Easy Orange Loans to have the Rate Renew Guarantee and that ING would honor the Rate Renew Guarantee for the life of the mortgage, as ING promised.

18.     Plaintiffs' experiences—mirroring those of other borrowers—reveal that ING's representations and promises were false, in that ING has not honored and does not honor its Rate Renew Guarantee.

19.     Instead of honoring the Rate Renew Guarantee, ING instead:  (1) quietly changed the "flat-fee" promised to the amount of each loan holder's monthly mortgage payment, a difference of up to several thousands of dollar per rate renew, and (2) continually added qualification requirements to the Rate Renew Guarantee not described in its advertising which, as noted above, specifically represented that ING "do[es]n't use any" of the typical "fine print" or "asterisks" to qualify its promises.

20.     In or about June of 2010, ING management concluded that "the right thing to do" would be to honor ING's Rate Renew Guarantee on the terms offered, and/or rebate the overpayments.  ING, however, decided not to take affirmative steps to do so, nor did it affirmatively disclose the truth to customers.

21.     As a direct result of ING's false and misleading statements regarding the Rate Renew Guarantee, Plaintiffs and Class members purchased Orange and Easy Orange

-5-

Loans with fixed-rate terms that will expire within five or seven years of origination unless they reset or refinance, for which ING has refused to honor the Rate Renew Guarantees.

22.     Plaintiffs and Class members have been damaged in that they:  (a) already have paid ING more than the promised flat fee to reset their Orange and Easy Orange Loans, or (b) will be required to pay more than the promised flat fee to reset or refinance their Orange and Easy Orange Loans if they wish to avoid the financial hardship of having their interest rate reset (as a result of the ARM feature of the Orange Loans) or of paying off the entire balance of their loan (as a result of the Balloon Loan nature of the Easy Orange Loans), or (c) have incurred and/or are reasonably certain to incur increased finance costs as a result of their inability to reset or refinance their Orange and Easy Orange Loans.  In each instance, Plaintiffs and Class members have suffered, or are reasonably certain to suffer, monetary damages as a result of ING's false promises.

23.     Plaintiffs and Class members are entitled to damages in the amount of: (1) the money they paid ING to reset beyond the promised flat fee, (2) the amount of increased loan payments due to their inability to reset their interest rate, and/or (3) increased finance costs resulting from their inability to take advantage of the promised Rate Renew Guarantee, as well as (4) a declaration that they are entitled to the full benefit of the Rate Renew Guarantee for the life of their Orange and Easy Orange Loans.

### JURISDICTION AND VENUE

24.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), pursuant to 28 U.S.C. § 1332(d)(2).  This is a proposed class action in which the matter in controversy exceeds $5,000,000, as most of the tens of thousands of proposed Class members are entitled to hundreds or thousands of dollars in damages, and Plaintiffs and many members of the Class are residents of a State other than Delaware, the home state of ING.

-6-

949281.4

25.     This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

26.     Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1391(a)-(c) because a) ING is a corporation that resides in this District, b) a substantial part of the events or omissions giving rise to the claims occurred in this District, and c) ING is subject to personal jurisdiction in this District.  Venue is also proper in this District because ING properly removed this action pursuant to 28 U.S.C. § 1441(a).

## CHOICE OF LAW

27.     Delaware law applies to all claims asserted in this action because, *inter alia*, a choice of law provision ING uniformly and unilaterally imposed on Plaintiffs and all Class members governs the representations and omissions that form the bases of Plaintiffs' claims.  That provision states, in relevant part, that the relationship between Plaintiffs and all Class members and ING in which such representations and omissions arose is "governed by and construed in accordance with the laws of the State of Delaware."  Moreover, ING's standard Easy Orange Note Modification Agreement further states that it shall be governed "by the substantive laws of the State of Delaware without reference to principles of conflict of laws."

28.     Delaware law applies to the statutory claims asserted in this action because, on information and belief, ING's unlawful practices occurred in Delaware.  To the extent that ING engaged in unlawful conduct in other jurisdictions, on information and belief, that conduct was conceived in Delaware, and emanated and was orchestrated from Delaware.

29.     Delaware law applies to all claims asserted in this action because Delaware has the most significant relationship to them. On information and belief, all of ING's conduct relevant to Plaintiffs' claims arise from a common scheme conceived in and orchestrated from Delaware, all misrepresentations and omissions were made or not made from Delaware,

-7-

ING is incorporated in Delaware, ING's principal place of business is in Delaware, all parties would expect Delaware law to apply to ING's alleged misconduct, and application of Delaware law is necessary to ensure certainty, predictability, and uniformity.

30.     Application of Delaware law to ING and the claims of Plaintiffs and all Proposed Class members comports with Due Process because Delaware has significant contact or aggregation of contacts with the claims of all Proposed Class members such that application of Delaware law is neither arbitrary nor unfair.

