# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOHNATHAN AND TRUDE YARGER, a
married couple,

                              Plaintiffs,

            v.

ING BANK, FSB D/B/A/ ING DIRECT,

                         Defendant.

Case No.:  11-154-LPS

**ORAL ARGUMENT REQUESTED**

REDACTED 4/11/12

## REPLY BRIEF IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Jonathan D. Selbin
jselbin@lchb.com
Jason L. Lichtman (*pro have vice* application
pending)
jlichtman@lchb.com
Daniel R. Leathers
dleathers@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York  10013-1413

David P. Meyer
dmeyer@meyerwilson.com
Matthew R. Wilson
mwilson@meyerwilson.com
MEYER WILSON, CO., LPA
1320 Dublin Road, Ste. 100,
Columbus, Ohio 43215

Daniel M. Hutchinson
dhutchinson@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California  94111-3339

Jeffrey S. Goddess  (Del. Bar No. 630)
jgoddess@rmgglaw.com
P. Bradford deLeeuw  (Del Bar No. 3569)
bdeleeuw@rmgglaw.com
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
Wilmington, Delaware 19899-1070

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENT ............................................ 1

II.   ARGUMENT ................................................................................................. 2

    A.    Plaintiffs Have Satisfied Numerosity and Defined the Class
        Objectively. ........................................................................................ 2

    B.    Plaintiffs Have Satisfied Typicality. ................................................ 4

        1.    A Mortgage Broker Does Not Defeat Typicality. .......................... 5

        2.    The "Voluntary Payment Doctrine" Does Not Apply. .................. 6

    C.    Rule 23(b)(2) Certification Is Proper. ............................................... 6

    D.    Plaintiffs Have Established Commonality and Predominance. ................. 8

        1.    Rate Renew Marketing was Uniform During the Class
            Period. ............................................................................................ 8

            a.    ING's Advertising Conveyed a Uniform Message. ........... 8

            b.    ING Can Identify Who Got Each Rate Renew Ad. ......... 10

            c.    ING Representatives All Sang "the Same Song." ........... 10

        2.    Delaware Law Applies ................................................................. 11

        3.    Each of Plaintiffs' Claims is Appropriate for Certification. ........ 12

            a.    DFCA Claim .................................................................. 12

            b.    Fraud and Promissory Estoppel ...................................... 13

            c.    Unjust Enrichment and Implied Covenant of Good
               Faith ............................................................................. 13

        4.    Individual Damages Issues are no Obstacle to Class
            Certification. ................................................................................ 14

    E.    A Class Action Is Superior To (Hypothetical) Individual Actions. .......... 15

III.  CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) .................................................................................. 5

*Bogosian v. Gulf Oil Corp.*,
561 F.2d 434 (3d Cir. 1977) ................................................................................ 14

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ......................................................................... 14, 15

*Chisolm v. TranSouth Fin. Corp.*,
194 F.R.D 538 (E.D. Va. 2000) .......................................................................... 13

*Chudner v. TransUnion Interactive, Inc.*,
2010 U.S. Dist. LEXIS 141052 (D. Del. Dec. 14, 2010)..................................... 14

*DG v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ............................................................................ 3

*Donaldson v. Microsoft Corp.*,
205 F.R.D. 558 (W.D. Wash. 2001) ...................................................................... 6

*Eames v. Nationwide Mut. Ins. Co.*,
412 F. Supp. 2d 431 (D. Del. 2006)..................................................................... 13

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985) ................................................................................ 14

*Gates v. Rohm & Haas Co.*,
655 F.3d 255 (3d Cir. 2011) ................................................................................ 14

*Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*,
832 A.2d 116 (Del. Ch. 2003) ............................................................................ 11

*Heisler v. Maxtor Corp.*,
2010 U.S. Dist. LEXIS 125745 (N.D. Cal. Nov. 17, 2010) ................................... 3

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
213 F.3d 124 (3d Cir. 2000) ................................................................................ 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011)..................................................................... 3

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Chiang,*
    385 F.3d 256 (3d Cir. 2004) ........................................................................ 14, 15

*In re Honeywell Int'l Inc. Sec. Litig.,*
    211 F.R.D. 255 (D.N.J. 2002) .......................................................................... 10

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305 (3d Cir. 2008) ........................................................................ 14, 15

*In re Ins. Brokerage Antitrust Litig.,*
    579 F.3d 241 (3d Cir. 2009) .............................................................................. 15

*In re Mercedes-Benz Tele Aid Contract Litig.,*
    257 F.R.D. 46 (D.N.J. 2009) ....................................................................... 10, 13

