# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JOHNATHAN AND TRUDE YARGER, a married couple, | Case No.: 11-154-LPS |
| Plaintiffs, |  |
| v. |  |
| ING BANK, FSB D/B/A/ ING DIRECT, | **REDACTED** |
| Defendant. |  |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339

David P. Meyer
Matthew R. Wilson
**MEYER WILSON, CO., LPA**
1320 Dublin Road, Ste. 100,
Columbus, Ohio 43215

Jeffrey S. Goddess  (Del. Bar No. 630)
jgoddess@rmgglaw.com
P. Bradford deLeeuw  (Del. Bar No. 3569)
bdeleeuw@rmgglaw.com
**ROSENTHAL, MONHAIT & GODDESS, P.A.**
919 Market Street, Suite 1401
Wilmington, Delaware 19899-1070

# TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................................. 1

II.  CHOICE OF LAW ............................................................................................. 2

    A.  Delaware Law Properly Applies to a Single Nationwide Class. ............... 2

    B.  Alternatively, State Law Can Be Sorted into A Handful of
        Manageable Groups. ................................................................................. 4

        1.  Breach of the Covenant Good Faith and Fair Dealing. ................... 6

            a.  A 16-state class is appropriate. ........................................... 6

            b.  Two "good faith" groups are appropriate. .......................... 7

        2.  Unjust Enrichment. ........................................................................ 8

            a.  The law of unjust enrichment is uniform. ........................... 8

            b.  Alternatively, a 16-state class is appropriate. .................... 9

        3.  Statutory Consumer Fraud. .......................................................... 11

            a.  The DCFA applies even if Delaware law does not
                govern Plaintiffs' other claims. ........................................ 11

            b.  If the Court does not apply the DCFA nationwide,
                Plaintiffs request that the Court certify an 11-State
                Class. ................................................................................ 12

III.  Relevant Timing of Conduct ........................................................................... 14

    A.  Breach of the Implied Covenant of Good Faith and Fair
        Dealing. ................................................................................................. 14

    B.  Unjust Enrichment ............................................................................... 16

    C.  Statutory Consumer Fraud .................................................................. 17

IV.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

Page

## CASES

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ........................................................................................................... 4

*Arlandson v. Hartz Mt. Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) ............................................................................... 9, 10

*Barnhouse v. City of Pinole*,
133 Cal. App. 3d 171 (Cal. App. 1st Dist. 1982) ............................................................. 19

*Barron v. Ford Motor Co.*,
965 F.2d 195 (7th Cir. 1992) ............................................................................................. 5

*BP Products North America, Inc. v. Twin Cities Stores, Inc.*,
534 F. Supp.2d 959 (D. Minn. 2007) ................................................................................. 8

*Canadian Nat'l Ry. v. Vertis, Inc.*,
811 F. Supp. 2d 1028 (D.N.J. 2011) ................................................................................. 10

*City of Golden v. Parker*,
138 P.3d 285 (Col. 2006) .................................................................................................... 7

*Community Guardian Bank v. Hamlin*,
898 P.2d 1005 (Ariz. Ct. App. 1995) ................................................................................ 10

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) ........................................................................................ 16

*Eames v. Nationwide Mut. Ins. Co.*,
412 F. Supp. 2d 431 (D. Del. 2006) .................................................................................. 19

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
618 F.3d 253 (3d Cir. 2010) ......................................................................................... 9, 16

*Fitzgerald v. Cantor*,
No. 16297-NC, 1998 Del. Ch. LEXIS 212 (Del. Ch. Nov. 10, 1998) ............................... 14

*GMC v. Mahoning Valley Sanitary Dist.*,
No. 84-3638, 1985 U.S. App. LEXIS 13841 (6th Cir. Nov. 19, 1985) ............................... 8

# TABLE OF AUTHORITIES
## (continued)

Page

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) .................................................................................................. 1

*Hayes v. Wal-Mart*,
   No. 10-460, 2012 U.S. Dist. LEXIS 33329
   (D.N.J. Mar. 12, 2012) .......................................................................................................... 16

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004) .................................................................................................... 11

*In re Aqua Dots Prods. Liab. Litig.*,
   270 F.R.D. 377 (N.D. Ill. 2010) .............................................................................................. 9

*In re Average Wholesale Pricing* ("*AWP*"),
   252 F.R.D. 83 (D. Mass. 2008) ............................................................................................. 13

*In re Chase Bank United States, N.A.*,
   274 F.R.D. 286 (N.D. Cal. 2011) .................................................................................. 8, 14, 15

*In re Checking Account Overdraft Litig.*,
   275 F.R.D. 666 (S.D. Fla. 2011) ..................................................................................... 7, 8, 9

*In re Complaint of Bankers Trust Co.*,
   752 F.2d 874 (3d Cir. 1984) .......................................................................................... 5, 10, 11

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) .................................................................................................. 10

*In re Mercedes-Benz Tele Aid Contract Litig.* ("*Tele Aid I*"),
   257 F.R.D. 46, 58 (D.N.J. 2009)
   *Rule 23(f) denied*, No. 09-8032 (3d Cir. June 8, 2009),
   *decertification denied*, 267 F.R.D. 113 (D.N.J. 2010) ("*Tele Aid II*")
   *Rule 1292(b) denied*, No. 10-8019 (3d Cir. Apr. 19, 2010)................................................. 3, 9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir.1998) ..................................................................................................... 5

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009)......................................................................................................... 13

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002),
   *aff'd*, 391 F.3d 516 (3d Cir. 2004) ................................................ 1, 3, 11, 12

*Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*,
   617 F.3d 207 (3d Cir. 2010) ................................................................ 19

*Johnson v. GEICO Cas. Co.*,
   673 F. Supp. 2d 255 (D. Del. 2009) ...................................................... 18