## PARTIES

31.     Plaintiffs Johnathan and Trude Yarger ("the Yargers") are married and residents of the State of Minnesota.  On or around May 15, 2006, the Yargers jointly closed an Orange Loan with a fixed interest rate for the first five years.

32.     Defendant ING Bank, FSB, also known as ING Direct ("ING"), is a U.S. federal savings bank chartered by the Office of Thrift Supervision.  ING is headquartered in Wilmington, Delaware, with satellite locations throughout the United States.  ING claims to be one of the world's largest online banks.  Like most banks, ING has a division dedicated to mortgage loans.  As a mortgage company, ING works with prospective borrowers to provide them with loans against either a new home for purchase or an existing home when refinancing.

33.     Upon information and belief, at all relevant times, ING was present and transacted, solicited, and conducted business in the State of Delaware, through its employees, agents and/or sales representatives, and derived substantial revenue from such business.

34.     At all relevant times, ING expected or should have expected that its acts and omissions would have consequences throughout the United States and the State of Delaware.

## FACTUAL ALLEGATIONS

### Johnathan and Trude Yarger's Experience

35.    Plaintiffs Johnathan and Trude Yarger, prior to closing their home mortgage with ING, had been long-time customers of another, well-known international bank. ING offered them an Orange Loan with a fixed interest rate for the first five years that was competitive with other banks.  ING also offered something that the other banks did not – a guaranteed, flat-fee rate renew for the life of the loan without ever having to reapply for a mortgage.

36.    The Yargers jointly closed an Orange Loan on or around May 15, 2006, during the period that ING marketed Orange Loans with a guaranteed right to a flat-fee rate renew for $500 for the remaining life of the loan.

37.    The Yargers first learned about ING Orange Loans with the Rate Renew Guarantee from their mortgage broker.  The Yargers chose the Orange Loan because of ING's unique Rate Renew Guarantee offer.

38.    Given the continually changing interest rates and the significant costs associated with refinancing a home loan, the Yargers chose to keep their home loan with ING because of the Rate Renew Guarantee, as opposed to going to another lender to get an ARM or a more traditional loan.

39.    In or around May 2008, the Yargers contacted ING to request the "rate renew" option.  The Yargers recall that ING recorded this phone call.  In or around June 2008, the Yargers paid $750 to reset a five-year Orange Loan, not the $500 flat fee that ING promised them and other ING customers.  The Yargers thus suffered $250 in monetary damages as a result of ING's June 2008 failure to honor the Rate Renew Guarantee.

40.    The Yargers completed their June 2008 rate renewal during the period that ING marketed Orange Loans with a guaranteed right to a flat-fee rate renew for $750 for the remaining life of the loan.  An ING representative assured the Yargers that the $750 Rate Renew Guarantee still would be available for the life of the loan and would only affect the

-9-

margin and rate caps of the loan, if applicable, at the time(s) the Yargers renewed.  The Yargers were also assured that this feature was not like a traditional refinance where they would need to reapply, have an appraisal, and have their credit scores pulled, as part of the normal underwriting process.  The Rate Renew Guarantee purported to allow them to modify the loan at any time without refinancing

      41.     The Yargers received a postcard offering a $750 Rate Renew Guarantee.

      42.     In September 2009, the Yargers contacted ING to again take advantage of the Rate Renew Guarantee. The Yargers recall that ING recorded this phone call.  Much to their surprise, ING informed the Yargers that the rules had changed; instead of a flat $750 charge, they would now be charged the equivalent of one month's mortgage payment, approximately $788.  The Yargers realized that if they wanted to take advantage of reduced interest rates they would be stuck paying the $788.

      43.     In October 2009, the Yargers finalized the rate renew of their home loan and paid ING $788 to do so, not the $750 flat fee that ING promised them.  The Yargers thus suffered $38 in monetary damages as a result of ING's October 2009 failure to honor the Rate Renew Guarantee.

      44.     On August 23, 2010, the Yargers contacted ING Direct to request paperwork for the "rate renew" option again.  The Yargers recall that ING recorded this phone call.  ING's representative told the Yargers that they "no longer qualified" for a flat-fee rate as there were new qualification requirements for condominiums.  Instead, ING's representative told the Yargers that new loan-to-value regulations required that the Yargers pay down the loan balance by $34,900 or having the property assessed with a value over $177,800 to be eligible for the "rate renew" option.  The Yargers were unable to satisfy either condition.