*In re Mercedes-Benz Tele Aid Contract Litig.,*
    267 F.R.D. 113 (D.N.J. 2010) ........................................................................... 10

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    252 F.R.D. 83 (D. Mass. 2008) ......................................................................... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ............................................................................ 4, 5

*In re Schering Plough Corp. ERISA Litig.,*
    589 F.3d 585 (3d Cir. 2009) ............................................................................... 5

*In re Warfarin Sodium Antitrust Litig.,*
    212 F.R.D. 231 (D. Del. 2002) ...................................................................... 2, 12

*Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.,*
    617 F.3d 207 (3d Cir. 2010) ............................................................................... 5

*Johnson v. GEICO Cas. Co.,*
    673 F. Supp. 2d 255 (D. Del. 2009) ................................................................... 13

*Jordan v. Paul Financial, LLC,*
    2009 U.S. Dist. LEXIS 7592 (N.D. Cal. Jan. 27, 2009) ...................................... 6

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds,*
    571 F.3d 672 (7th Cir. 2009) ..................................................................... 3, 4, 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Learjet Corp. v. Spenlinhauer,*
  901 F.2d 198 (1st Cir. 1990)........................................................................ 5

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
  2012 U.S. App. LEXIS 3683 (7th Cir. Feb. 24, 2012) ............................... 7

*Messner v. Northshore Univ. HealthSystem,*
  669 F.3d 802 (7th Cir. 2012) ..................................................................... 8

*Moffatt Enters., Inc. v. Borden, Inc.,*
  807 F.2d 1169 (3d Cir. 1986) ................................................................... 11

*Nemec v. Shrader,*
  991 A.2d 1120 (Del. 2010) .................................................................. 13, 14

*Nieves v. All Star Title, Inc.,*
  2010 Del. Super. LEXIS 319 (Del. Super. Ct. July 27, 2010)................... 6

*Nuzzi v. Aupaircare, Inc.,*
  341 Fed. Appx. 850 (3d Cir. 2009)........................................................... 11

*Oshana v. Coca-Cola Co.,*
  472 F.3d 506 (7th Cir. 2006) ..................................................................... 4

*Paul v. Deloitte & Touche LLP,*
  2007 U.S. Dist. LEXIS 60639 (D. Del. Aug. 20, 2007) ......................... 12

*Spark v. MBNA Corp.,*
  178 F.R.D. 431 (D. Del. 1998) ................................................................. 13

*Sullivan v. DB Invs., Inc.,*
  667 F.3d 273 (3d Cir. 2011) ...........................................................*passim*

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S.Ct. 2541 (2011).......................................................................... 1, 6, 8

*Williams v. Balcor Pension Investors,*
  150 F.R.D. 109 (N.D. Ill. 1993)................................................................. 6

**RULES**

Federal Rule of Civil Procedure
  Rule 1 ....................................................................................................... 15

**TABLE OF AUTHORITIES**
**(continued)**

Page

Rule 23(a)(2)..................................................................................................8
Rule 23(a)(3)..................................................................................................4
Rule 23(b)(2)...............................................................................................6, 7

**TREATISES**

7A *Wright, Miller & Kane, Fed. Prac. & Proc.*
§ 1760 (3d ed. 2005)...................................................................................3

Manual for Complex Litigation (4th ed. 2004)
§ 21.222....................................................................................................3

Restatement (Second) of Torts (1977)
§ 533.........................................................................................................5

## I.    **INTRODUCTION & SUMMARY OF ARGUMENT**

Contrary to how defendant ING Bank ("ING") tries to frame it, this case does not involve individualized loan decisions that turn on unique facts and circumstances.  It does not involve differing written representations that may or may not have been received, nor does it arise from any oral representations whatsoever.  Instead, it involves a uniform bait-and-switch scheme by ING, carried out from Delaware, which it effected through written advertisements that made uniform promises regarding Rate Renew during the Class Period.  Undisputed facts establish:

First, ING all but admitted its liability to *all* Class Members, through the testimony of the executive responsible for Rate Renew, Scott Lugar, who testified that providing consumers Rate Renew on the terms ING marketed is, simply, the ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████  This remarkable admission provides the central and unquestionably predominant question — and answer — that will "resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), both for purposes of damages (for those, like Plaintiffs, who paid more than the promised Rate Renew cost) and injunctive relief (for those who have yet to obtain a Rate Renew).