*Kaupp v. Church*,
   No. 10 Civ. 7559, 2011 U.S. Dist. LEXIS 105794
   (S.D.N.Y. Sept. 19, 2011) ..................................................................... 6

*Keilholtz v. Lennox Hearth Products, Inc.*,
   268 F.R.D. 330 (N.D. Cal.2010) ............................................................. 9

*Lony v. E. I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3d Cir. 1989) ....................................................... 1, 3, 12, 17

*Lony v. E.I. du Pont de Nemours & Co.*,
   821 F. Supp. 956 (D. Del. 1993) ................................................ 1, 11, 12, 17

*Marshall v. Priceline.com*,
   No. 05C-02-195, 2006 Del. Super. LEXIS 447
   (Del. Super. Oct. 31, 2006) ............................................................. 11, 12

*Nash v. Hoopes*,
   332 A.2d 411 (Del. Super. 1975) ......................................................... 18

*Nieves v. All Star Title, Inc.*,
   No. N10C-03-191, 2010 Del. Super. LEXIS 319
   (Del. Super. Ct. July 27, 2010) ............................................................. 12

*Phillips Petro. Co. v. Shutts*,
   472 U.S. 797 (1987) ...................................................................... 4, 12

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009),
   *aff'd*, 606 F.3d 391 (7th Cir. 2010) ........................................................ 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Spark v. MBNA Corp.*,
   178 F.R.D. 431 (D. Del. 1998) ................................................................. 15

*Stephenson v. Capano Dev., Inc.*,
   462 A.2d 1069 (Del. 1983) ............................................................... 17, 18

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ....................................................... 2, 5, 6, 7

*Sullivan v. DB Invs., Inc.*,
   613 F.3d 134 (3d Cir. 2010) ................................................................. 12

*T.W. Nickerson, Inc. v. Fleet Nat. Bank*,
   924 N.E.2d 696 (Mass. 2010) ................................................................ 8

*Tymshare, Inc. v. Covell*,
   727 F.2d 1145 (D.C. Cir. 1984) ............................................................. 7

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007)............................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)........................................................................ 2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................. 1

*Wood v. Lucy, Lady Duff-Gordon*,
   118 N.E. 214 (N.Y. 1917)............................................................... 6, 7

## STATUTES

6 Del. Code § 2512 ..................................................................................... 11

## OTHER AUTHORITIES

CJI-Civ 30:16 (Colorado jury instructions)................................................. 9

## RULES

Fed. R. Civ. P. 49(a)(1)............................................................................... 7

Fed. R. Civ. P. 49(a)(1)(A) ........................................................................ 2

## TREATISES

Aggregate Litigation § 2.05(b)(3) (Am. Law Institute 2010)....................... 5

Case 1:11-cv-00154-LPS Document 90 Filed 07/02/12 Page 7 of 28 PageID #: 1755

**TABLE OF AUTHORITIES**
**(continued)**

Page

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.634 (2004)..................................................... 5

## I.  **INTRODUCTION**

On June 15, 2012, this Court ordered supplemental briefing addressing Plaintiffs' pending motion for class certification. (D. I. 89.) Broadly speaking, the Court asked Plaintiffs to address: (1) choice-of-law issues within the context of that motion; and (2) the relevant timing of conduct with respect to Plaintiffs' claims against ING. (*See id.* at 1-2.)[1]

With respect to the Court's first question, even absent the Delaware choice-of-law clause, it is appropriate for the Court to apply Delaware law to a nationwide class. ING is headquartered in – and its relevant decisions were made in and the alleged (mis)conduct emanated from – Delaware. Where, as here, Plaintiffs' claims focus on a defendant's conduct and intent, not on plaintiffs' conduct, application of the defendant's home state law is appropriate. That is particularly so with respect to Plaintiffs' claims for violation of the Delaware Consumer Fraud Act ("DCFA") and common law fraud. *See Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 643 (3d Cir. 1989); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 961 (D. Del. 1993).

Should the Court decide it cannot apply Delaware law nationwide as to one or more of Plaintiffs' claims, however, the Court can – and should – certify a class (or subclasses) after sorting of state law into a handful of manageable groups. *See Sullivan v. DB Invs., Inc.*, 667 F.3d

---

[1] The Court did not request additional information regarding Plaintiffs' claim for promissory estoppel, nor their claims seeking only declaratory relief and concomitant certification under Rule 23(b)(2). Plaintiffs continue to request certification of both. With respect to the 23(b)(2) class, Plaintiffs note only that the fact they are seeking certification of both a 23(b)(2) declaratory-relief class and a 23(b)(3) damages class does not run afoul of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("*Wal-Mart* does not forbid Rule 23(b)(2) certification for declaratory relief simply because parties may use that relief as a predicate for monetary damages, particularly when [plaintiffs also seek] monetary certification under Rule 23(b)(3).").

273, 302 (3d Cir. 2011) (en banc).  While the elements of Plaintiffs' legal claims vary to a small

degree among the states, the relevant facts supporting those claims do not.  Perhaps more

importantly, the minimal variations can be captured in simple written questions to the jury.  *See*

Fed. R. Civ. P. 49(a)(1)(A) (explaining that the Court may submit a special verdict forms to the

jury).  In other words, the jury will be able to make factual findings based on common evidence

to determine ING's liability.  This will resolve issues "central to the validity of each one of

[Plaintiffs'] claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011);

*cf. id.* at 2556 ("[F]or purposes of Rule 23(a)(2) even a single common question will do[.]"

(citation and punctuation omitted).)

The Court's second question is "whether the asserted claims are based on when class

members initially took out their mortgage loan with ING or, alternatively, on when class

members took advantage of Rate Renew for a preexisting ING mortgage."  (D.I. 89 at 2.)  As

detailed below, Plaintiffs' claims necessarily focus on evidence from both time periods, albeit for

different purposes and to differing degrees for different claims.