      45.     After many frustrating phone calls with ING representatives to determine why the Rate Renew Guarantee was not being honored, the Yargers realized that they could not take advantage of reduced interest rates by resetting their mortgage under the Rate Renew

-10-

Guarantee due to ING's change in requirements.  As a result of ING's refusal to honor its Rate Renew Guarantee, the Yargers have suffered, and will continue to suffer, damages in the amount of the difference in interest payments they are required to make and those they would make had they been permitted by ING to rate renew in keeping with the terms of the Rate Renew Guarantee.

## **FRAUD ALLEGATIONS**

46.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at ING responsible for the false and misleading statements regarding the Rate Renew Guarantee.  ING necessarily is in possession of all of this information.

47.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to ING:

a.     ***Who***:  Defendant ING.

b.     ***What***:  ING expressly represented that Orange and Easy Orange Loans come with a Rate Renew Guarantee (that ING has not honored) by stating, *inter alia*:

> Is your fixed-rate period about to end?  Relax, you don't need a new loan.  Just have us modify your existing Orange Mortgage. For $500 you can lock your rate for 5 more years as low [interest rate] without extending the time to pay off your mortgage. . . .
>
> \*       \*       \*
>
> Extend your fixed-rate period any time after the first six months for another 5 years by locking in at the current rate for only $750.
>
> \*       \*       \*
>
> [W]e offer Rate Renew, which provides an opportunity to qualify to relock your rate and extend your fixed rate period for another 5 years at the Easy Orange rate at that time.
>
> No need to refinance.  Just qualify and relock your rate anytime and extend your fixed rate for another 5 years at the Easy Orange rate at that time for a flat charge of $750

-11-

Exhs. A-C.

           c.     **When:**  Starting no later than October 2005, and on an ongoing basis through at least May 2009.

           d.     **Where:**  On ING's website and in advertisements and letters distributed to Plaintiffs, Class members, and the public.

           e.     **How:**  ING has affirmatively misrepresented in writing that the Orange and Easy Orange Loans come with a Rate Renew Guarantee (that ING has not honored).

           f.     **Why:**  For the purpose of inducing Plaintiffs and Class members to purchase the Orange and Easy Orange Loans, rather than choosing competitors' mortgage loans. Had ING disclosed the truth, Plaintiffs and Class members would not have purchased their home loans from ING or would have negotiated different terms.

## TOLLING OF STATUTES OF LIMITATION

           48.     All applicable statutes of limitation are and have been tolled by ING's misrepresentations and fraudulent concealment of the truth about the Rate Renew Guarantee.

           49.     Plaintiffs and Class members could not, in the exercise of reasonable diligence, have discovered the falsity of ING's representations regarding the Rate Renew Guarantee unless and until they sought to take advantage of it and ING refused to honor it.

           50.     Internal ING documents establish that ING is and was aware that it was failing to honor its obligations under the Rate Renew Guarantee, that ING concluded that "the right thing to do" would be to honor those obligations and/or rebate the overpayments, but decided that it would neither affirmatively act to do so nor affirmatively disclose the truth.

           51.     As such, all statutes of limitation are and have been tolled until such date(s) as ING refused to honor the Rate Renew Guarantee.

-12-

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as a Class pursuant to Fed. R. Civ. P. 23(a), (b)(2), and/or (b)(3), as described below.

53.     The Class is defined and proposed as follows:

> All individuals who purchased an Easy Orange or Orange Loan
> from October 2005 until May 2009.

54.     Excluded from the Class are ING, any entity in which ING has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (3) claims for emotional distress.

55.     Plaintiffs reserve the right to modify the Class definition after discovery and at any time up to and including trial.

56.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. R. Civ. P. 23.

57.     The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable.  The exact number or identification of Class members is presently unknown to Plaintiffs, but it is believed to comprise tens of thousands of homeowners who purchased Orange and Easy Orange Loans, making joinder impractical.  The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased an ING Orange or Easy Orange Loan during the applicable time period.

58.     Common questions of fact and law that are capable of classwide resolution exist as to all Class members and predominate over questions affecting only individual Class members.  The answers to these common questions will advance this litigation significantly.  Common questions capable of generating common answers apt to drive the resolution of the litigation include, but are not limited to, the following:

-13-

a.      Whether the terms of ING's marketing materials to Plaintiffs and the Class for Orange and Easy Orange Loans include a Rate Renew Guarantee;

b.      Whether ING's Rate Renew Guarantee and refusal to permit Plaintiffs and Class Members to reset their Orange and Easy Orange Loans for a flat fee of $500 or $750 constitute deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of a material fact;

c.      Whether ING advertised the Orange and Easy Orange Loans with the intent that others rely on its Rate Renew Guarantee, knowledge that its representation that the loans came with a Rate Renew Guarantee was false, intent to defraud, reckless indifference to the truth, and/or intent not to sell them as advertised or represented;

d.      Whether ING's representations about the Orange and Easy Orange Loans were material;

e.      Whether Plaintiffs' and Class members' reliance on those representations, as evidenced by their purchase of Orange and Easy Orange Loans with the Rate Renew Guarantee, was justifiable;

f.      Whether Plaintiffs and the Class are entitled to damages and/or declaratory relief;

g.      Whether ING was unjustly enriched at the expense of Plaintiffs and Class members.