Second, this is not a case about oral misrepresentations or varying written misrepresentations.  No claim turns on anything spoken by ING.  All claims turn only on written ING ads that, during the relevant time period, uniformly represented Rate Renew, and none of which included any "asterisks" or "fine print."  The only salient difference is whether Rate

---

[1] ████████████████████████████████████████  All evidentiary citations are to the Declaration of Daniel R. Leathers ("Leathers Reply Decl.").

[2] ████████████████.

Renew was offered at $500 or $750, a difference tied strictly to the date of the ad.

Third, under Delaware law, a customer's individual receipt and understanding of ING's ads is irrelevant because reliance is not an element of most claims, and can be presumed on a classwide basis for the rest. Thus, common issues predominate because this litigation will focus overwhelmingly — and for purposes of most claims, *exclusively* — on ING's uniform conduct. As the Third Circuit has held, the first "guidepost" that directs the predominance inquiry mandates "that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc).

Fourth, ING has admitted that it can determine from its data which advertising went to which customer. Thus, to the extent a jury might find some ads deceptive and others not, it is a purely ministerial task to determine which Class Members recover and which do not.

Fifth, these claims arise not from the underlying mortgage documents, but from ING's Rate Renew advertising and marketing. The applicable (ING-imposed) choice-of-law clause mandates application of Delaware law. ING's invocation of choice-of-law clauses in the mortgage documents fails, as Plaintiffs' claims do not arise from those documents, and the clauses in them do not govern these advertising claims. In any event, Delaware law applies because ING's misconduct occurred in and from Delaware. *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002).

## II. <u>ARGUMENT</u>

### A. <u>Plaintiffs Have Satisfied Numerosity and Defined the Class Objectively.</u>

ING's numerosity challenge is curious. That the Class consists of tens of thousands of consumers is beyond dispute. ███████████████████████████████████,

and that it marketed Rate Renew to all of these customers.[3]

This Class is also defined properly.[4]  The Manual for Complex Litigation ("Manual")

explains that a class "definition must be precise, objective, and presently ascertainable . . . [and]

an identifiable class exists if its members can be ascertained by reference to objective criteria."

*Id.* § 21.222 (4th ed. 2004); *see also* 7A *Wright, Miller & Kane, Fed. Prac. & Proc.* § 1760, at

139-40 (3d ed. 2005).  The Manual contemplates precisely the type of class proposed here:  "[a

class] may consist of those persons . . . [who] purchased specified products or securities from the

defendants during a specified period . . . ."  *Id.* § 21.222.

ING's argument that the Class should be defined as "those who have been harmed" is

wrong.[5]  A proposed class will "almost inevitabl[y]" include persons who have not been injured.

*See Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009); *DG

v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) (same).  Indeed, an analysis of who has valid

claims is inappropriate at class certification, as the Third Circuit recently made clear.  *See

Sullivan*, 667 F.3d at 306 ("[T]he Rules and our case law have consistently made clear that

plaintiffs need not actually establish the validity of claims at the certification stage.").[6]

---

[3] ██████████████████████  D.I. 45 at 13.

[4] ING appears to have confused the requirement that a class be sufficiently numerous ("numerosity") with the requirement that a class be defined appropriately.

[5] The type of class ING has posited, consisting *solely* of those who have suffered injury, is specifically forbidden.  *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 969-970 (N.D. Ill. 2011) (collecting cases).  A "failsafe class," so called because anyone who does not recover is defined out of the class and free to litigate, is impermissible, in part because it forces a court to make an individual liability determination on class certification. *See id.*  Indeed, this was the exact problem in *Heisler v. Maxtor Corp.*, No. 5:06-cv-06634, 2010 U.S. Dist. LEXIS 125745 (N.D. Cal. Nov. 17, 2010), which ING cites.

[6] ING attempts to undercut *Sullivan* because it involved settlement.  The Third Circuit was careful, however, to distinguish holdings limited to settlement from those also relating to litigation classes.  *E.g.*, *Sullivan*, 667 F.3d at 300 ("[T]he answers to questions about De Beers's alleged misconduct and the harm it caused would be common as to all of the class members, *and*

Footnote continued on next page

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514-15 (7th Cir. 2006) is not to the contrary. There, plaintiffs alleged that Coca-Cola deceived millions of Diet Coke purchasers by not disclosing that the fountain and bottled Diet Coke differed slightly.  The class denied in *Oshana* was similar to the hypothetical class *Sullivan* rejected — a "practically limitless" class "of everyone on earth regardless of . . . purchases" who "simply feel wronged."  *Sullivan*, 667 F.3d at 300-01 (quotations omitted); *see also Kohen*, 571 F.3d at 677 (distinguishing *Oshana*). *Oshana* is a far cry from this case, asserted on behalf of *specific* customers to whom ING directly marketed Rate Renew, a feature ING knew and intended to be material to customers' decisions to purchase and/or retain an ING mortgage.[7]

There is a modification to the Class originally proposed that Plaintiffs believe is appropriate: the end date should be changed from May 30, 2009 to April 23, 2009.  That modification is necessary because the last ad promising the $750 Rate Renew was sent on April 23, 2009.[8]  Plaintiffs request that the Court modify the Class definition to reflect this change.