## II.   <u>CHOICE OF LAW</u>

### A.   <u>Delaware Law Properly Applies to a Single Nationwide Class.</u>

As a threshold matter, even if the Court determines the Delaware choice-of-law clause

does not apply, the Court nonetheless should apply Delaware law to a nationwide class.[2]

---

[2] Plaintiffs preserve their argument that Delaware law applies to all class members because of the
choice-of-law clause ING unilaterally imposed on all of its mortgage customers through the ING
website.  As previously detailed, the clause is broadly written to cover "any claims or disputes
between [a customer] and ING DIRECT.... pertaining directly or indirectly to these Terms and
Conditions, or to any matter arising from these Terms and Conditions, or any other document
executed and delivered in connection with these Terms and Conditions, the use of
www.ingdirect.com or the online services offered by ING DIRECT."  (D.I. 47, Hutchinson Decl.
in Support of Plaintiffs' Motion for Class Certification, Ex. R, at 2.)  It was drafted by – and is
thus construed against – ING, whose counsel conceded is "an Internet bank."  Transcript of Class
*Footnote continued on next page*

The Third Circuit has long held that, in cases involving intentional misconduct, "the [Delaware] courts have preferred to apply the law of the defendant's place of conduct rather than the place of injury." *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 643 (3d Cir. 1989) (quotation omitted). When "the misrepresentation that allegedly caused the injury" is made from Delaware, "Delaware law will apply to [a] claim of intentional misrepresentation." *Id.* Indeed, this rule applied in *Lony*, where the plaintiff was a citizen of Germany, resided in Germany, and was injured in Germany., but the corporate defendant was headquartered in Delaware, its relevant divisions were in Delaware, and its alleged misconduct emanated from Delaware via a letter sent to the plaintiff in Germany. *Id.* at 630.

*Lony* thus presaged Judge Robinson's holding, affirmed by the Third Circuit, that "[w]here the defendant's headquarters are located in Delaware and the alleged deceptive acts originated in Delaware, it is proper to apply the Delaware consumer fraud statute to a nationwide class." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *see also In re Mercedes-Benz Tele Aid Contract Litig.* ("*Tele Aid I*"), 257 F.R.D. 46, 58 (D.N.J. 2009) (applying New Jersey consumer fraud statute nationwide), *Rule 23(f) pet. denied*, No. 09-8032 (3d Cir. June 8, 2009), *decertification denied*, 267 F.R.D. 113 (D.N.J. 2010) ("*Tele Aid II*"), *Rule 1292(b) mot. denied*, No. 10-8019 (3d Cir. Apr. 19, 2010).

---

*Footnote continued from previous page*

Certification Oral Argument, ING Counsel McGuire, at 92:21-23 (characterizing ING as "a very unique Internet bank.") And ING asserts such choice-of-law language against other parties in seeking application of Delaware law. In its Amended Responses to Plaintiffs' Second Set of Requests for Admission, ING admitted that it "sought to enforce [a] Delaware choice-of-law provision in [a] service contract" in prior litigation. In that prior case, ING argued that "the laws of the State of Delaware would control… [because of] a choice of law clause contained in the original Service Agreement." (D.I. 47, Hutchinson Decl., Ex. T-U at 5-6, "Plaintiff's Answer to Moving Defendant, American Reporting Company, LLC's Motion for Transfer of Venue"). Given all of these facts, it is neither arbitrary nor unfair to apply Delaware law here.

These holdings are consistent with the long-standing principle established by the U.S. Supreme Court that it is proper to apply the law of a single state to the claims of a nationwide class where, as here, the chosen state has a "significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of . . . law is not arbitrary or unfair." *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 821-22 (1987) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 311-12 (1981)).[3]  In reaching that holding, the Court noted that choice of law is flexible, not rigid, and "a particular set of facts giving rise to litigation [can] justify, constitutionally, the application of more than one jurisdiction's laws," such that courts are often "free to apply one of several choices of law." *Id.* at 823.  Finally, the Supreme Court emphasized that "an important element is the expectation of the parties." *Id.* at 822.  Here, particularly in light of the website choice-of-law clause and ING's presence in Delaware, ING cannot genuinely dispute its own reasonable expectation that Delaware law might apply.  And ING's speculation that class members could reasonably expect that Delaware law necessarily would *not* apply to their claims is baseless; no evidence supports that strained argument.

### B.    Alternatively, State Law Can Be Sorted into A Handful of Manageable Groups.

If the Court decides it cannot apply Delaware nationwide to all claims, that does not end the inquiry.  Indeed, the Third Circuit has held that "variations in state law do not necessarily defeat predominance." *Sullivan*, 667 F.3d at 297.  In fact, the Third Circuit has referred to this as

---

[3] In *Shutts,* the Supreme Court rejected application of Kansas law when plaintiffs brought a multistate class brought against a company headquartered in Oklahoma.  This was because Kansas lacked *any* connection to the claims of class members who were not from Kansas.  In contrast, *Shutts* is satisfied here: Delaware plainly has a significant contact or aggregation of contacts to the claims of all class members.

Case 1:11-cv-00154-LPS   Document 90   Filed 07/02/12   Page 12 of 28 PageID #: 1760

one of "three guideposts that direct the predominance inquiry in a class action." *Id.* In particular:

> for purposes of litigation classes, if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subgroups embracing each of the dominant legal standards can be appropriate.