59.     The answers to these questions will be the same for all Plaintiffs and Class members, and will establish (or not establish) the elements of Plaintiffs and Class members' claims.

60.     Plaintiffs' claims are typical of the claims of other Class members, in that Plaintiffs, like all Class members, were sold Orange or Easy Orange Loans with a Rate Renew Guarantee that ING has not honored.

61.     The factual bases of ING's misconduct are common to all Class members and represent a common thread of fraudulent misconduct resulting in injury to all Class members.  Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other Class members.

62.     Plaintiffs are adequate representatives of the Class because they are Class members and do not have interests that conflict with those of the other Class members they seek to represent.  Plaintiffs are represented by experienced and able counsel who have litigated numerous class action lawsuits, and Plaintiffs' counsel intend to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and Plaintiffs' counsel can fairly and adequately protect the interests of all Class members.

63.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because ING has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

64.     Class members are entitled to declaratory and injunctive relief to end ING's common, uniform, and unfair policies and practices of refusing to honor its Rate Renew Guarantee, including declarations:  (1) that ING's Orange and Easy Orange Loans have the Rate Renew Guarantee on the terms advertised; (2) that ING has not honored its Rate Renew Guarantee for Plaintiffs and Class members; (3) that ING must notify Plaintiffs and Class members that ING will honor its Rate Renew Guarantee; (4) and that ING, upon a Class member's request, must comply with the terms of the Rate Renew Guarantee in effect at the time that the Class member undertook his or her loan obligations with ING.

65.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class members have been damaged

-15-

and are entitled to recovery as a result of ING's refusal to honor its Rate Renew Guarantee.  ING has computerized customer data that will make calculation of damages for specific Class members relatively simple.  The propriety and amount of treble or punitive damages are issues common to the class.

66.     A class action is the best available method for the efficient adjudication of this litigation.  It would be impracticable and undesirable for each member of the Class who has suffered or may suffer harm to bring a separate action for these claims.  In addition, the commencement of separate actions would put a substantial and unnecessary burden on the courts, while a single class action can determine the rights of all Class members with judicial economy.

**<u>COUNT I</u>**
**<u>(Violation of the Delaware's Consumer Fraud Act,</u>**
**<u>6 Del. C. §§ 2511-27, 2580-84)</u>**

67.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

68.     Defendant ING is a "person" as defined by 6 Del. C. §§ 2511(7).

69.     The Orange and Easy Orange Loans are "merchandise" within the meaning of 6 Del. C. §§ 2511(6).

70.     The Rate Renew Guarantee is an "advertisement" within the meaning of 6 Del. C. §§ 2511(1).

71.     Delaware's Consumer Fraud Act provides in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

6 Del. C. § 2513.

-16-

72.     ING violated the Delaware Consumer Fraud Act's proscription against the act, use, or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact by: (a) affirmatively misrepresenting at all times to Plaintiffs and Class members that the Orange and Easy Orange Loans come with a Rate Renew Guarantee when, in fact, ING has not honored that Rate Renew Guarantee, and/or (b) concealing from Plaintiffs and all Class members that it would not honor the Rate Renew Guarantee.

73.     ING intended that Plaintiffs and members of the Proposed Class would rely upon its Rate Renew Guarantee when purchasing the Orange and Easy Orange Loans.

74.     ING's Rate Renew Guarantee occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as: (1) at least of the some deceiving conduct that violates 6 Del. C. § 2513 originated, arose, was directed, and emanated from Delaware, and/or (2) the presence of ING in Delaware is sufficient grounds for the Delaware Consumer Fraud Act to apply.

75.     Plaintiffs and Class members may seek injunctive relief in the form of "temporary restraining orders, preliminary or permanent injunctions, and such other relief as may be necessary" to prevent ING from engaging in activities declared by the Delaware Consumer Fraud Act to be unlawful.  6 Del. C. § 2523.

76.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

77.     In addition to compensatory damages, Plaintiffs and the Class are entitled to punitive damages because ING's conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

78.     Elderly or disabled Class members are entitled to a civil penalty of $10,000, court costs, attorneys' fees, and treble damages for each violation of the Delaware Consumer Fraud Act. 6 Del. C. §§ 2581, 2583.

## COUNT II
## (Common Law Fraud)

79.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

80.     ING misrepresented material facts to, and/or concealed material facts from, Plaintiffs and Class members by representing that the Orange and Easy Orange Loans came with a Rate Renew Guarantee with specified terms and/or not disclosing that it would not honor that Guarantee on those terms.