### B.    Plaintiffs Have Satisfied Typicality.

Plaintiffs, like all Class Members, purchased or retained an ING mortgage during the period that ING advertised Rate Renew at either $500 or $750, and then refused to honor that promise.  Plaintiffs are thus typical for purposes of Rule 23(a)(3), as they bring claims on behalf of all those also subject to this scheme.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) ("[C]hallenging the same unlawful conduct which affects both the named plaintiffs and the putative class members usually satisf[ies] the typicality

---

*Footnote continued from previous page*
*would thus inform the resolution of the litigation if it were not being settled*." (emphasis added)).

[7] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████

[8] Ex. B (█████████████████████████████████).

requirement irrespective of the varying fact patterns underlying the individual claims.").

Typicality is found lacking only where the class representative is subject to a unique defense "that is both inapplicable to many members of the class and likely to become a major focus of the litigation."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009) (no typicality where class representative signed agreement including a general release and covenant not to sue); *see also Beck v. Maximus, Inc.,* 457 F.3d 291, 300 (3d Cir. 2006) ("To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial.").  This is not such a case.

### 1.    A Mortgage Broker Does Not Defeat Typicality.

ING's argument that Plaintiffs are not typical because they used a mortgage broker is unpersuasive.  Typicality does not fail merely because a defendant can point to some difference, however trivial, between plaintiffs and class members.  *See In re Prudential*, 148 F.3d at 311.

As an initial matter, it is undisputed that ING *did* convey misrepresentations directly to Plaintiffs.[9]  It also is undisputed that Plaintiffs' broker provided ING's written representations to them, and conveyed the same information found therein.[10]  ING is equally liable whether it conveyed its misrepresentations directly or through a third party.  *See, e.g.* Restatement (Second) of Torts § 533 (1977); *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 218-19 (3d Cir. 2010); *Learjet Corp. v. Spenlinhauer,* 901 F.2d 198, 201 (1st Cir. 1990).

Even if ING had not communicated directly with Plaintiffs (it did) and even if the

---

[9] *See, e.g.*, Ex. 2 ("Yarger Dep.") at 101:11-102:11 (they received Rate Renew ad from ING).

[10] *See* Ex. 2 ("Yarger Dep.") at 93:2-8  ("Q. The advertisements that are referenced on paragraphs 11 and 12 of the complaint are not ones that you looked at or saw . . . correct? A. This is what our broker communicated to us.").  The broker conveyed ING's promise that Plaintiffs could "[e]xtend [their] fixed-rate period any time after the first six months for another 5 years by locking in at the current rate for only $750."  (D.I. 36 (Complaint) at ¶11.)

broker's statements differed from ING's written advertisements (they did not), it would only be relevant if those differences were somehow material to the legal claims. And this could *never* be true with respect to three of Plaintiffs' claims — breach of the Delaware Consumer Fraud Act ("DCFA"), unjust enrichment, and breach of implied covenant of good faith — because these claims do not require any showing that Plaintiffs actually saw the misrepresentations.[11]

The cases ING cites are well off point. In *Jordan v. Paul Financial, LLC*, No. C-07-4496, 2009 U.S. Dist. LEXIS 7592 (N.D. Cal. Jan. 27, 2009), plaintiff lacked standing because the defendant "never held or serviced his loans." *Id.* at *13. The court referenced the mortgage broker solely to note that he actually informed plaintiff of the fact plaintiff claimed not to have known. *Id.* at *15. Not so here. In *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112-14 (N.D. Ill. 1993), plaintiff relied upon materially *different* statements than other class members. Not so here. *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558 (W.D. Wash. 2001) is a an employment discrimination case not unlike *Dukes* where there was no evidence employees were treated "in the same or similar ways." *Id.* at 567.

### 2. The "Voluntary Payment Doctrine" Does Not Apply.

Plaintiffs are not subject to the "voluntary payment doctrine." As the lone case ING cites, *Nieves v. All Star Title, Inc.*, 2010 Del. Super. LEXIS 319, *26 (Del. Super. Ct. July 27, 2010), explains, that doctrine "could not be applied if a plaintiff presented a viable claim of common-law or consumer fraud," as Plaintiffs do here. Even it could apply, that defense is not unique to Plaintiffs; it would apply (or not) to all those who paid more than the promised Rate Renew cost.