*Id.* at 302 (quotations omitted); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("[R]elatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *accord Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) (collecting cases for the proposition that it is appropriate to group claims under the law of several states for trial), *aff'd*, 606 F.3d 391 (7th Cir. 2010); AGGREGATE LITIGATION § 2.05(b)(3) (Am. Law Institute 2010); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.634 (2004). That is precisely what Plaintiffs propose here. [4]

For purposes of trial, groups are appropriate so long as there are no material variations among the any of the states that comprise a given group. In this context, a variation is material if it could affect the outcome of the trial given the particular facts and circumstances of a specific case. *See In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984) ("Any differences . . . must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law."); *see also Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different

---

[4] More specifically, it is what Plaintiffs propose for their good faith and unjust enrichment claims. On the facts of this case, Plaintiffs concede that their common law fraud claim is appropriate for multi-state/nationwide certification only if the Court applies Delaware law to the entire class.

states"); *Kaupp v. Church*, No. 10 Civ. 7559, 2011 U.S. Dist. LEXIS 105794, at *4 (S.D.N.Y.

Sept. 19, 2011) ("[A] material conflict must have a significant possible effect on the outcome of

the trial to bring into play choice of law rules." (citations omitted).)

Put another way, the only differences that matter are those that actually matter: i.e., the

Court need only concern itself with differences that are outcome determinative. And, for

purposes of class certification, the question is not whether such differences exist, but whether

they "can be sorted into a small number of groups, each containing materially identical legal

standards . . . ." *Sullivan*, 667 F.3d at 302. As explained below, Plaintiffs propose exactly such

groups.

### 1. <u>Breach of the Covenant Good Faith and Fair Dealing.</u>

#### a. <u>A 16-state class is appropriate.</u>

In the event that Delaware law does not apply to all claims, Plaintiffs request that the

Court certify a "good faith" class comprised of the sixteen states, in which the vast majority of

consumers holding ING's loans are located, and in which the law varies only minimally:

Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Maryland,

Massachusetts, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, Virginia, and

Washington.

These states uniformly recognize the common law claim for breach of the implied

covenant of good faith and fair dealing. This claim has its foundation in a seminal opinion from

then-Judge Cardozo, in which he explained that parties may successfully assert a claim for

breach of contract when they are deprived the benefit of the bargain, even if a defendant has

adhered to the written letter of an agreement (or claims there is no agreement at all). *See Wood*

*v. Lucy, Lady Duff-Gordon*, 118 N.E. 214, 214-15 (N.Y. 1917) ("A promise may be lacking, and

yet the whole writing may be 'instinct with an obligation,' imperfectly expressed. If that is so,

there is a contract." (citation omitted).)  In more modern terms, the question for a jury in each of these states is whether a party acted unreasonably.  *See, e.g.*, *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1153 (D.C. Cir. 1984) (Scalia, J.) (Virginia law) ("[T]he object of our inquiry is whether it was reasonably understood by the parties to this contract that there were at least certain purposes for which [] expressly conferred power . . . could not be employed.").

On the facts of this case, a jury will be asked to determine whether ING breached the implied covenant of good faith and fair dealing when it altered the terms under which Rate Renew was available, both by unilaterally increasing the cost and by unilaterally imposing additional qualifications.  *See, e.g.*, *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) ("The duty of good faith and fair dealing may be relied upon when the manner of performance under a specific contract term allows for discretion on the part of either party." (citation and quotation marks omitted)).  In other words, the jury will be asked whether ING's conduct was in subjective bad faith or objectively unreasonable.  *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011) (California and Oregon law) ("[B]reach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct.").  As indicated above, this context is important because the question for this Court is not whether there are differences between the sixteen jurisdictions regarding the law of good faith and fair dealing, but whether it is possible to group whatever material differences there are.  *Sullivan*, 667 F.3d at 302.

### b.    <u>Two "good faith" groups are appropriate.</u>

A jury will engage in the same basic inquiry and consider the same common evidence for all jurisdictions with respect to the good-faith-and-fair-dealing claim, *see Wood*, 118 N.E. at 214, and will answer a single list of questions about that common evidence, *see* Fed. R. Civ. P. 49(a)(1); *see also* Exhibit A (attaching a sample verdict form and citations).  The Court may,

-7-

however, find it helpful to create two distinct groups (or subclasses) because some jurisdictions find a breach of the covenant of good faith and fair dealing when a defendant has acted "without good faith," whereas other jurisdictions require a defendant to exhibit "bad faith." *Compare, e.g.*, *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 924 N.E.2d 696, 703-04 (Mass. 2010) (lack of good faith), *with e.g.*, *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965 (D. Minn. 2007) (bad faith). *See* Appendix A (attaching proposed jury instructions).[5]

Accordingly, Plaintiffs respectfully request that if the Court finds it cannot certify a nationwide class under Delaware law, it certify a 16-state class comprised of the above two groups. Courts have certified similar classes in similar circumstances, most recently in *In re Checking Account Overdraft Litigation*, 275 F.R.D. at 680, and in *In re Chase Bank United States, N.A.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011), involving after-the-fact unilateral changes to credit terms — in which the court certified a nationwide class on a breach of covenant of good faith claim under Delaware law. *See id.* ("Plaintiffs argue that the determination of whether Chase's conduct prevented plaintiffs from receiving the fruits of the bargain presents questions of fact and law common to the class. The Court agrees.").

### 2. **Unjust Enrichment.**

#### a. **The law of unjust enrichment is uniform.**

Plaintiffs respectfully request that the Court certify a single nationwide class for their unjust enrichment claim, as "[n]umerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state." *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp.

---

[5] Plaintiffs confess to being baffled by the distinction between "lack of good faith" and "bad faith," and respectfully submit that this Court should simply create a single 16-state class. *Cf. GMC v. Mahoning Valley Sanitary Dist.*, No. 84-3638, 1985 U.S. App. LEXIS 13841, at *16-17 (6th Cir. Nov. 19, 1985) ("A lack of good faith is the equivalent of bad faith . . . ." (citation omitted).) Nevertheless, Plaintiffs acknowledge that caselaw does occasionally speak in terms of this difference and propose two "good faith" groups in an abundance of caution.