81.     ING's representation that the Orange and Easy Orange Loans came with a Rate Renew Guarantee with specified terms was false.

82.     ING knew its representation that the Orange and Easy Orange Loans came with a Rate Renew Guarantee with specified terms was false, and/or was reckless with respect to that representation.

83.     ING intended for Plaintiffs and Class members to rely on its representations about the Rate Renew Guarantee and to defraud them to induce them to purchase Orange and Easy Orange Loans.

84.     Plaintiffs and Class members were unaware of the fact that ING would not honor the Rate Renew Guarantee.

85.     ING's representations were made with a reckless indifference to the truth that they would not honor the Rate Renew Guarantee to all persons.

86.     Plaintiffs and Class members justifiably relied upon ING's representations and/or concealment of material facts, as evidenced by their purchase of Orange and Easy Orange Loans with the Rate Renew Guarantee.  The Rate Renew Guarantee was the primary selling point of the Orange and Easy Orange Loans:  had Plaintiffs and Class members known that ING would not honor the Rate Renew Guarantee, they would have chosen another lender or negotiated different terms.

-18-

87.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

88.     In addition to compensatory damages, Plaintiffs and the Class are entitled to punitive damages because ING's conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

## COUNT III
### (Promissory Estoppel)

89.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

90.     ING represented and promised to Plaintiffs and Class members that the Orange and Easy Orange Loans came with a Rate Renew Guarantee on the terms advertised.

91.     Plaintiffs and Class members were unaware of the fact that ING would not honor the Rate Renew Guarantee.

92.     Plaintiffs and Class members justifiably relied on ING's Rate Renew Guarantee, as evidenced by their purchase of Orange and Easy Orange Loans with the Rate Renew Guarantee.  The Rate Renew Guarantee was the primary selling point of the loans:  had Plaintiffs and Class members known that ING would not honor the Rate Renew Guarantee, they would have chosen another lender.

93.     ING did not honor its Rate Renew Guarantee to Plaintiffs and Class members.

94.     As a direct and proximate result of ING's misconduct, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

## COUNT IV
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

95.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

96.     As a result of ING's misrepresentations regarding the Rate Renew Guarantee, each Plaintiff and Class member entered into, and duly executed, a binding contract with ING in the form of Orange and Easy Orange Loans.

97.     The implied covenant of good faith and fair dealing obligates ING to honor the Rate Renew Guarantee even if the Guarantee was not part of the express terms of the Orange and Easy Orange Loans.

98.     ING breached this covenant by not honoring the Rate Renew Guarantee.

99.     As a direct and proximate result of ING's breach of the covenant of good faith and fair dealing, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

## COUNT V
### (Unjust Enrichment)

100.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

101.    Plaintiffs plead this Count in the alternative.

102.    ING derived profits and was otherwise unjustly enriched from its refusal to honor the Rate Renew Guarantee, to the detriment of Plaintiffs and Class members.  ING profited and otherwise derived payments and fees collected from Plaintiffs and Class members.

103.    To the detriment of Plaintiffs and Class members, ING has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, *inter alia*, payments for Orange and Easy Orange Loans, interest, and resets.

104.    ING's enrichment is directly and causally related to Plaintiffs and Class members' detriment.

-20-

105.    As alleged above, ING defrauded Plaintiffs and Class members, and acted in bad faith, and thereby breached its duties to Plaintiffs and the Class, and therefore ING is not justified to collect or retain payments or fees.

106.    As between the parties, it would be unjust for ING to retain the benefits attained by its actions.  Accordingly, Plaintiffs and the Class seek full restitution of ING's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

107.    Plaintiffs and the Class do not have an adequate remedy at law.

## COUNT VI
## (Declaratory Judgment Under 28 U.S.C. § 2201 & F.R.C.P. 57)

108.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

109.    There exists an actual controversy under the terms of Rate Renew Guarantee, and applicable law governing the same, as to whether ING can charge its customers more than the amount set forth in the Rate Renew Guarantee and/or impose qualification requirements to the Rate Renew Guarantee not disclosed in its advertising.

110.    This question is common to Plaintiffs and Class members who seek a declaration of their rights and legal obligations in addition to such other relief which might be granted by this Court.

111.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

112.    Plaintiffs and Class members are interested parties who seek a declaration of their rights and legal relations vis-à-vis ING under the Rate Renew Guarantee, including declarations:  (1) that ING's Orange and Easy Orange Loans have a Rate Renew Guarantee with the terms advertised; (2) that ING has not honored its Rate Renew Guarantee for Plaintiffs and

Class members; (3) that ING must notify Plaintiffs and Class members that ING will honor its Rate Renew Guarantee; (4) and that ING, upon a Class member's request, will comply with the terms of the Rate Renew Guarantee in effect at the time that the Class member undertook his or her loan obligations with ING.