### C. Rule 23(b)(2) Certification Is Proper.

"Rule 23(b)(2) authorizes class actions seeking injunctive relief in instances where the

---

[11] *See* D.I. 46 ("Selbin Decl.") at Ex. 2 (setting forth the common elements of each claim).

defendant 'has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole.'" *Sullivan*, 667 F.3d at 296. Here, Plaintiffs seek a single, straightforward, injunction granting each Class Member the right to obtain Rate Renew at the promised cost (i.e., $500 or $750). Such an injunction would not, as ING argues, ███████████████████████████████████. To the contrary, ING has all but admitted that such an injunction is proper. Its executive in charge of Rate Renew explained that ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████. The injunction is plainly uniform; the only difference is the cost. And ING has conceded that it can determine which offer went to which Class Member.[14]

    ING's arguments against injunctive relief are not only incorrect; they are also improperly directed at the *merits* of Plaintiffs' proposed injunction, not its uniformity. *Cf. McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, __ F.3d. __, 2012 U.S. App. LEXIS 3683, at *23-24 (7th Cir. Feb. 24, 2012) (for purposes of 23(b)(2) certification, "The only issue at this stage is whether the plaintiffs' claim . . . is most efficiently determined on a class-wide basis rather than in 700 individual lawsuits."). Whether ING's uniform representation of Rate Renew lasts, as Plaintiffs allege, for the life of the loan, or, as ING suggests (based on a factually distinguishable case), for only one year, can be determined once based on common evidence. Similarly, ING's unsupported assertion that the "heavily regulated" nature of its business prevents injunctive relief



[12] ████████████████████████

[13] █████████████████████████████████████████████████████ ████████████████████████████████████████

[14] *See, e.g.,* ██████████████████████████████████████████ ████████████████ Ex. 3 ("Kendall Dep.") at 181:13-17.

is both false by ING's own admission[15] and an assertion that can be adjudicated classwide.

### D.    Plaintiffs Have Established Commonality and Predominance.

The first of "three guideposts that direct the predominance inquiry" is "that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Sullivan*, 667 F.3d at 297.  Plaintiffs have satisfied commonality and predominance here.  Put simply, it either was or was not misleading — on an entirely objective, "reasonable consumer" basis — for ING to promise consumers a low, fixed, price to renew their adjustable rate mortgages at prevailing interest rates, and then refuse to permit them to do so.  Because this litigation focuses overwhelmingly — and for the purposes of most claims, *exclusively* — on ING's uniform conduct, common issues of law and fact predominate.  *Sullivan*, 667 F.3d at 299-300; *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).  ING nonetheless argues that predominance is defeated because individualized inquiries into reliance are necessary, as Class Members received "widely varying marketing materials."[16]  Not so.

### 1.    Rate Renew Marketing was Uniform During the Class Period.

#### a.    ING's Advertising Conveyed a Uniform Message.

ING admits that the ███████████████████████████████████████

███████████████████████████████████  ING nonetheless argues that common



---

[15] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

[16] ING also argues that commonality is not present.  This evinces a misunderstanding of the law; "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S Ct. at 2556 (citation omitted).  Plainly, there are many questions whose common answers will drive the resolution of this litigation.  (*See* D.I. 45 at 14-15, 18-26 (listing such questions).)

[17] ██████████████████████████████████

issues do not predominate because ING communicated Rate Renew to Class Members through five primary marketing channels: quarterly newsletters (known as "Bright Spots"), ING's website, direct-mail, cross-sale e-mails, and monthly statement messages.[18]  However, the purportedly "different" Rate Renew ads submitted by ING are *all* from *outside* the Class Period.[19]  They have no bearing on whether the ads *during* the Class Period were uniform.[20]

ING's representations through *each* medium during the Class Period were uniform with respect to the relevant promise; they share the following characteristics:[21]

- All ads tout Rate Renew as a key feature of ING mortgages.
- All ads list a price of $500 or $750.
- No ad discloses that the Rate Renew price could change.
- No ad lists any eligibility requirements.[22]
- No ad lists an expiration date.[23]
- No ad contains any "asterisks" or "fine print."[24]

---

[18] ████████████████████████████████████ *see also* D.I. 66 ("Opp.") at 5-8.

[19] Leathers Reply Decl., ¶ 7; *see also* Ex. C.