-8-

2d 691, 710 (D.N.J. 2011) (collecting cases); *see also Tele Aid I*, 257 F.R.D. at 58 ("While there

are minor variations in the elements of unjust enrichment under the laws of the various states,

those differences are not material and do not create an actual conflict.").[6]  In particular, a claim

for unjust enrichment generally consists of three elements:

> (1) a benefit conferred on the defendant by the plaintiff;
>
> (2) appreciation of such benefit by the defendant; and
>
> (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff.

*E.g.*, *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (Pennsylvania law);

CJI-Civ 30:16 (Colorado jury instructions).

### b.   <u>Alternatively, a 16-state class is appropriate.</u>

Notwithstanding the above, some courts have concluded that the law of unjust

enrichment varies even outside the antitrust context.  *See In re Aqua Dots Prods. Liab. Litig.*,

270 F.R.D. 377, 386 (N.D. Ill. 2010).  Plaintiffs therefore have scrutinized the law of the 16

states in which the vast majority of class members are located to ensure that there are no relevant

differences in those states, at least on the facts of this case.  *See, e.g.*, *Keilholtz v. Lennox Hearth

Prods., Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) ("[T]he variations among some states' unjust

enrichment laws are not material because they do not significantly alter the central issue or the

manner of proof in this case."); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246

F.R.D. 349, 359 (D.D.C. 2007); *cf. In re Checking Account Overdraft Litig.*, 275 F.R.D. at 680

---

[6] To be precise, courts have concluded that the law of unjust enrichment is uniform outside the context of an antitrust claim, where much has been written about the applicability, or lack thereof, of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

("[C]ourts often certify unjust enrichment claims because 'common questions predominate' and are 'all easily resolved class wide.'").

Plaintiffs' analysis reveals only two arguable differences. *See* Exhibit B (collecting cases from all sixteen jurisdictions). In particular, some jurisdictions omit the second of the above three elements (appreciation of the benefit), *see Canadian Nat'l Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011), and others permit a claim for unjust enrichment only if a plaintiff has no adequate remedy at law, *see Comty. Guardian Bank v. Hamlin,* 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995). Even assuming that these variations might be relevant in some other case, however, they plainly are not material on the facts of this one.[7]

First, there is no real dispute that Plaintiffs who exercised Rate Renew conferred a benefit upon ING (money paid to ING) and that ING appreciated that benefit (ING was certainly aware that its customers were paying it;

**REDACTED**

. A jury, in other words, will determine solely whether it is inequitable for ING to retain the money that it gained as a result of Rate Renew. Accordingly, the distinction between states that require "appreciation of the benefit" and the states that do not is immaterial here. *See Bankers Trust*, 752 F.2d at 882 ("Any differences . . . must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law.")[8]

----

[7] Plaintiffs respectfully submit that, as a practical matter, these are distinctions without difference in any event. *See, e.g., Arlandson*, 792 F. Supp. 2d at 710. It is difficult to envision the set of facts in which a plaintiff would confer a benefit on a defendant without the defendant's knowledge (and yet retention of that benefit would be unjust) or a plaintiff would bring a claim for unjust enrichment other than in the alternative (assuming there was a colorable claim that the plaintiff had an adequate remedy at law).

[8] Put another way, it is "more likely than not," *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008), that the second element, "appreciation of such benefit by defendant," will play no role during trial. In the event that ING does not stipulate to this element or that

*Footnote continued on next page*

Second, all Plaintiffs assert unjust enrichment in the alternative to their other claims – i.e., if there is an adequate remedy at law, *no* member of the class will recover for unjust enrichment. It is therefore unnecessary to create a group for those states that limit recovery to situations where Plaintiffs have no adequate remedy at law. *See Bankers Trust*, 752 F.2d at 882.

### 3.   **Statutory Consumer Fraud.**

#### a.   **The DCFA applies even if Delaware law does not govern Plaintiffs' other claims.**

Plaintiffs respectfully request that the Court certify a single nationwide class under the DCFA even if it does not apply Delaware law to Plaintiffs' common law claims. While many consumer fraud statutes are directed solely at the protection of home-state consumers, the DCFA is not so circumscribed: it prohibits "unfair or deceptive merchandising practices" that occur "in part or wholly within" Delaware. 6 DEL. CODE § 2512. "[T]he Delaware statute speaks to the protection of [all] consumers, not merely consumers residing in Delaware." *Lony*, 821 F. Supp. at 961. In other words, the plain language of the DCFA compels the conclusion that it may be invoked by consumers nationwide:

> If the Court were to accept [Defendant's] proposition that only Delaware residents are afforded the protections of the Consumer Fraud statute, the construction mandated by the Delaware General Assembly would be lost.

*Id.*; *see also Marshall v. Priceline.com*, No. 05C-02-195, 2006 Del. Super. LEXIS 447, at *7 (Del. Super. Ct. Oct. 31, 2006) (explaining that "non-resident consumers are protected under the

---

*Footnote continued from previous page*

Plaintiffs do not prevail on a motion for partial summary judgment, the Court can, of course, create a subclass at that time. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004); *accord Hevesi v. Citigroup Inc.*, 366 F.3d 70, 85 (2d Cir. 2004) ("[T]he district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted." (citation omitted)).

1044967.10

DCFA" provided that "the deceiving act originated in Delaware." (citing *Lony*, 821 F. Supp. at 959)); *cf. Nieves v. All Star Title, Inc.*, No. N10C-03-191, 2010 Del. Super. LEXIS 319, at *14 (Del. Super. Ct. July 27, 2010) (citing *Marshall* with approval).