## ALLEGATIONS REGARDING RELIEF

113.    Plaintiffs, and the class they seek to represent, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs, and the class they seek to represent, are now suffering and will continue to suffer irreparable injury from ING's acts and omissions.

114.    ING's conduct described herein was fraudulent, gross, oppressive, and/or reckless.  Plaintiffs and Class members are thus entitled to recover punitive damages in an amount according to proof.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs and Class members request that the Court enter judgment against ING, awarding the following relief:

(A)    An Order certifying this action as a class action (and certifying any appropriate subclasses), appointing Plaintiffs as Class Representatives and their counsel of record jointly as Class Counsel;

(B)    A declaration that the Rate Renew Guarantee is an enforceable obligation to all holders of Orange and Easy Orange Loans purchased during the Class period;

(C)    A preliminary and permanent injunction against ING and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with

them, from engaging in each of the unlawful policies, practices, customs, and usages set forth

herein;

        (D)     Compensatory damages;

        (E)     Statutory damages and treble damages and such other relief as provided by

the statutes cited herein;

        (F)     Punitive damages for ING's fraudulent, gross, oppressive, and/or reckless

 conduct.

        (G)     Prejudgment and post-judgment interest on such monetary relief;

        (H)     The costs of bringing this suit, including reasonable attorneys' fees and

costs; and

        (I)     All other legal and equitable relief to which Plaintiffs and Class members

may be entitled which the Court deems proper.

Dated:  December 2, 2011        ROSENTHAL, MONHAIT & GODDESS, P.A.


By: */s/ Jeffrey S. Goddess*
    Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
jgoddess@rmgglaw.com
bdeleeuw@rmgglaw.com

ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, Delaware 19899-1070
Telephone: (302) 656-4433
Telecopier: (302) 658-7567

Jonathan D. Selbin
jselbin@lchb.com
Daniel R. Leathers
dleathers@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

David P. Meyer
dmeyer@meyerwilson.com
Matthew R. Wilson
mwilson@meyerwilson.com MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100, Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Proposed Class*

-24-

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal

Rules of Civil Procedure.

Dated:  December 2, 2011          ROSENTHAL, MONHAIT & GODDESS, P.A.


By: */s/ Jeffrey S. Goddess*
   Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
jgoddess@rmgglaw.com
bdeleeuw@rmgglaw.com

ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, Delaware 19899-1070
Telephone: (302) 656-4433
Telecopier: (302) 658-7567

Jonathan D. Selbin
jselbin@lchb.com
Daniel R. Leathers
dleathers@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

David P. Meyer
dmeyer@meyerwilson.com
Matthew R. Wilson
mwilson@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Ste. 100, Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Proposed Class*

-26-

# EXHIBIT A

**ING DIRECT**

Orange Mortgage Department
P.O. Box 15737
Wilmington, DE 19850

Your mortgage needs may change. Our desire to save you money won't.

PRESORTED
FIRST CLASS
U.S. POSTAGE
PAID
ING DIRECT



**Are your mortgage needs changing?**
*We're here to help.*

William J. Maffei
1530 Beacon St., Apt. 606
Brookline, MA  02446-2643

Dear William,

As an ING DIRECT Customer you've probably saved thousands of dollars with your Orange Mortgage. Well, did you know you can save even more? Did you know that you can fix your rate for 5 more years? Or that when your mortgage needs change, it's easy to get another Orange Mortgage? Just spend a few minutes looking over the information below and see how ING DIRECT can keep those savings rolling in!

- **Is your fixed-rate period about to end?** Relax, you don't need a new loan. Just have us modify your existing Orange Mortgage. For $500 you can lock your rate for 5 more years as low as 5.50% (4.79% APR) without extending the time to pay off your mortgage. All you need to do is accept this offer by March 15, 2008. It's that easy. For details just check the back of this letter or give us a call at 1-800-ING-9263.

- **Buying a home or need some extra cash?**
  ING DIRECT's 5/1 Adjustable Rate Mortgage (ARM) has low closing costs and a great low rate of 5.50% (4.79% APR) with no points. Getting another Orange Mortgage could end up saving you thousands in closing costs and a few thousand more in monthly payments.

- **Need some extra cash but don't want to refinance your Orange Mortgage?** Call us about our Orange Home Equity. With no application fees, it's another way to use the value of your home.

Other banks and mortgage brokers often charge thousands of dollars in closing costs or points to get their best rate. Not ING DIRECT. With the Orange Mortgage, there are no catches, no hidden closing costs or fees. And our average closing costs are typically $1,000 lower than the national average. So start saving today!