[20] ING also argues that common issues do not predominate because ING sent additional *post-marketing* communications (offer letters, a Rate Renew Addenda, and pipeline emails after conditional loan approval) that, in some instances, mentioned Rate Renew.  None of these after-the-fact documents can "cure" ING's misrepresentations.  If, however, a jury does find that any post-marketing document does "cure" ING's initial false and misleading communications, the specific Class Members who received that document can be readily indentified from ING's own data, *supra* footnote 14, and simply will not recover.  *See Kohen*, 571 F.3d at 677.

[21] Ex. B (████████████████████████████ .

[22] Seven references to "qualif[ication]" were linked to qualification for the loan itself only; each ad containing the term was sent only to certain prospective ING mortgage holders, not current loanholders. ███████████████████████████  In this context, it is clear that "qualify" refers to qualifying for the ING loan itself, not qualifying for Rate Renew.

[23] ██████████████████████████████████████████████████████████

[24] D.I. 47, H at 2 ("[r]ead the fine print, and pay attention to asterisks (you'll notice we don't use any)";

Furthermore, ING never revoked these Rate Renew guarantees.[25]

### b.    ING Can Identify Who Got Each Rate Renew Ad.

Even if there are material differences in ING's advertising during the Class Period (there are not), ING's records establish which Class Members received which ads.[26]  Thus, if a jury concludes that some of ING's ads were not deceptive, Class Members who received only those ads will not recover.  But limited variations between ads do not defeat predominance.  *In re Honeywell Int'l Inc. Sec. Litig.*, 211 F.R.D. 255, 267 (D.N.J. 2002) ("[E]ven if Plaintiffs' claims are viewed as based upon a series of discrete statements rather than upon a single scheme, issues peculiar to individual Plaintiffs will not predominate."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ("*Tele Aid*") (certifying class of consumers exposed to different written disclosures), *Rule 23(f) denied*, No. 09-8032 (3d Cir. June 8, 2009).[27]  The jury can simply be asked to determine which ads were deceptive; it is then a purely ministerial task to determine from ING's data which Class Members recover.

### c.    ING Representatives All Sang "the Same Song."

ING suggests that Plaintiffs base their claims on oral misrepresentations.  Not so: Plaintiffs' claims are premised *solely* on ING's *written* promises.[28]  Nor is there a shred of evidence that any ING representative said anything that varied from ING's written promises. That is not surprising:  ING ensured that *all* of its representatives were "singing the same song" about such matters.[29]  It accomplished this through extensive training and regular formal training

---

[25] Ex. 3 ("Kendall Dep.") at 118:22–119:4.

[26] *Supra* footnote 14.

[27] The *Tele Aid* court later denied decertification. *See In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113 (D.N.J. 2010), *Rule 1292(b) denied*, No. 10-8019 (3d Cir. Apr. 19, 2010).

[28] D.I. 45 at 5-7.

[29] ███████████████████████████████████████

*Footnote continued on next page*

"flashes."[30]  The "sales points" that ING personnel used "were *exactly the same*."[31]

### 2. Delaware Law Applies

These claims are governed by a Delaware choice-of-law provision on ING's website, through which ING conducts its banking relationship with customers (it has no branches) and through which much of the deceptive advertising was conveyed.[32]  ING's argument that each Class Member's home state law applies because of choice-of-law clauses in the underlying mortgage documents fails, for two independently sufficient reasons.

First, Plaintiffs assert no claims arising from the underlying mortgage documents; their claims all arise from ING's false advertising.  *See Moffatt Enters., Inc. v. Borden, Inc.*, 807 F.2d 1169, 1174 (3d Cir. 1986) (contractual language is irrelevant to a claim for fraud in the inducement).  Second, it is settled Delaware law that choice-of-law clauses that do not include broad language evincing the parties' intent to sweep in all claims (e.g., any/all claims "arising out of or relating to the agreement"), only mean "that Delaware law applies to the 'rights of the parties' derived from the contract."  *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003); *Nuzzi v. Aupaircare, Inc.*, 341 Fed. Appx. 850, 852-3 (3d Cir. 2009) (choice-of-law provision governing "This Agreement" does not encompass non-

*Footnote continued from previous page*

████████████████████████████████████████████████

[30] ███████████████████████████████████████████████

[31] Ex. 3 ("Kendall Dep.") at 141:1-5.