Indeed, the Third Circuit has explained that the DCFA applies even when a foreign German citizen is injured in Germany by conduct originating in Delaware. *Lony*, 886 F.2d at 643 ("[The DCFA] is designed to ensure that [Delaware's] corporate citizens do not conduct business in a deceptive, unfair or misleading manner."). As indicated above, Judge Robinson of this Court has held flatly that "[w]here the defendant's headquarters are located in Delaware and the alleged deceptive acts originated in Delaware, it is proper to apply the Delaware consumer fraud statute to a nationwide class." *Warfarin*, 212 F.R.D. at 251; *see also Sullivan v. DB Invs., Inc.*, 613 F.3d 134, 154 n.15 (3d Cir. 2010) (panel opinion) ("[T]he [nationwide] plaintiffs in [*Warfarin*] shared a common claim under the Delaware Consumer Fraud Act."), *vacated on other grounds*, 667 F.3d 273 (3d Cir. 2011) (en banc).

Plaintiffs in this action have properly elected to assert claims under the DCFA against a Delaware company with Delaware headquarters whose relevant conduct occurred in and from Delaware. *See Shutts*, 472 U.S. at 823 (explaining that such a choice is neither arbitrary nor unfair). That they may *also* have valid claims under their home consumer fraud statutes is immaterial. *See Sullivan*, 613 F.3d at 154 n.15 (panel opinion); *Lony*, 886 F.2d at 643; *Warfarin*, 212 F.R.D. at 251; *Lony*, 821 F. Supp. at 961; *Marshall*, 2006 Del. Super. LEXIS 447 at *7.

### b.   If the Court does not apply the DCFA nationwide, Plaintiffs request that the Court certify an 11-State Class.

In the event the Court declines to certify a single nationwide class under the DCFA, Plaintiffs respectfully request that the Court certify an 11-state statutory consumer fraud class with two groups (or subclasses). *See In re Average Wholesale Pricing* ("*AWP*"), 252 F.R.D. 83,

94 (D. Mass. 2008).[9] As the Court in *AWP* observed, many state consumer fraud claims may be tried simultaneously because of the close similarity of state consumer fraud statutes. *See id.* In an exhaustive opinion, the *AWP* court "walked the grouping walk" and explained that most states' consumer fraud statutes fell into one of three categories: (1) statutes that broadly prohibit unfair acts (similar to the FTCA); (2) statutes that prohibit deceptive or misleading statements or acts (but not "unfair" ones) and; (3) statutes that prohibit "unconscionable" acts (including states that fall into one of the first two categories). *Id.* at 94-95. All eleven states Plaintiffs propose for inclusion here, moreover, belong to one of the first two *AWP* categories. *See id.*; *see also* Exhibit C (containing proposed and pattern jury instructions).[10]

      Plaintiffs' proposed class contains a subset of the subclasses certified for trial in *AWP*, as well as California, which the *AWP* court declined to certify. Writing in 2008, the *AWP* court observed that it was unclear at that time whether California law required all members of a class to demonstrate individual reliance. *AWP*, 252 F.R.D. at 99 ("[C]aselaw in California is in a state of flux[.]") The next year, however, the California Supreme Court held that absent class members need not demonstrate reliance under California law. *See In re Tobacco II Cases*, 207 P.3d 20, 39-40 (Cal. 2009). Accordingly, it is appropriate to certify California claims for trial in addition to those states certified in *AWP*. *See AWP*, 252 F.R.D. at 96-99 (certifying claims under

---

[9] To simplify the analysis, should the Court decline to allow out-of-state consumers to assert claims under the DCFA, Plaintiffs seek to certify a small number of states at this time, comprised of a subset of those states certified in *AWP* (in particular, the subset of states in which the majority of class members are located) and, as explained below, California.

[10] The Court in *AWP* recognized that state consumer fraud statutes have some variations in proof of scienter and the availability of punitive damages, but found that neither of these issues required additional subclassing because a court can easily fashion state-specific jury sub-questions to account for such variances. *See AWP*, 252 F.R.D. at 99-100.

more than two dozen consumer fraud statutes for a single trial because the evidence necessary for a jury to consider was uniform under all of the various statutes).

## III.   RELEVANT TIMING OF CONDUCT

Plaintiffs now turn to the Court's second question:  "whether the asserted claims are based on when class members initially took out their mortgage loan with ING or, alternatively, on when class members took advantage of Rate Renew for a preexisting ING mortgage."  (D.I. 89 at 2.)  As explained more fully below, Plaintiffs' claims necessarily focus on evidence from both time periods, albeit for different purposes and to differing degrees.

### A.   Breach of the Implied Covenant of Good Faith and Fair Dealing.

As indicated in the first section of this brief, Plaintiffs propose creating both "lack of good faith" and "bad faith" subclasses.  Both of these, however, require the same basic proof at trial:

- An implied contractual obligation;
- Breach of the implied contractual obligation; and
- Resulting damages.

*See, e.g.*, *Fitzgerald v. Cantor*, No. 16297-NC, 1998 Del. Ch. LEXIS 212, at *4 (Del. Ch. Nov. 10, 1998).  The first of these elements necessarily looks to the time of contracting (i.e., "when class members initially took out their mortgage loan"), whereas the second two focus on the time of the alleged breach (i.e., "when class members took advantage of Rate Renew for a preexisting ING mortgage").  *See Chase*, 274 F.R.D. at 290 (explaining that plaintiffs will have to present common evidence of "the parties' reasonable expectations at the time of contracting[]" as well as some form of "arbitrary or unreasonable conduct which has the effect of preventing the other party from receiving the fruits of the bargain." (citations omitted)).