Remember, if your needs have changed it only takes a few minutes to fix your rate for 5 more years or to get another Orange Mortgage.

Sincerely,

Jim Kelly
Chief Operating Officer, ING DIRECT

P.S.  The Orange Mortgage with low closing costs is now
      available on second homes.



**The Orange Mortgage™**



EQUAL HOUSING
LENDER

MEMBER
FDIC

Closing cost national average based on a $200,000 loan. Source: Bankrate.com article published 7/12/07.  ING DIRECT rates are as of 2/22/08, and may change at any time.

6653/S17/P1

OM-RT



## Answers to your questions

### Is the Orange Mortgage™ still a smart choice?

It is, for the simple reason that it can save you thousands of dollars. Think of it this way: You'll get a lower rate than most lenders charge.  There are no points, and none of the hidden fees and extra charges you may find with other lenders. The bottom line — you can keep more of your money when you choose the Orange Mortgage.

### How much does it cost to have my fixed rate period extended?

The cost to extend your fixed rate period is $500. Your loan balance will remain the same. The ease of managing your loan and making payments online won't change either. You'll get all the same great service you've come to expect. Because you will have a new rate, however, your monthly payment will probably change.

### The fixed-rate period on my Orange Mortgage is coming to an end and I am worried about my monthly payment going up. What should I do?

Call us at 1-800-ING-9263 and we can modify your existing Orange Mortgage with our special low rate for another 5 years…no need to re-apply. We'll send you a form with the new rate and monthly payment and all you have to do is sign and send it back to us. This is a convenient and smart way to save time and money.

### I've heard about "cash-out refinancing." What is it and should I do it?

"Cash-out refinancing" is when you refinance your mortgage and the new mortgage amount is more than your current loan balance. You're cashing out extra money, often to pay off higher-interest loans or to remodel your home. If the value of your home has gone up since you bought it or you've built some equity in your home, cash-out refinancing is something to consider.

### Even if rates move up, is my rate protected?

Yes, rate caps limit how high your rate can rise. Our caps are 2/2/6, which means that in the first variable rate period, your rate can only increase 2%. After that, it can only increase 2% a year, never increasing more than 6% over the original rate for the life of the loan.

## Call us at 1-800-ING-9263 today.

# EXHIBIT B

## BRIGHT SPOTS

April 2009

**$9,090,006,698**   Interest paid out to all ING DIRECT Customers as of March 31, 2009.

### How to resolve an insecurity complex.

Here are some great online tips to keep your savings and personal information safe.



- Protect yourself from online fraud and ID Theft with FREE state-of-the-art Rapport security software from Trusteer.

- Don't click pop-ups and don't download files from websites you don't trust.

- When making online transactions, be sure web addresses begin with https (not http) and look for a key or padlock icon in your browser window.

- Don't surf to other sites while you are visiting a secure banking site; finish banking, always log out and close your browser before you move on.

- Don't click links or open attachments in suspicious emails. We will never ask you to give personal information by email.

- Never send personal or sensitive information by email.

- Choose passwords that are difficult to guess and change them on a regular basis.

- Don't use the same passwords for other websites that you use for secure sites like ingdirect.com.

- Back up your important computer files at least once a month.

**Learn more about how to keep yourself protected at the Security Zone.**

### Protect what's yours.

You know we're always updating our safety features at ING DIRECT. It's a priority for us. We do our part to protect you and your information, keep you informed and provide you with the necessary tools and resources. But you need to do your part.

Just following a few simple rules can make all the difference. Logging off browsers. Using different passwords. Only doing business with companies you know are reputable. Small things. But important rules of the road when it comes to keeping your personal information safe.

Statistically speaking, transactions on the Internet are more secure than getting paper statements. But it's still important to be vigilant.

You worked hard for what you have.



**Arkadi Kuhlmann**
President of ING DIRECT
CEOofSavings@ingdirect.com

- Take the roof rack off of your car when you're not using it and boost your car's fuel efficiency by as much as six miles per gallon.

- Check out the local beauty college for hair coloring and styling – it can cost one-third to one-half of the price of a salon.

- Cut dryer sheets in half and double the value of every box.

- Make an extra mortgage payment each year – it will take thousands off the total interest you'll pay and years off the time it takes to pay off the loan.

**Get more tips like these at ingdirect.com/tips.**

### CEO of Savings Q&As

**Q: Are rates affected by more than just market conditions?**

**Arkadi:** Absolutely. For example, with the FDIC's increased exposure to failed banks comes an increased cost. Member banks like ING DIRECT must pay to offset this cost. The fact is, FDIC insurance isn't free. We, the consumers, must pay the FDIC to insure our deposits. The largest impact? Lower interest rates on our savings. It's a burden we all have to bear – but one that's necessary to get this great country of ours back on track.