[32] The provision states: "These Terms and Conditions . . . [are] governed by and construed in accordance with the laws of the State of Delaware."  (D.I. 47 at Ex. R.)  ING is a web-based bank with no branches, and thus customers use the website to manage their accounts. ████████████████████████████████████ Ex. 3 ("Kendall Dep.") at 132:5-9 (ING uses its website to both acquire new customers and inform current customers about ING's products); *see also id.* at 24:17-25:4 (Scott Lugar's responsibilities include funneling customers to the website).)

contractual claims); *Paul v. Deloitte & Touche LLP*, No. 06-225-MPT, 2007 U.S. Dist. LEXIS 60639 at *13 (D. Del. Aug. 20, 2007) (absent broad language, Delaware reads contractual choice-of-law claims not to cover tort claims). This is just such a narrowly written clause; it states only that ███████████████████████████████████████████████

██████████████████████ [33] Even if Plaintiffs' claims arose from the mortgage documents, such a clause would not apply to these tort claims.

Absent a choice-of-law clause, moreover, Delaware law still applies. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002) ("Where the defendant's headquarters are located in Delaware and the alleged deceptive acts originated in Delaware, it is proper to apply the Delaware consumer fraud statute to a nationwide class."). ING's argument that *Warfarin* is inapplicable because its conduct did not originate from Delaware is false. A preponderance of the evidence shows that ING fraudulent activity occurred in Wilmington.[34]

Finally, as the Third Circuit held in *Sullivan*, the second of "three guideposts that direct the predominance inquiry" is "that variations in state law do not necessarily defeat predominance." 667 F.3d at 297. If the Court concludes it cannot apply Delaware law, Plaintiffs request the opportunity to demonstrate that class certification remains proper. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 94 (D. Mass. 2008) (grouping state consumer protection laws for class certification).

### 3.    Each of Plaintiffs' Claims is Appropriate for Certification.

#### a.    DFCA Claim

Certification of Plaintiffs' DFCA claim is proper because ING's advertising contained

---

[33] ████████████████████████████████████████████████████
████████████████████████████████████████████

[34] *See, e.g.*, ████████████████████████████████████████
██████████; Ex. 4 ("Battaglia Dep.") at 15:14-17.

the uniform misrepresentation that Class Members would be able to Rate Renew at a fixed, low, cost, and none contain any limiting disclosure. ING's argument that Plaintiffs must show individual receipt of an ad and reliance thereon is misplaced. The DCFA does not have a reliance requirement, and therefore involves no individualized inquiry. *See, e.g., Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 255, 276 (D. Del. 2009); *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 437 (D. Del. 2006).

### b.  Fraud and Promissory Estoppel

Plaintiffs' fraud and promissory estoppel claims can be adjudicated on a classwide basis because reliance can be presumed in these circumstances. *Spark v. MBNA Corp.*, 178 F.R.D. 431, 435 (D. Del. 1998). *Spark*, which involved uniform written representations by a bank about an issue so fundamental to the relationship that reliance could be presumed, is largely indistinguishable from this case.[35] Here, ING knew and intended that its customers would rely on Rate Renew, and made Rate Renew a central part of its customer retention strategy.[36]

### c.  Unjust Enrichment and Implied Covenant of Good Faith

Plaintiffs' claims for unjust enrichment and breach of implied covenant of good faith and fair dealing are well-suited for class treatment. Both claims focus on ING's actions, rather than on the conduct of individual Class Members. *See, e.g., Tele Aid*, 257 F.R.D. at 73 (an unjust enrichment claim "deal[s] only with [defendant's] behavior").[37] *Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010) is not to the contrary. *Nemec*, which involved breach of the implied

---

[35] ING's claim that *Spark* has not been cited for this holding outside of the securities context is wrong. *See, e.g., Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D 538, 559-60 (E.D. Va. 2000).

[36] ███████████████████████████████

[37] In its attempt to distinguish *Tele Aid*, ING badly mischaracterizes its facts. The *Tele Aid* class was *not* limited to those who actually paid to upgrade; it was comprised primarily of those who never paid to get what they were promised. *Tele Aid*, 257 F.R.D. at 75.

covenant of good faith claims, makes clear that the predominant inquiry is whether the "party asserting the implied covenant [can show] that the other party has acted arbitrarily or unreasonably." *Id.* at 1126. As applied to this case, then, the question is whether ING's failure to honor its Rate Renew promise was arbitrary or unreasonable. *See id*. That inquiry will not vary customer to customer.