In this case, then, Plaintiffs will establish the first element (an implied contractual obligation) by presenting ING's uniform Rate Renew advertising listing offers for either $500 or

$750 (*see* D.I. 87, Ex. B at 1-6 (compiling the Rate Renew ads)) and ING's uniform representations to consumers that it does not charge "sneaky fees" or use "fine print" or "asterisks" (*see, e.g.*, D.I. 47, Ex. H at 2 ("Read the fine print, and pay attention to asterisks (you'll notice we don't use any)"); D.I. 87, Ex. 1 ("Lugar Dep.") at 97:1-3 ("[O]ur goal is to make sure there is nothing hidden, charges, wording, fees, those kinds of things.")). *Cf. Spark v. MBNA Corp.*, 178 F.R.D. 431 (D. Del. 1998) (certifying a class including an implied-covenant-of-good-faith-and-fair-dealing claim based upon misleading statements in ads for credit card accounts). That the Rate Renew promise was conveyed indirectly to the Yargers (and 46,000 other potential class members) through a mortgage broker is of no moment. (*See* D.I. 87, Ex. 2 ("Yarger Dep.") at 93:2-8 ("Q. The advertisements that are referenced on paragraphs 11 and 12 of the complaint are not ones that you looked at or saw . . . correct? A. This is what our broker communicated to us.").) Contracting parties' objectively reasonable expectations do not change merely because an intermediary is present. And there is no evidence in the record that the Yargers' mortgage broker – or any other mortgage broker – conveyed anything other than the very same Rate Renew promise ING was offering during the relevant time period.

Plaintiffs will then establish the second element of this claim (breach) by pointing to ING's arbitrary and unreasonable failure to honor these terms as evident through its post-mortgage conduct. (*See, e.g.*,

**REDACTED**                                   . 67 ("Kendall Decl.") at ¶ 23

("[T]here are no laws or regulations that mandate specific eligibility … requirements for … the Rate Renewal program.")); *cf. Chase*, 274 F.R.D. 286 (certifying a class including an implied-covenant-of-good-faith-and-fair-dealing claim based upon after-the-fact increased minimum monthly payment requirements).

-15-

The final element of this claim (damages), focuses necessarily on the time that class members took advantage (or tried to take advantage) of Rate Renew — i.e., that all class members paid more to Rate Renew or were unable to refinance at a lower interest rate (causing interest accumulation at a higher rate than if Rate Renew had been honored).

### B. Unjust Enrichment

As explained in the first section, Plaintiffs' claims for unjust enrichment are uniform. In particular, Plaintiffs will need to prove:

- They conferred a benefit to ING;
- ING "appreciated" that benefit and;
- ING's retention of that benefit would be inequitable.

*See EBC*, 618 F.3d at 273.

The first two of these elements (which, as explained above, will almost certainly play no role in the trial) focus exclusively on when putative class members took advantage of Rate Renew for a preexisting ING mortgage, although the third of these elements also involves some consideration of the time when putative class members took advantage of Rate Renew for a preexisting ING mortgage. Indeed, the third of these elements considers essentially the same evidence that Plaintiffs will present to show an implied contractual obligation and breach of that obligation (elements #2 and #3 of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing). *Cf. Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 46-47 (E.D.N.Y. 2008) (certifying a claim for unjust enrichment when members in a "club" paid renewal membership fees for periods of time that had already elapsed); *cf. also Hayes v. Wal-Mart*, No. 10-460, 2012 U.S. Dist. LEXIS 33329, at *29-30 (D.N.J. Mar. 12, 2012) (certifying a claim for unjust enrichment when defendant sold its customers service agreements with no value).

**C.**     **Statutory Consumer Fraud**

Plaintiffs' final claim is for breach of the DCFA, or, alternatively, for violation of 11 state

consumer fraud statutes.  To prevail on this claim at trial, Plaintiffs will need to prove:

- A material false representation or an omission;
- On which ING intended that class members' rely; and
- Resulting damages.

*See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).[11]  As with Plaintiffs'

other two claims, this claim necessarily focuses both on the time that ING advertised Rate

Renew (prior to putative class members initially taking out their mortgage and prior to Plaintiffs'

during-mortgage attempts to Rate Renew) and on the time that putative class members attempted

to Rate Renew for a fixed price.

Plaintiffs will establish the first element of this claim (material false representation or

omission) using evidence spanning the time before any putative class member actually entered

into a mortgage with ING to the time that he or she attempted to Rate Renew.  *See, e.g.*, *Lony*,

821 F. Supp. at 962 (explaining that evidence from both before and after a product's sale can be

weighed by a jury for purposes of establishing the first element of a claim under the DCFA

(citing 6 Del. C. § 2513)); *see also Lony*, 886 F.2d at 643 (reversing the district court's earlier

failure to consider whether post-sale statements could be used to establish the first element of a

claim under the DCFA).  In particular, Plaintiffs will ask the jury to consider both pre-mortgage

Rate Renew advertisements and post-mortgage advertisements (part and parcel of ING's

customer retention strategy) that reinforced the availability of Rate Renew.  (*See* D.I. 87, Ex. B

at 35442, 8475, 5652, 35354, 5899, 6342, 6350, 35066, 720 (soliciting new mortgage

originations); *id.* at 34832-33, 35153, 13281, 5509, 7513, 5734, 6333, 6504, 34838-39 (soliciting

---

[11] For purposes of this discussion, the analysis is substantively unchanged if the Court declines to apply the DCFA nationally and instead groups consumer fraud statutes.

-17-

existing mortgage customers to take advantage of the loans' Rate Renew feature).) Plaintiffs
will then ask the jury to conclude that these advertisements contained a material omission
because ING failed to disclose that the price to Rate Renew could change or that ING could
impose qualification requirements. (*See* D.I. 87, Ex. B at 1-6 (compiling the Rate Renew ads).)