Many banks are feeling the effects of the economic crisis. Fees are more important than ever, especially for consumers. In a world where savings and investment returns are more modest and less certain, those few dollars a month on your bank statement suddenly matter a lot more. Americans are paying an average of $1,000 per year in sneaky fees. The average overdraft fee alone is now $27 and the average ATM surcharge is up 11% from last year, now at $1.97.

Take a hard look at what banks make you pay to access your money and what you're getting in return:

- Keep tabs on your money – track all ATM fees, bill payments, dormancy fees, electronic funds transfers and other transaction charges.

- Make your bank explain the charges – if you think a charge isn't fair, say so.

- Consider your options – shop around and don't just look at what you're getting from those products, look at what that bank is taking from you in return.

- Read the fine print, and pay attention to asterisks (you'll notice we don't use any).

## Can't remember your Customer Number?



It's that time again – your eStatement is available. You go to ingdirect.com to sign in and view it and then it happens – you draw a complete blank. You forgot your Customer Number, again.

But did you know you have another option for signing in? Set up a Saver ID, a unique username that you can use in place of your Customer Number when signing into the website.

**To create your own easy-to-remember Saver ID:**

1. Sign in to ingdirect.com with your Customer Number (use the Online Customer Number Lookup Tool to look it up if you forgot it) and PIN

2. Click on the 'My Info' tab

3. Select the 'Change' button in the 'Saver ID' section

4. Enter a Saver ID you can easily remember

## Saving starts with your home.

You make it easy for us and we'll return the favor by helping you own your home faster. That's the idea behind Easy Orange. All you have to do is apply online, make bi-weekly electronic payments (you'll pay your mortgage off faster and be a little more green), and have good credit. No big deal, right? Want to know what's in it for you?

- Great 5-year fixed rate of 4.25% (4.24% APR)

- Same low rate for loans up to $750,000

- Free bi-weekly payments so you can own your home sooner.

- **Using the right pot size** on the same-size burner (rather than too large or too small) can save about $36 annually in electric or $18 in gas.

- **Save water with every flush** when you put a half-gallon, sand-filled milk jug in your toilet tank. The average American family will save 20 gallons of water a day.

- **Download new music.** CD cases are often made with polyvinyl chloride, which doesn't recycle easily, and most packaging and CDs end up in a landfill. Plus it reduces production costs and energy.

- **Use your microwave or slow cooker.** Electric and convection stoves and ovens drain tons of energy. Crock pots, microwaves and toaster ovens are more efficient.

### Tweet and Re-Tweet about ING DIRECT.



Keep your finger on the pulse of what's happening at ING DIRECT on Twitter – a site for friends, family, and co-workers to communicate and stay connected through the exchange of quick, frequent answers to one simple question: What are you doing? **Follow us @ingdirect.**

### ING DIRECT meets your iGoogle page.

*iGoogle*

As if we didn't make saving easy enough, now you can get a quick and easy savings tip from your iGoogle home page. It could be anything from saving money at the gas pump to reducing your winter heating bills. After all, every little bit helps.

# EXHIBIT C





Save Your Money ®

☐ Easy Orange™
- Overview
- Rates and Closing Costs
- Why an Easy Orange?
- How an Easy Orange works?
- Apply Now

**The mortgage for Savers**
Easy Orange is not your ordinary mortgage - it's all electronic and has a great 5 year fixed rate, with a payment based on 30 years. At the end of the fixed rate term, the remaining balance will be due. But then, we offer Rate Renew, which provides an opportunity to qualify to relock your rate and extend your fixed rate period for another 5 years at the Easy Orange rate at that time. With Easy Orange, you'll have your mortgage paid off in no time.

**Low Rates**
Get rewarded for having great credit - low rates and no points could save you thousands.

**Low Closing Costs**
Unlike other banks, we don't charge application fees, points or other junk fees. See for yourself.

**Bi-weekly payments**
Own more of your home sooner, and unlike most banks, you won't get charged a fee for this feature.

**Rate Renew**
No need to refinance. Just qualify and relock your rate anytime and extend your fixed rate for another 5 years at the Easy Orange rate at that time for a flat charge of $750.

**Quick and Easy Application**
Apply online in minutes and even do your closing online or by phone.

**Not For Everyone**
If you're the type of person that prefers managing your mortgage online and making bi-weekly payments electronically, this is the mortgage for you. It will save you thousands and help you own more of your home sooner, as long as you don't need to borrow more than 75% of the value of your home and you will not get a second mortgage in the future. For those that are looking for something similar to Easy Orange, we also have the Orange Mortgage.

Learn more if Easy Orange is a fit for you. Apply online now, and in most cases, you'll receive a decision in minutes.

Questions? Call us. We'll listen. **1-866-327-4599**.

MEMBER **FDIC**