### 4.    Individual Damages Issues are no Obstacle to Class Certification.

ING's argument that individualized damages defeat predominance is contrary to "settled law that the necessity for proving damages individually does not defeat class predominance or class certification." *In re Chiang*, 385 F.3d 256, 273 (3d Cir. 2004) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)); *accord Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.").[38]

ING's cases do not compel a contrary conclusion. Indeed, ING misapprehends its primary citation, which is a case in which certification was denied because "*liability* . . . require[d] an individualized inquiry into the equities of each claim." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (emphasis added). ING's other citations are equally inapplicable, as they refer to cases in which there is "no marked division between damages and liability." *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 273 (3d Cir. 2011); *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). In an antitrust case, for example, no class can be certified unless "antitrust impact" is capable of class-

---

[38] ING cites a short opinion from a visiting judge that could be read to stand in direct opposition to these cases. *See Chudner v. TransUnion Interactive, Inc.*, No. 09-CV-43, 2010 U.S. Dist. LEXIS 141052 (D. Del. Dec. 14, 2010). While it is difficult to discern that court's precise reasoning, to the extent it suggests a class-wide determination of damages is a prerequisite to certification, it is contrary to decades of binding precedent. *See Chiang*, 385 F.3d at 273; *Eisenberg*, 766 F.2d at 786; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977).

wide proof through common evidence. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 268

(3d Cir. 2009). But "antitrust impact" is a much broader concept than "damages," or any other

single element of the consumer claims alleged here. In a price-fixing case, a plaintiff must show:

> (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action.

*Id.* at 267 (citation omitted). In other words, the single element of "antitrust impact," includes

both fact of injury and the concept of proximate cause. *See id.* at 269.[39] Consumer claims have

no such requirement, and those cases do not apply. *Chiang*, 385 F.3d at 273; *Carnegie*, 376 F.3d

at 661. Which is also why the expert damages analysis Plaintiffs proffered here (D.I. 51)

suffices to establish that damages *are* capable of class wide determination in any event, while a

much different expert analysis would be required in an antitrust case. *See Hydrogen Peroxide*,

552 F.3d at 312-33.

### E.    A Class Action Is Superior To (Hypothetical) Individual Actions.

A class action plainly is the most efficient — indeed, the only — method for adjudicating

these claims. ING's only proposed alternative — that consumers individually pursue their

claims — is no alternative at all, as any individual recovery would be dwarfed by the costs of

litigation. *See Carnegie*, 376 F.3d at 661 ("The *realistic* alternative to a class action is not 17

million individual suits, but zero individual suits . . ..") (emphasis in original). Federal Rule of

Civil Procedure 1 mandates "the just, speedy, and inexpensive determination of every action and

proceeding." ING has offered no procedural alternative to class certification for doing so.

### III.    CONCLUSION

Plaintiffs respectfully ask this Court to grant their motion.

---

[39] Even in an antitrust case, the "amount of damage that each plaintiff suffered" need not be "established by common proof." *Brokerage Antitrust Litig.*, 579 F.3d at 269.

Dated:  April 9, 2012                    ROSENTHAL, MONHAIT & GODDESS, P.A.

                                         By:  _____
                                              Jeffrey S. Goddess

                                         Jeffrey S. Goddess (No. 630)
                                         jgoddess@rmgglaw.com
                                         P. Bradford deLeeuw (No. 3569)
                                         bdeleeuw@rmgglaw.com
                                         ROSENTHAL, MONHAIT & GODDESS, P.A.
                                         919 Market Street, Suite 1401
                                         Wilmington, DE  19899-1070
                                         Telephone:  (302) 656-4433
                                         Facsimile:  (302) 658-7567

                                         Jonathan D. Selbin
                                         jselbin@lchb.com
                                         Jason L. Lichtman (*pro have vice* application pending)
                                         jlichtman@lchb.com
                                         Daniel R. Leathers
                                         dleathers@lchb.com
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         250 Hudson Street, 8th Floor
                                         New York, NY  10013-1413
                                         Telephone:  (212) 355-9500
                                         Facsimile:  (212) 355-9592

                                         Daniel M. Hutchinson
                                         dhutchinson@lchb.com
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                         275 Battery Street, 29th Floor
                                         San Francisco, CA  94111-3339
                                         Telephone:  (415) 956-1000
                                         Facsimile:  (415) 956-1008

                                         David P. Meyer
                                         dmeyer@meyerwilson.com
                                         Matthew R. Wilson
                                         mwilson@meyerwilson.com
                                         MEYER WILSON, CO., LPA
                                         1320 Dublin Road, Ste. 100,
                                         Columbus, Ohio 43215
                                         Telephone:  (614) 224-6000
                                         Facsimile:  (614) 224-6066

                                         *Attorneys for Plaintiffs and the Proposed Class*