 The second element (intent) will also involve evidence from the time that the
advertisements were produced as well as statements made about those advertisements at other
times.[12] In particular, Plaintiffs will present undisputed evidence that ING produced the
advertisements at issue in this litigation with the intent that its potential and current customers
rely upon those advertisements. (D.I. 47, Ex. 3 ("Kendall Dep.") at 45:14-21 ("Q. ING intends
for its customers to trust what the ads say, right? A. Yes.").) Plaintiffs will, moreover, use
internal ING documents from the time after advertisements ran to establish this further. (D.I. 47,
Ex. A at 9397 ("Rate Renewals are a major part of the Orange Mortgage retention strategy and
should be offered to anyone interested in paying-off or refinancing an Orange Mortgage."); *see
also* D.I. 87, Ex. 1 ("Lugar Dep.") at 55:2-24 (agreeing that Rate Renew is central to retaining
customers); *id.* at 59:4-16; 88:6-8 (without Rate Renew, customers were at "risk of leaving any
lender … [because they] are very aware of their finances and looking toward rates moving.").)

 There will be no need to inquire as to putative class members' reliance on ING's
promises, as the DCFA does not require customers to "prove individual reliance." *Johnson v.
GEICO Cas. Co.*, 673 F. Supp. 2d 255, 276 (D. Del. 2009); *see also Eames v. Nationwide Mut.*

---

[12] Though ING may ask the Court to focus on ING's lack of pre-mortgage intent *to deceive* with
its ads, that would be mistaken because the law only requires Plaintiffs to show ING's pre-
mortgage intent that *customers rely* on ING's statements. *Stephenson*, 462 A.2d at 1074 ("The
defendant need not have intended to misrepresent or to make a deceptive or untrue statement.");
*Nash v. Hoopes*, 332 A.2d 411, 413 (Del. Super. 1975) ("Fraudulent intent in connection with
the making of such unlawful practice is not requisite to the availability of the remedies of the
statute.").

*Ins. Co.*, 412 F. Supp. 2d 431, 437 (D. Del. 2006) ("a violation of the statute 'is committed regardless of actual reliance by the plaintiff'" (citing *Stephenson*, 462 A.2d 1069)).

Nor are statements made by mortgage brokers relevant to these claims. Plaintiffs' statutory consumer fraud claims are not premised on any such statements. And, as noted above, there simply is no evidence in the record that any mortgage broker said or did anything inconsistent with the Rate Renew promise ING was (admittedly) marketing.[13]

The third and final element of this claim (resulting damages) will focus solely on the time period when Plaintiffs took advantage (or attempted to take advantage) of Rate Renew for their preexisting ING mortgages. This is because damages are not realized until one of two post-mortgage events occur: either class members (1) Rate Renew for a higher-than-advertised price; or (2) are denied an attempted Rate Renew because of undisclosed eligibility requirements, forcing interest accumulation at a higher rate than if the Rate Renew had been honored.[14]

---

[13] To the extent the mortgage broker statements are relevant even absent a reliance requirement, the law is clear that indirect reliance of this sort suffices. *See, e.g.*, *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 218 (3d Cir. 2010) (reversing the dismissal of a consumer fraud statute claim because "it is enough for a plaintiff to show 'indirect reliance'"); *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171, 192 (Cal. Ct. App. 1st Dist. 1982) (" [I]t would be anomalous if liability for damages resulting from fraudulent concealment were to vanish simply because of the fortuitous event of an intervening [party]."); Restatement (Second) of Torts § 533 (1977) (explaining that the speaker of a misrepresentation is subject to liability even if conveyed by an intermediary if the speaker has reason to expect that its terms will be repeated and will influence conduct).

[14] Given the timeline of ING's conduct, it is possible that *multiple* post-mortgage periods of time will be relevant. Plaintiffs, for example, were damaged at three separate times: (1) when ING charged them $750, rather than the $500 originally offered; (2) when ING charged one-months' mortgage payment, rather than $500; (3) when ING denied Plaintiffs' Rate Renew, forcing their mortgage to accumulate interest at a higher rate.

-19-

## IV.   CONCLUSION

Plaintiffs respectfully submit that the Court can and should certify a single nationwide class under Delaware law, either by function of the Delaware choice-of-law clause or because ING is headquartered in, and its conduct emanated from, Delaware.  That would be particularly appropriate with respect to Plaintiffs' DCFA claim.  Should the Court conclude that it cannot certify a nationwide class for all claims under Delaware law, Plaintiffs respectfully request that it certify:  (1) A 16-state class for breach of the implied covenant of good faith and fair dealing, possibly including two groups or subclasses; (2) a 16-state class for unjust enrichment; and (3) a single nationwide class under the DCFA, or, in the alternative, an 11-state consumer fraud class.

Dated:  July 2, 2012             ROSENTHAL, MONHAIT & GODDESS, P.A.

By:    /s/ Jeffrey S. Goddess
       Jeffrey S. Goddess

Jeffrey S. Goddess (No. 630)
jgoddess@rmgglaw.com
P. Bradford deLeeuw (No. 3569)
bdeleeuw@rmgglaw.com
**ROSENTHAL, MONHAIT & GODDESS, P.A.**
919 Market Street, Suite 1401
Wilmington, DE  19899-1070
Telephone:  (302) 656-4433
Facsimile:  (302) 658-7567

Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

1044967.10

Case 1:11-cv-00154-LPS Document 90 Filed 07/02/12 Page 28 of 28 PageID #: 1776

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

David P. Meyer
Matthew R. Wilson
**MEYER WILSON, CO., LPA**
1320 Dublin Road, Ste. 100,
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs and the Proposed Class*