IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHNATHAN AND TRUDE YARGER, a
married couple,

               Plaintiffs,

      v.

ING BANK, FSB d/b/a ING DIRECT,

               Defendant.

Case No.: 11:154-LPS

**DEFENDANT ING'S SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

MONTGOMERY, McCRACKEN, WALKER &
RHOADS, LLP

R. Montgomery Donaldson (DE I.D. # 4367)
Lisa Z. Brown (DE I.D. # 4328)
1105 N. Market St., 15th Floor
Wilmington, DE 19801
(302) 504-7840
rdonaldson@mmwr.com

*Attorneys for ING Bank, fsb*

Of Counsel:

Frank A. Hirsch, Jr.
Matthew P. McGuire
Heather Adams
Ryan P. Ethridge
ALSTON & BIRD LLP
4721 Emperor Blvd., Ste. 400
Durham, NC 27703
(919) 862-2200

DATED:  July 16, 2012

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................... 1

II.   CHOICE OF LAW ...................................................2

      A.    Multi-state classes are disfavored  ............................... 2

      B.    There are material and significant variations in state law ................. 3

            1.    Implied Covenant of Good Faith and Fair Dealing ................ 3

                  a.    The Scope of the Implied Covenant Varies
                        Significantly ........................................4

                  b.    The Required Wrongdoing Varies Significantly  ........... 5

                  c.    Claim Elements Varies Significantly  ................... 5

                  d.    The Statutes of Limitation Conflict ..................... 6

                  e.    Extrinsic Evidence Rules Are in Discord ................. 8

                  f.    Plaintiffs' Proposed Jury Instructions
                        Are Inadequate ...................................... 8

            2.    Unjust enrichment ....................................... 9

                  a.    There are Critical Differences in the Laws
                        of Unjust Enrichment ................................ 9

                  b.    The Required Elements Differ ........................ 10

                  c.    The Definitions Vary ................................ 11

                  d.    In Some States, the Claim is not Available
                        Where There is an Underlying Contract ................ 11

                  e.    There are Various Requirements About State
                        of Mind ............................................12

                  f.    The Law Varies Regarding Statutes of
                        Limitations and Accrual ............................. 12

3.    Unique Defenses Render Certification Improper . . . . . . . . . . . . . . . . . 13

4.    Statutory Consumer Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    a.    Well-Settled Case Law Holds that State
          Consumer Protection or Fraud Statutes
          Render Certification Improper . . . . . . . . . . . . . . . . . . . . . . . . 13

    b.    Plaintiffs' Proposed Class is Improper . . . . . . . . . . . . . . . . . . 14

    c.    Plaintiffs' Proposed Verdict Form is Inadequate . . . . . . . . . . 17

5.    Common Law Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    RELEVANT TIMING OF CONDUCT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*AAMCO Transmissions, Inc. v. Wirth*,
    2011 WL 6088671 (E.D. Pa. Dec. 7, 2011) ...........................................................4

*Abbott v. Amoco Oil Co.*,
    619 N.E.2d 789 (Ill. App. Ct. 1993) ....................................................................5

*Acton Constr. Co. v. State*,
    383 N.W.2d 416 (Minn. Ct. App. 1986).............................................................11

*Amoco Oil Co. v. Ervin*,
    908 P.2d 493 (Colo. 1995)....................................................................................4

*Amoco Oil Co. v. Liberty Auto & Elec. Co.*,
    810 A.2d 259 (Conn. 2002) ..................................................................................7

*In re Aqua Dots Prods. Liab. Litig.*,
    270 F.R.D. 377 (N.D. Ill. 2010)............................................................................9

*Arlandson v. Hartx Mountain. Corp.*,
    792 F. Supp. 2d 691 (D.N.J. 2011) .......................................................................9

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
    11 Cal. Rptr. 3d 412 (Cal. Ct. App. 2004)..........................................................6,7

*Beck v. Lazard Freres & Co.*,
    175 F.3d 913 (11th Cir. 1999) ..............................................................................7

*Bellemare v. Wachovia Mortg. Corp.*,
    894 A.2d 335 (Conn. App. Ct. 2006).....................................................................5

*Bidwell v. German Motors, Inc.*,
    586 P.2d 1003 (Colo. App. 1978) .......................................................................15

*BMW of N. Am., Inc. v. Gore*,
    517 U.S. 559 (1996).............................................................................................14

*Bond Leather Co. v. Q.T. Shoe Mfg. Co.*,
    764 F.2d 928 (1st Cir. 1985).................................................................................15

*Boyko v. American Int'l Group Inc.*,
    2012 WL 1495372 (D.N.J. Apr 26, 2012); WL 213 2390 (D.N.J. Jun 12, 2012) ...................13

*In re Bridgestone/Firestone, Inc.,*
 288 F.3d 1012 (7th Cir. 2002) ................................................................................................1

*Caldor, Inc. v. Heslin,*
 577 A.2d 1009 (Conn. 1990) ..................................................................................................16

*Carlile v. Harbour Homes, Inc.,*
 194 P.3d 280 (Wash. Ct. App. 2008) .......................................................................................6

*Castano v. Am. Tobacco Co.,*
 84 F.3d 734 (5th Cir. 1996) ...................................................................................................2

*Chartone, Inc. v. Bernini,*
 83 P.3d 1103 (Ariz. Ct. App. 2004) .........................................................................................6

*Chatham v. Sears, Roebuck & Co.,*
 2007 WL 4287511 .................................................................................................................10

*Chattin v. Cape May Greene, Inc.,*
 591 A.2d 943 (N.J. 1991) .......................................................................................................16

*Chiulli v. Zola,*
 905 A.2d 1236 (Conn. App. Ct. 2006)......................................................................................5

*Cnty. Comm'rs v. J Roland Dashiell & Sons,*
 747 A.2d 600 (Md. 2000) ..................................................................................................10,11

*Commercial Assocs., Inc. v. Work Connection, Inc.,*
 712 N.W.2d 772 (Minn. Ct. App. 2006)...................................................................................6

*Comunale v. Traders & Gen. Ins. Co.,*
 328 P.2d 198 (Cal. 1958) .........................................................................................................7

*Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.,*
 192 A.D.2d 501 (N.Y. App. Div. 1993) .................................................................................13

*Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chicago,*
 768 N.E.2d 352 (Ill. App. Ct. 2002) ........................................................................................7

*Cooper v. United Dev. Co.,*
 462 N.E.2d 629 (Ill. App. Ct. 1984) ........................................................................................7

*Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC,*
 2008 WL 2776991 (E.D. Va. July 14, 2008) ...........................................................................7

*Cox v. Sears Roebuck & Co.,*
 647 A.2d 454 (N.J. 1994).......................................................................................................16

*Crown Linen Service, Inc. v. CT Appliance & Fireplace Distributors, LLC,*
    2009 WL 765531 (Conn. Super. Ct. Feb. 24, 2009)................................................12

*DeSanctis v. Labell's Airport Parking Inc.,*
    1991 Mass App. Div. 37 (1991)................................................................................11

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.,*
    740 N.Y.S.2d 396 (App. Div. 2002).........................................................................13

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir.1985).......................................................................................18

*Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC,*
    715 S.E.2d 273 (N.C. Ct. App. 2011).........................................................................8

*First Nat'l Bank of St. Paul v. Ramier,*
    311 N.W.2d 502 (Minn. 1981)..................................................................................11

*Fitzgerald v. Cantor,*
    1998 WL 842316 (Del. Ch. Nov. 10, 1998) ...............................................................6

*Fooks v. Del.Health & Social Servs.,*
    1999 WL 743916 (Del. Super. Ct. Sept. 14, 1999).....................................................8

*Gariety v. Grant Thornton, LLP,*
    368 F.3d 356 (4th Cir. 2004) .....................................................................................2

*George H. Dean Co. v. Pappas,*
    430 N.E.2d 836 (Mass. App. Ct. 1982) ...................................................................13

*Gore v. Ind. Ins. Co.,*
    876 N.E.2d 156 (Ill. App. Ct. 2007) ..........................................................................4

*Hammett v. Am. Bankers Ins. Co. of Fla.,*
    203 F.R.D. 690 (S.D. Fla. 2001).................................................................................3

*In re Hennepin Cnty. 1986 Recycling Bond Litig.,*
    540 N.W.2d 494 (Minn. 1995)....................................................................................4

*Huong Minh Ly v. Nystrom,*
    615 N.W. 2d 302 (Minn. Ct. App. 2006)..................................................................15

*Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.,*
    77 P.3d 814 (Colo. App. 2003)................................................................................11

*In re Jackson Nat'l Life Ins. Co. Premium Litig.,*
    183 F.R.D. 217 (W.D. Mich. 1998)............................................................................3

*Jacobs v. Healey-Ford Subaru,*
    652 A.2d 496 (Conn. 1995) ...................................................................16

*Kaldenbach v. Mut. of Omaha Life Ins. Co.,*
    100 Cal. Rptr. 3d 637 (Ct. App. 2009) .................................................16

*Katz v. Bd. of Managers.,*
    2009 WL 4673749 (N.Y. Sup. Ct. Nov. 6, 2009) ................................5,6

*Kuehn v. Stanley,*
    91 P.3d 346 (Ariz. Ct. App. 2004) .........................................................8

*Kuroda v. SPJS Holdings, L.L.C.,*
    971 A.2d 872 (Del. Ch. 2009) ..............................................................11

*Lane v. Scarborough,*
    284 N.C. 407 (1973) ...............................................................................8

*Lavie v. Procter & Gamble Co.,*
    129 Cal. Rptr. 2d 486 (Cal. Ct. App. 2003) ........................................16

*Levy v. World Wrestling Entm't, Inc.,*
    2009 WL 455258 (D. Conn. Feb. 23, 2009) ........................................12

*In re LifeUSA Holding Inc.,*
    242 F.3d 136 (3$^d$ Cir. 2001) ..................................................................2

*Lony v. Lony v. E.I. du Pont de Nemours & Co., Inc.,*
    821 F. Supp. 956 (D. Del. 1993).............................................................3

*Lowden v. T-Mobile USA, Inc.,*
    2009 WL 537787 (W.D. Wash. Feb. 18, 2009), *aff'd,* 378 F. App'x 693 (9th Cir. 2010) .....................................................................................................13

*Lyon v. Caterpillar, Inc.,*
    194 F.R.D. 206 (E.D. Pa. 2000).......................................................14,17

*Margolis v. Caterpillar, Inc.,*
    815 F. Supp. 1150 (C.D. Ill. 1991) ......................................................18

*Mathis v. Hargrove,*
    888 A.2d 377 (Md. Ct. Spec. App. 2005)...............................................5

*Mazza v. American Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................................16

*Melrose Housing Auth. v. N.H. Ins. Co.,*
    507 N.E.2d 787 (Mass. App. Ct. 1987), *aff'd,* 520 N.E.2d 493 (Mass. 1988) .........................7

*Merle Wood & Assocs. Inc. v. Trinity Yachts, LLC*,
    2011 WL 845825 (S.D. Fla. Mar. 7, 2011)..................................................................13

*Morgan v. Markerdowne Corp.*,
    201 F.R.D. 341 (D.N.J. 2001)..................................................................................18

*Nelson v. Hartford Underwriters Ins. Co.*,
    630 S.E.2d 221 (N.C. Ct. App. 2006)........................................................................5

*Newell v. Newell*,
    942 N.E.2d 776 (Ill. App. Ct. 2011) ......................................................................5,7

*Norman Owen Trucking, Inc. v. Morkoski*,
    506 S.E.2d 267 (N.C. Ct. App. 1998).......................................................................10

*Onal v. BP Amoco Corp.*,
    275 F. Supp. 2d 650 (E.D. Pa. 2003).........................................................................5

*Pa. Emp., Benefit Trust Fund v. Zeneca, Inc.*,
    710 F. Supp. 2d 458 (D. Del. 2010)...........................................................................3

*Parker v. Columbia Bank*,
    604 A.2d 521 (Md. Ct. Spec. App. 1992)...................................................................4

*Partipilo v. Hallman*,
    510 N.E.2d 8 (Ill. App. Ct. 1987) ............................................................................12

*Penley v. Penley*,
    332 S.E.2d 51 (N.C. 1985).........................................................................................7

*In re Pharm. Indus. Average Wholesale Price Litig.*
    252 F.R.D. 83 (D. Mass. 2008)..................................................................................9

*In re PolyMedica*,
    432 F.3d 1 (1st Cir. 2005).........................................................................................14

*Powers v. Lycoming Engines*,
    245 F.R.D. 226 (E.D. Pa. 2007)............................................................................9,12

*Prishwalko v. Bob Thomas Ford, Inc.*,
    636 A.2d 1383 (Conn. Ct. App. 1994)......................................................................16

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ...................................................................................17

*Ruiz v. Brink's Home Security*,
    777 So.2d 1062 (Fla. 2001).......................................................................................13

*Sacred Heart Health Sys, Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) ....................................................................2

*Salois v. Dime Sav. Bank of N.Y., FSB*,
    128 F.3d 20 (1st Cir. 1997) ..........................................................................7

*Saturn Sys., Inc. v. Militare*,
    252 P.3d 516 (Colo. App. 2011) ...................................................................6

*Sechrest v. Forest Furniture Co.*,
    141 S.E.2d 292 (N.C. 1965).........................................................................5

*Seidenberg v. Summit Bank*,
    791 A.2d 1068 (N.J. Super. Ct. App. Div. 2002).........................................6

*Silvester v. Time Warner, Inc.*,
    763 N.Y.S.2d 912 (Sup. Ct. 2003) ...............................................................4

*Smith v. Olympic Bank*,
    693 P.2d 92 (Wash. 1985)...........................................................................16

*Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*,
    896 So. 2d 787 (Fla. Dist. Ct. App. 2005) ..................................................4

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) .................................................................13

*Stephenson v. Bell Atl. Corp.*,
    177 F.R.D. 279 (D.N.J. 1997).....................................................................18

*Stephenson v. Capano Dev., Inc.*,
    462 A.2d 1069 (Del. 1983) .........................................................................16

*Sterenbuch v. Goss*,
    266 P.3d 428 (Colo. App. 2011) .................................................................12

*Stone v. CompuServe Interactive Servs., Inc.*,
    804 So. 2d 383 (Fla. Dist. Ct. App. 2001) ..................................................3

*Styer v. Hugo*,
    619 A.2d 347 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994).......................12

*Targus Grp. Int'l, Inc. v. Sherman*,
    922 N.E.2d 841 (Mass. App. Ct. 2010) ......................................................5

*In re Tobacco II Cases*,
    207 P.3d 20 (2009).....................................................................................16

*Town of New Hartford v. Conn. Res. Recovery Auth.,*
      970 A.2d 592 (Conn. 2009) ...........................................................7,10

*T.W. Nickerson, Inc. v. Fleet Nat'l Bank,*
      924 N.E.2d 696 (Mass. 2010) ..............................................................6

*Tyler v. Alltel Corp.,*
      265 F.R.D. 415 (E.D. Ark. 2010)...........................................................9

*Tylka v. Gerber Prods. Co.,*
      178 F.R.D. 493 (N.D. Ill. 1998)...........................................................14

*VRG Corp v. GKN Realty Corp.,*
      641 A.2d 519 (N.J. 1994)..................................................................10

*Vulcan Golf, LLC v. Google Inc.,*
      254 F.R.D. 521 (N.D. Ill. 2008)........................................................9,10

*Wade v. Jobe,*
      818 P.2d 1006 (Utah 1991)................................................................14

*Walsh v. Ford Motor Co.,*
      807 F.2d 1000 (D.C. Cir. 1986)............................................................2

*Wilson v. Amerada Hess Corp.,*
      773 A.2d 1121 (N.J. 2001)...................................................................5

*In re Worldcom, Inc.,*
      343 B.R. 412 (Bankr. S.D.N.Y. 2006) ..................................................14

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices and Products Liability
      Litig.,*
      2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ...........................................16

*Young v. Young,*
      191 P.3d 1258 (Wash. 2008)..............................................................12

## RULES

Fed. R. Civ. P. 23 .......................................................................... passim

## STATUTES

CAL. BUS. & PROF. CODE §§ 17200 .......................................................15

CAL. BUS. & PROF. CODE § 17500 .........................................................15

CAL. CIV. CODE § 1750 .......................................................................15

Colo. Rev. Stat. Ann. § 13-80-108 ............................................................................7

Fla. Stat. Ann. § 95.031(1) .......................................................................................7

MINN. STAT. §325F.69 ............................................................................................15

Article 3 of the UCC ..................................................................................................7

Uniform Commercial Code ("UCC") ......................................................................6,7

Va. Code § 8.01-230 ..................................................................................................8

**OTHER AUTHORITIES**

Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1780.1 (3d ed. 2005) ....................2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHNATHAN AND TRUDE YARGER,
a married couple, and JAMES CRAMER,

               Plaintiffs,

      v.

ING BANK, FSB D/B/A/ ING DIRECT,

              Defendant.

Civil Action No.: 1:11-cv-00154-LPS

## DEFENDANT ING'S SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Pursuant to the Court's Order dated June 15, 2012 [D.I. 89], Defendant ING Bank, fsb d/b/a ING DIRECT ("ING") respectfully submits this supplemental brief.

## I.    INTRODUCTION

In deciding a motion for class certification, the court must consider whether there is uniformity of applicable law – a critically important issue since "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002), *rehearing en banc denied* (Jun 5, 2002). Based upon Plaintiffs' proposed multi-state class, uniformity is lacking because of the significant variations in state laws. If a class is certified, a single jury must be instructed on all of the unique aspects of state law differences in claim elements, temporal focus, intent, damages and defenses. As discussed below, the unavoidable result here is that individual issues predominate over common issues such that a trial in accordance with Plaintiffs' proposal would be unmanageable. Accordingly, the Court should deny class certification.

## II.    CHOICE OF LAW

### A. Multi-state classes are disfavored.

The predominance requirement of Rule 23 generally is not satisfied if the class claims will be decided on the basis of multiple states' laws. 7AA Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1780.1 (3d ed. 2005) (citing numerous cases). Where the laws of multiple states are implicated, if the district court does not consider how they will impact the class, then any certification order may be reversed. *See, e.g., In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 (3d Cir. 2001); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986).

Plaintiffs have the burden to demonstrate that variations in state law do not defeat predominance and that the trial would be manageable. 7AA Wright, *supra* § 1780.1 (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)). Thus, plaintiffs should accompany a motion for class certification with a detailed analysis of the variations in each state's laws. *Id.*; *see also Sacred Heart Health Sys, Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) (internal citations omitted) (More than a perfunctory analysis is required; the issue can only be resolved by specifically identifying the applicable state law variations and determining whether the variations can be effectively managed.); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) (Plaintiffs "cannot meet this burden when the various laws have not been identified and compared.").

Plaintiffs have failed to identify and to compare the applicable state laws in question. They have not cited any cases in which courts have certified classes grouped by their proposed sixteen states for claims involving the breach of the implied covenant of good faith and fair dealing ("Implied Covenant") or unjust enrichment. They have glossed over critical differences in state laws regarding these claims. With respect to statutory consumer fraud, they do not

identify--much less analyze--the specific statutes upon which they propose to advance claims and they ignore meaningful differences amongst them.[1]  They do not even mention common law fraud.  In short, Plaintiffs' attempt to satisfy their Rule 23 burden is completely inadequate.

    B.  <u>There are material and significant variations in state law.</u>

### 1. Implied Covenant of Good Faith and Fair Dealing

The Yargers not only fail to allege the precise terms of the contract they contend ING breached, they also neglect to specify what covenants are allegedly implied into that contract. *See* Amended Complaint [D.I. 36].  The laws of the sixteen states Plaintiffs have proposed differ significantly with respect to claims for breach of contract and of the Implied Covenant, thereby defeating predominance.  *See, e.g., Stone v. CompuServe Interactive Servs., Inc.*, 804 So. 2d 383, 389 (Fla. Dist. Ct. App. 2001) (breach of contract claims); *Hammett v. Am. Bankers Ins. Co. of Fla.*, 203 F.R.D. 690, 701 (S.D. Fla. 2001) (same); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 223 (W.D. Mich. 1998) (unjust enrichment and breach of contract claims).  Plaintiffs inaccurately contend that the only material variation in Implied Covenant law concerns whether "bad faith" or "lack of good faith" is required.  Yet, Plaintiffs do not identify which states require "bad faith" and which states apply a "lack of good faith" standard; nor do

---

[1] Instead, Plaintiffs again insist that the Delaware Consumer Fraud Act ("DCFA") can be applied to a nationwide class, ignoring precedent to the contrary. *See, e.g., Pa. Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 473-77 (D. Del. 2010) (DCFA did not apply in class action where DE corporation allegedly distributed misleading materials to clients in other states.). In *Nieves v. All Star Title, Inc.*, the court cautioned: "[a] bare allegation that the defendant actively conducts business" in Delaware is "insufficient to establish that the particular conduct forming the basis of the plaintiff's claim occurred in Delaware for purposes of the DCFA." *Id.* at *4. Likewise, Plaintiffs' reliance upon the *Lony* case is wildly off-point because (unlike this case) it was clear that the conduct at issue occurred in Delaware. *Lony v. Lony v. E.I. du Pont de Nemours & Co., Inc.*, 821 F. Supp. 956, 961-962 (D. Del. 1993). Also, Plaintiffs' reliance on the choice-of-law provision on ING's website is a red herring since those terms plainly apply to use of the website itself. *See* ING's Response, p. 20. In any event, Plaintiffs' attempt to continue arguing for the application of Delaware law to out-of-state class members is puzzling since it is beyond the scope of the Court's Order. Upon request from the Court, ING will brief this issue.

they specify how a jury could determine at trial how to apply these different standards based upon the conduct and testimony of the Yargers as sole class representatives.

### a. The Scope of the Implied Covenant Varies Significantly.

Contrary to Plaintiffs' proposed jury instructions, the Implied Covenant is <u>not</u> implied into every contract--at least not in Florida, Maryland, and Pennsylvania. *See AAMCO Transmissions, Inc. v. Wirth*, 2011 WL 6088671, at *11 (E.D. Pa. Dec. 7, 2011) ("[U]nder Pennsylvania law, every contract does not imply a duty of good faith."); *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 791 (Fla. Dist. Ct. App. 2005) ("virtually all contractual relationships"); *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992) ("implied term in certain contracts").

Some states recognize Implied Covenant claims only where the defendant has actually prevented the plaintiff from performing under the contract. *See, e.g., Parker*, 604 A.2d at 531; *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995); *Silvester v. Time Warner, Inc.*, 763 N.Y.S.2d 912 (Sup. Ct. 2003); *see also* Ex. A, p. 2. The Yargers do not even allege that they have failed to perform under their contract with ING or that ING caused any such failure. Thus, they could not state a claim in these states.

Other jurisdictions invoke the Implied Covenant only to limit a defendant's exercise of discretion that is expressly granted to it in the contract. *See, e.g., Gore v. Ind. Ins. Co.,* 876 N.E.2d 156, 162 (Ill. App. Ct. 2007) ("Absent the requisite [contractually conferred] discretion . . . , [a plaintiff] cannot state a claim for a breach of the duty of good faith and fair dealing."); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) ("The [Implied Covenant] may be relied upon only when the manner of performance under a specific contract term allows for [either party's] discretion . . . ."); *see also* Ex. A, p. 3. By contrast, Florida allows a claim for breach of

the Implied Covenant only where there is a breach of an express contractual provision. *Snow*, 896 So. 2d at 792. New Jersey differs. "<u>Unlike many other states</u>, in New Jersey 'a party to a contract may breach the [Implied Covenant] in performing its obligations even when it exercises an express and unconditional [contractual] right. . . .'" *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (emphasis added).

### b. The Required Wrongdoing Varies Significantly.

Several states require a plaintiff to establish the defendant's bad faith or some similar level of culpability. *See, e.g., Targus Grp. Int'l, Inc. v. Sherman*, 922 N.E.2d 841, 853 (Mass. App. Ct. 2010); *Katz v. Bd. of Managers.*, 2009 WL 4673749 at *4 (N.Y. Sup. Ct. Nov. 6, 2009); *Bellemare v. Wachovia Mortg. Corp.*, 894 A.2d 335, 346 (Conn. App. Ct. 2006); *Abbott v. Amoco Oil Co.*, 619 N.E.2d 789, 796 (Ill. App. Ct. 1993). Pennsylvania appears to require conduct which is articulated differently from bad faith. *See Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 659 (E.D. Pa. 2003) (The implied covenant "requires parties to a contract to avoid evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.").

### c. Claim Elements Vary Significantly.

There are at least eight unique statements of the required elements for a breach of the Implied Covenant among the sixteen states at issue. Material differences include:

- Whether proof of damages is an element of the claim;[2]

---

[2] *Compare, e.g., Chiulli v. Zola*, 905 A.2d 1236, 1243 (Conn. App. Ct. 2006) (including damages as an element), *with Mathis v. Hargrove*, 888 A.2d 377, 396 (Md. Ct. Spec. App. 2005) (no damages). It is unclear whether North Carolina requires damages. *Compare Nelson v. Hartford Underwriters Ins. Co.*, 630 S.E.2d 221, 229 (N.C. Ct. App. 2006) (requiring only a contract and breach), *with Sechrest v. Forest Furniture Co.*, 141 S.E.2d 292, 293 (N.C. 1965) (finding claim sufficient where plaintiff alleged a contract, its performance, breach, and resulting damage).

- Whether the required elements include the plaintiff's performance under the contract (or excuse for non-performance) and/or establishment of all conditions precedent;[3]

- Whether an intent element exists and, if so, the level of required intent;[4] and

- Whether the elements include breach of some express contract provision, such as Florida requires. *Snow*, 896 So. 2d at 792.

### d. The Statutes of Limitation Conflict.

As many as eight different statutory limitations periods could apply to the Implied Covenant claim, ranging from two to twenty years.[5] Plaintiffs have failed to clarify whether ING allegedly breached an Implied Covenant within the Yargers' Note or Deed of Trust, Agreement to Modify Note, or some other putative agreement based on a combination of advertisements and/or oral representations.[6] The actual claim theory matters because different limitations periods apply depending on whether the claims are based on a written contract, an unwritten contract, or a contract governed by the Uniform Commercial Code ("UCC") (*e.g.*, the Note).

---

[3] *Compare, e.g., Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 425 n.6 (Cal. Ct. App. 2004) (plaintiff's performance as element), *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011) (same) *and Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (requiring conditions precedent), *with Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (including neither requirement), *and Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (same).

[4] *Compare, e.g., Gore*, 876 N.E.2d at 162 (prohibiting a defendant's "[im]proper motive"), *with Katz*, 2009 WL 4673749, at *4 ("malevolen[ce]"), *Onal*, 275 F. Supp. 2d at 659 (prohibiting "lack of diligence and slacking off" and "willful rendering of imperfect performance," among other things), *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 924 N.E.2d 696, 706 (Mass. 2010) (providing that the defendant's motive must be to "affect negatively the plaintiff's rights under the [contract]"), *and Seidenberg v. Summit Bank*, 791 A.2d 1068, 1078 (N.J. Super. Ct. App. Div. 2002) (requiring "bad faith or ill motive"). Other states, such as Washington, do not appear to impose an intent requirement beyond lack of good faith. *See, e.g., Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 291 (Wash. Ct. App. 2008) (no intent requirement specified).

[5] *See* Ex. A, pp. 6-7. Plaintiffs filed their original Complaint on January 21, 2011, and the beginning of the class period is October 2005. Thus, limitations periods of five years or less are potentially implicated by the class claims.

[6] Plaintiffs suggest this latter option by stating that they will establish the existence of an implied contractual obligation by reference to ING's Rate Renewal advertisements.

Each state has its own rules to determine whether a given contract is written or unwritten and whether it is governed by the UCC and its statute of limitation. In California, for example, claims based on an implied covenant in a written contract are subject to the limitations period applicable to written contracts. *Comunale v. Traders & Gen. Ins. Co.*, 328 P.2d 198 (Cal. 1958). Illinois and Virginia are opposite and treat an implied covenant as an unwritten agreement for purposes of the statute of limitations. *Cooper v. United Dev. Co.*, 462 N.E.2d 629, 635 (Ill. App. Ct. 1984); *Corinthian Mortg. Corp. v. ChoicePoint Precision Mktg., LLC*, 2008 WL 2776991, at *3 (E.D. Va. July 14, 2008) (applying Virginia law). Some states may refer to Article 3 of the UCC if the alleged breach is of the Note. *See, e.g., Cont'l Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chicago*, 768 N.E.2d 352, 362-63 (Ill. App. Ct. 2002). Other states may apply the "common law" statute of limitation to alleged breaches of mortgages and/or related promissory notes. *See, e.g., Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 25 & n.6 (1st Cir. 1997).

In addition, states employ different rules regarding the time a claim accrues. In many states, a claim for breach of contract accrues upon the defendant's breach. *E.g., Melrose Housing Auth. v. N.H. Ins. Co.*, 507 N.E.2d 787, 789 (Mass. App. Ct. 1987), *aff'd*, 520 N.E.2d 493 (Mass. 1988); *Penley v. Penley*, 332 S.E.2d 51, 62 (N.C. 1985). In others, the claim accrues upon the occurrence of the last element necessary to state a claim (usually Plaintiffs' damages). *E.g., Armstrong Petroleum*, 11 Cal. Rptr. 3d at 422; *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (citing Fla. Stat. Ann. § 95.031(1)). In Colorado, the claim accrues upon the plaintiff's discovery of its cause of action (or when it reasonably should have discovered it). Colo. Rev. Stat. Ann. § 13-80-108. The "discovery rule" may apply to toll the running of the limitations period in some states. *See, e.g., Newell v. Newell*, 942 N.E.2d 776, 780-81 (Ill. App. Ct. 2011). Other states reject the discovery rule, *e.g., Amoco Oil Co. v. Liberty Auto & Elec.*

*Co.*, 810 A.2d 259, 266 (Conn. 2002); Va. Code § 8.01-230. In Delaware, the discovery rule potentially applies to breach of contract claims, but "only if the cause of action is inherently unknowable and the plaintiff was blamelessly ignorant." *Fooks v. Del.Health & Social Servs.*, 1999 WL 743916, at *3 (Del. Super. Ct. Sept. 14, 1999).

### e. Extrinsic Evidence Rules Are In Discord.

Depending on Plaintiffs' actual claim theory, the Court may have to determine whether, and to what extent, it may resort to extrinsic evidence (such as alleged oral promises) to interpret whatever contract was allegedly breached. States employ different versions of the parol evidence rule and other principles related to admissibility of extrinsic evidence. Most of the proposed states do not allow the Implied Covenant to override or to contradict an express contractual term. *E.g.*, *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004); *Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC*, 715 S.E.2d 273, 283 (N.C. Ct. App. 2011) (citing *Lane v. Scarborough*, 284 N.C. 407, 410 (1973)). However, other state courts look to parol evidence in certain situations. *See* Ex. A, p. 9.

### f. Plaintiffs' Proposed Jury Instructions Are Inadequate.

Plaintiffs' proposed jury instructions do not demonstrate that (or how) this case could be tried by grouping together the Implied Covenant laws of sixteen states. The instructions incorrectly state that the Implied Covenant is included in every contract; do not account for Florida's requirement that Plaintiffs establish a breach of an express contractual provision; do not address the states that apply the Implied Covenant only where a contract grants one party discretion in performing thereunder; do not accommodate those states that recognize a claim only where the defendant has prevented the plaintiff from performing under the contract; and do not adequately account for the different intent requirements of the various states.

### 2. Unjust enrichment

*a. There are Critical Differences in the Laws of Unjust Enrichment.*

Plaintiffs rely upon *Arlandson v. Hartx Mountain. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) for their argument that a nationwide class is appropriate for the unjust enrichment claim. However, the *Arlandson* decision involved a motion to dismiss, not a motion for class certification. Outside the rigorous analysis required by Rule 23, the court in *Arlandson* addressed the issue of different state laws with respect to unjust enrichment in summary fashion. Indeed the holding in at least one of the cases relied upon by the court in *Arlandson* was that there are significant differences in state unjust enrichment law with respect to defenses and who can bring such a claim. *See Powers v. Lycoming Engines*, 245 F.R.D. 226, 230-33 (E.D. Pa. 2007), *vacated and remanded on other grounds*, 328 Fed. App'x 121 (3d Cir. 2009).

In fact, there are critical differences in the laws of unjust enrichment, making this sort of claim ill-suited for class treatment. *See, e.g., In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) (proposed unjust enrichment subclasses pose "unsurmountable choice of law problems"); *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 421-23 (E.D. Ark. 2010) (internal citations omitted) (Outcome-determinative conflicts between consumer protection statutes and unjust enrichment laws of the class members' home states and that of the forum state predominated over common issues; application of the laws of twenty-five states would be unmanageable); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532–33 (N.D. Ill. 2008) (differences in state law on unjust enrichment precluded certification of nationwide class).

Plaintiffs incorrectly contend that "only two arguable differences" exist among the unjust enrichment laws of the sixteen states. Just as in *Vulcan Golf*, however, Plaintiffs do not meet their "herculean burden" of establishing this claimed uniformity. *In re Pharm. Indus. Average*

*Wholesale Price Litig.* ("*AWP*"), 252 F.R.D. 83, 94 (D. Mass. 2008). Falling short, they simply "provid[e] excerpts of the elements of the [sixteen] states' unjust enrichment claims as proof of their similarity, [and they] notably fail to discuss the states' laws in detail or address the concerns raised by numerous other courts that have found significant differences in the laws." *Vulcan Golf*, 254 F.R.D. at 532.

### b. The Required Elements Differ.

Even the required elements are not uniform. Many states require three claim elements, but the specific tests are dissimilar. *Compare, e.g., Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 609 (Conn. 2009) ((1) defendants were benefited; (2) defendant unjustly did not pay plaintiffs; and (3) the failure of payment was to plaintiffs' detriment), *with Cnty. Comm'rs v. J Roland Dashiell & Sons*, 747 A.2d 600, 607 n.7 (Md. 2000) ((1) a benefit conferred; (2) appreciation or knowledge of benefit; and (3) acceptance or retention of benefit under circumstances making it inequitable to retain it without paying value thereof) *and Norman Owen Trucking, Inc. v. Morkoski*, 506 S.E.2d 267, 273 (N.C. Ct. App. 1998) ((1) benefit conferred; (2) acceptance of such benefit; and (3) benefit was not gratuitous). Moreover, Arizona and Delaware use a five-part test, and Washington employs a four-part test, all of which are very different from the three-element tests of other states. *See* Ex. A, pp. 11-13.

Within the factual background of this case, these differences are certainly meaningful. For example, in New Jersey, plaintiffs must show that they "expected remuneration from the defendant at the time [they] performed or conferred a benefit on defendant," *see VRG Corp v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (internal citations omitted) – something the Yargers cannot do.

### c. The Definitions Vary.

The definition of "unjust enrichment" is also non-uniform.  Some states require illegal or unlawful conduct.  *See, e.g., First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981).  Some require fraud or dishonesty.  *See, e.g., Chatham v. Sears, Roebuck & Co.*, 2007 WL 4287511, at *9 ("[A]t least under Illinois law the[] unjust enrichment claims require proof of fraud . . . .").  Other states require a lesser degree of wrongful conduct, *see, e.g., DeSanctis v. Labell's Airport Parking Inc.*, 1991 Mass App. Div. 37, 40, (1991) ("some misconduct, fault or culpable action").  Some states do not specify the required misconduct.  Illegality, unlawfulness, fraud, dishonesty, misconduct, fault, and culpable action are not interchangeable standards.  A court requiring a misconduct may not consider it unjust for ING to retain the "extra" $38 the Yargers paid for their Rate Renewal (Am. Compl. ¶ 43) [D.I. 36], whereas a court that does not require fault may find ING's retention unjust with respect to a class member that paid the maximum $2,500.  A court requiring fraud may reach a different result.

### d. In Some States, the Claim is not Available Where There is an Underlying Contract.

In most states, "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009); *see* Ex. A, p. 16.  But several states have carved out exceptions to this general rule.  *See, e.g., Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) (exceptions where an "implied-in-law contract covers conduct outside the express contract" and/or when a party "will have no right under an enforceable contract"); *J. Roland Dashiell & Sons*, 747 A.2d at 609 (Maryland recognizes exceptions "when there is evidence of fraud or bad faith, there has been a breach of contract . . . when recission [sic] is warranted, or when the express contract does not

fully address a subject matter"). Other states, including Illinois, Massachusetts, and New Jersey, are not clear as to such exceptions. *See* Ex. A, p. 16.

### e. There are Various Requirements About State of Mind.

Some states require the defendant to appreciate and/or know about the benefit. *See, e.g., Acton Constr. Co. v. State*, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986). Other states require the defendant to accept <u>or</u> retain the benefit, *see, e.g., Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008); while other states require the defendant's acceptance <u>and</u> retention, *see, e.g., Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993), *aff'd*, 637 A.2d 276 (Pa. 1994). These states differ from those that "allow recovery on a claim for unjust enrichment even if the [defendant] is not a wrongdoer." *Powers*, 245 F.R.D. at 231 n.15; *see* Ex. A, p. 11 (listing states that do not require wrongdoing). Some states do not require knowledge <u>or</u> acceptance of the benefit, while others require one or the other. *See* Ex. A, pp. 13-14.

### f. The Law Varies Regarding Statutes of Limitations and Accrual.

The law concerning statutes of limitation and accrual also varies. The limitation periods range from three to six years. *See* Ex. A, pp. 14-15. In some (but not all) states, the equitable defense of laches may apply. For example, Illinois does not apply laches to a claim for unjust enrichment, *see Partipilo v. Hallman*, 510 N.E.2d 8 (Ill. App. Ct. 1987), but laches may be available in Connecticut, *see Crown Linen Service, Inc. v. CT Appliance & Fireplace Distributors, LLC*, 2009 WL 765531, at *5 (Conn. Super. Ct. Feb. 24, 2009). Further, the cause of action accrues at different times: (1) when the plaintiff knows or reasonably should know of the unjust enrichment, *see, e.g., Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011); (2) when the injury is inflicted, regarless of the plaintiff's knowledge or discovery, *see, e.g., Levy v. World Wrestling Entm't, Inc.*, 2009 WL 455258 (D. Conn. Feb. 23, 2009); (3) when the wrongful

act occurs, *see, e.g., Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.,* 192 A.D.2d 501, 503, (N.Y. App. Div. 1993); (4) when the benefit is conferred by the plaintiff and accepted by the defendant, *see, e.g., Merle Wood & Assocs. Inc. v. Trinity Yachts, LLC,* 2011 WL 845825 (S.D. Fla. Mar. 7, 2011); and/or (5) when the plaintiff has "the right to apply for relief," *Lowden v. T-Mobile USA, Inc.,* 2009 WL 537787, at *4 (W.D. Wash. Feb. 18, 2009) (applying Washington law), *aff'd,* 378 F. App'x 693 (9th Cir. 2010).

### 3. Unique Defenses Render Certification Improper

The potential application of various defenses to the unjust enrichment and Implied Covenant claims also cautions against certification. For example, the law regarding the defense of the voluntary payment doctrine ("VPD") varies markedly across the sixteen states. *See, e.g., Spagnola v. Chubb Corp.,* 264 F.R.D. 76 (S.D.N.Y. 2010). Some states recognize a broad economic duress exception to the VPD, *see e.g., George H. Dean Co. v. Pappas,* 430 N.E.2d 836, 840 (Mass. App. Ct. 1982), whereas others are reluctant to do so, *see, e.g., Dillon v. U-A Columbia Cablevision of Westchester, Inc.,* 740 N.Y.S.2d 396 (App. Div. 2002). In some states, the VPD is a matter of law. *See, e.g., Boyko v. American Int'l Group Inc.,* 2012 WL 1495372, *6 (D.N.J. Apr 26, 2012), *vacated in part on other grounds,* 2012 WL 213 2390 (D.N.J. Jun 12, 2012). However, in other states, it is a question of fact, *see, e.g., Ruiz v. Brink's Home Security,* 777 So.2d 1062 (Fla. 2001). These and other variances cannot be placed before a jury in a manner that respects the states' divergent choices.

### 4. Statutory Consumer Fraud

> *a. Well-Settled Case Law Holds that Differences in State Consumer Protection or Fraud Statutes Render Certification Improper.*

Courts have long recognized the "great diversity in the language, scope, degree of enforcement, and judicial interpretation of the various state consumer protection laws." *Wade v.*

*Jobe*, 818 P.2d 1006, 1014 (Utah 1991). *See also BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 570 (consumer protection acts are a "patchwork of rules representing the diverse policy judgments of lawmakers in 50 states). Courts have repeatedly held that the variances are significant and render certification improper. *See In re PolyMedica*, 432 F.3d 1, 7 (1st Cir. 2005) (absent "efficient market" exception available in securities fraud cases "individual questions of reliance would inevitably overwhelm the common ones); *In re Worldcom, Inc.*, 343 B.R. 412, 427 (Bankr. S.D.N.Y. 2006) (variations in "scienter, reliance, statute of limitations, and proof of injury" defeated both predominance and manageability of nationwide consumer class); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 219-21 (E.D. Pa. 2000) (refusing to certify class under 41 consumer fraud statutes); *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 498 (N.D. Ill. 1998) ("[A] brief review of the [consumer fraud] statutes reveals not only nuances, but differing standards of proof, procedure, substance, and remedies."). *See also* Fed. R. Civ. P. 23(b)(3) advisory committee's note ("a fraud case may be unsuited for treatment as a class action if there was material variation . . . in the kinds or degrees of reliance").[7]

### b. *Plaintiffs' Proposed Class is Improper.*

Plaintiffs propose an "eleven-state" class, but incredibly, they do not specify what eleven states they propose to include.[8] In any event, there are significant and meaningful differences in

---

[7] For the reasons discussed in ING's Response, the *Warfarin* and *DeBeers* cases are distinguishable in numerous ways. *See* ING Response, pp. 23-25 [D.I. 72].

[8] Plaintiffs say they "seek to certify a small number of states at this time, comprised of a subset of those states certified in *AWP*" (supposedly where the majority of class members are located) and California. Plaintiffs' Brief, p. 13, fn 9. Comparing the class certified in *AWP* with Plaintiffs' list of the sixteen states, there is an overlap of twelve states:  Arizona; California; Colorado; Connecticut; Delaware; Florida; Illinois; Minnesota; New Jersey; New York; North Carolina; and Washington. Although one might assume that Plaintiffs' proposed class is a subset of these twelve states, Plaintiffs provide jury instructions from Massachusetts, a state not included in the twelve, which further confuses the issue. *See* Plaintiffs' Ex. C. In the event that

the states for which Plaintiffs provide jury instructions: (1) Colorado; (2) Connecticut; (3) Delaware; (4) Massachusetts; (5) Minnesota;[9] (6) New Jersey; and (7) Washington, plus California (which according to their brief Plaintiffs also propose to include) -- making a total of eight proposed states that can be identified.

As an initial matter, some of these states have multiple potentially relevant consumer protection statutes, and Plaintiffs do not explain which statutes they seek to apply. For example, California has an Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, all of which are potentially at issue (although ING denies liability under each). *See* CAL. BUS. & PROF. CODE §§ 17200; CAL. BUS. & PROF. CODE § 17500; CAL. CIV. CODE § 1750. Other examples are specified in Exhibit A. Such statutes vary on such important issues as scienter, reliance, causation, defenses, and damages. For example, in Colorado, the defendant must have known that his conduct was deceptive. *Bidwell v. German Motors, Inc.*, 586 P.2d 1003, 1006 (Colo. App. 1978). By contrast, intent to deceive is not a required element in other states. *See, e.g., Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 937 (1st Cir. 1985) (applying Massachusetts law). *See* Ex. A, p. 20 (describing other differences).

State laws also vary significantly with respect to what perspective is used to evaluate deceptiveness. Some states use a reasonable person standard and others a "least sophisticated consumer" standard. *See* Ex. A, pp. 20-21. California employs different standards depending

---

Plaintiffs elaborate on which eleven states they propose, ING reserves the right to seek leave to file a sur-reply on this issue.

[9] The Minnesota Consumer Fraud Act ("MCFA"), which permits recovery of monetary damages, expressly requires that the defendant intend for the plaintiff to rely and does not require that the plaintiff has in fact been misled, deceived, or damaged. MINN. STAT. §325F.69. The MCFA also requires that the fraud or misrepresentation must have been disseminated to, or the conduct must have been perpetrated on, the broader public. *Huong Minh Ly v. Nystrom*, 615 N.W. 2d 302, 310, 314 (Minn. Ct. App. 2006). As Minnesota residents, the Yargers are subject to these requirements, and they cannot represent a class of people subject to different requirements, some of which are directly contrary.

upon whether advertising is aimed at a "particularly susceptible audience." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 494 (Cal. Ct. App. 2003).[10]

The reliance element alone makes the trial of this matter unmanageable. For example, in Washington, the statute requires that the defendant induced the plaintiff either to act or to refrain from acting, *see Smith v. Olympic Bank*, 693 P.2d 92, 96 (Wash. 1985), whereas in Delaware, actual reliance may not be required in some circumstances, *see Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). In Connecticut, reliance is not a required element, although in some situations the plaintiff must demonstrate that he interpreted the message reasonably under the circumstances. *Prishwalko v. Bob Thomas Ford, Inc.*, 636 A.2d 1383, 1388 (Conn. Ct. App. 1994); *Caldor, Inc. v. Heslin*, 577 A.2d 1009, 1013 (Conn. 1990). Other differences are described in Ex. A, pp. 22-23.

State laws also differ as to whether, and in what circumstances, an omission may provide a basis for liability. For example, in Connecticut, an omission is actionable as long as it is likely to mislead consumers. *Jacobs v. Healey-Ford Subaru*, 652 A.2d 496, 506 (Conn. 1995). But in other states, including New Jersey, an omission is prohibited only if it is intentional and concerns a material fact. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *Chattin v. Cape May Greene, Inc.*, 591 A.2d 943 (N.J. 1991). *See* Ex. A, p. 21 (describing other differences). Available defenses also vary. For example, the legality of the underlying conduct is a defense in

---

[10]*In re Tobacco II Cases*, 207 P.3d 20 (2009) did not change California's requirement that absent class members must have seen or been exposed to alleged misrepresentations. As numerous California and federal cases have made clear, *In re Tobacco*'s holding is limited to the circumstances of tobacco marketing. *See, e.g., Mazza v. American Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Ct. App. 2009) (holding that *In re Tobacco* was inapposite when defendant allowed independent agents to make unscripted presentations); *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litig.*, 2012 WL 865041, at *22 (S.D. Ill. Mar. 13, 2012) (holding that *In re Tobacco* was inapplicable because "putative class members must establish exposure to the allegedly fraudulent conduct").

some states, including California and Connecticut, but not in others, such as Massachusetts. *See* Ex. A, pp. 23-24.

As detailed in Exhibit A, the statutes are also non-confirming with respect to public impact requirements, what constitutes unfair or unconscionable behavior, permissible damages, statutes of limitation, and notice requirements. Ex. A., pp. 19-26. These non-conformities render class certification inappropriate.

### c. Plaintiffs' Proposed Verdict Form is Inadequate.

It is improper to aggregate distinctive state laws and proceed toward trial under a fictitious "national consumer protection act." *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995) (issuing writ of mandamus against district court for adopting instructions purporting to merge the laws of various states into a single legal standard). Here, Plaintiffs' proposed verdict form, *see* Plaintiffs' Exhibit C, ignores significant and meaningful differences in state law. For example, the form fails to offer any definition of "unfair" or "deceptive" and does not address state law distinctions as to the public impact requirement, scienter, defenses, damages, and other outcome-determinative issues. *See* Plaintiffs' Exhibit C. Other courts have rebuffed this type of overly simplistic form. *See Lyon*, 194 F.R.D. at 220 (rejecting plaintiffs' instructions as superficial and for failing to define relevant terms under the various state laws).

### 5. Common Law Fraud

Plaintiffs fail to address differences in state law with respect to common law fraud, despite this Court's direction to brief this issue. *See* Order [D.I. 89].[11]   This is perhaps not surprising given that numerous courts have held that fraud claims are notoriously ill-suited for

---

[11] Should Plaintiffs address this issue in their Reply, ING reserves the right to request leave to file a sur-reply.

class certification. *See, e.g., Morgan v. Markerdowne Corp.*, 201 F.R.D. 341 (D.N.J. 2001); *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 293-94 (D.N.J. 1997); *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150 (C.D. Ill. 1991). Individualized issues especially predominate where, as here, the case involves oral communications. *See Eisenberg v. Gagnon,* 766 F.2d 770, 786–87 (3d Cir.1985).

## III.    RELEVANT TIMING OF CONDUCT

The nature of the claim will determine whether the temporal focus falls on when class members initially took out their mortgage loan with ING (the "purchase decision") or, alternatively, on when class members sought to exercise Rate Renew for a preexisting ING mortgage (the "usage decision").

The claims for breach of the Implied Covenant, statutory fraud, and common law fraud all sound in fraudulent inducement. Plaintiffs allege that representations about the Rate Renewal feature (which in the Yargers' case came exclusively from an independent broker) misled them into choosing an ING mortgage with the belief that a Rate Renewal would be available at a fixed price for the life of the loan. *See* Am. Compl. ¶¶ 72-73, 80, 86, 96) [D.I. 36]. Thus, these claims focus on the purchase decision.

The unjust enrichment claim implicates primarily the timing of a usage decision, as this is when the benefit is conferred and received. However, earlier time periods are also relevant to what was represented, how it was represented, and whether ING's retention of the charge is "unjust."

Because Plaintiffs have not articulated their claim theory with respect to their Implied Covenant claim, it is not clear what "contract" ING allegedly breached. If the relevant contract is the Note and/or Deed of Trust, then the claim is based on the putative class members' closing

18

on their respective loans.  However, because many states hold that this claim accrues upon breach, *see supra*, it may instead be based on when the putative class members Rate Renewed (or attempted to do so).  If the relevant "contract" is some combination of advertisements and/or oral representations, it becomes even more individualized.  A few examples will help illustrate:

Class Member A closes on her loan; then receives a $500 Rate Renewal ad; then Rate Renews for more than $500.  Her claim would be based on when she received the ad (creation of the "contract") and when she Rate Renewed (the alleged breach).

Class Member B receives a $500 Rate Renewal ad; then closes on an Orange Mortgage loan; then   receivs a $750 ad; then Rate Renews.   Three potential "contracts" are involved:  (1) the first ad, (2) the Note, and (3) the second ad.  The Note could arguably contain an implied covenant to honor the $500 Rate Renewal, in which case the second ad and the failure to honor could constitute a breach.  The second ad could constitute a breach or rescission of the first, and the Rate Renewal could trigger a breach of the second.  Thus, the claim could potentially be based on any of these periods.

Class Member C is the same as Class Member B, except she closes on an Easy Orange loan, which includes a Rate Renewal addendum that expressly states that the cost of Rate Renewal is subject to change.  *See* Dkt. No. 67 (Rate Renewal Addendum).  If the $500 ad is a contract, the Rate Renewal addendum could arguably constitute a breach of that contract, and the claim would be focused on closing and pre-closing.  Similarly, the addendum destroys any argument that the Note contains an Implied Covenant, such that any claim based on a breach of the Note would be focused on closing and pre-closing.  If the $750 ad constitutes a contract, the claim could be focused on when she received the ad and when she Rate Renews.

The analysis becomes even more complicated depending on the type of ads being received – a retention email containing a deadline to accept the stated Rate Renewal offer would implicate a much smaller timeframe than a direct mail postcard without any sort of deadline that is sent to a prospective customer before she closes on a loan with ING.

Much of this same analysis applies to the claims for common law and statutory fraud. With respect to the statutory fraud claims, it is difficult to know exactly what time the claim is based upon because Plaintiffs have not identified the specific statutes at issue, and numerous statutes are potentially involved. *See* Ex. A, pp. 17-19  Many of the statutes implicate pre- and post-closing conduct, whereas statutes aimed solely at misleading advertising may implicate only conduct leading up to and including the closing.

## IV.  CONCLUSION

The material differences in applicable state law drastically impact the issue of class certification.  Because individual issues will predominate over class issues and the trial of this matter will be unmanageable, ING respectfully requests that the Court deny class certification.

Respectfully submitted this the 16th day of July, 2012.

MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP

*/s/ R. Montgomery Donaldson*
R. Montgomery Donaldson (DE I.D. #4367)
Lisa Z. Brown (DE I.D. #4328)
1105 N. Market Street, 15th Floor
Wilmington, DE 19801
(302) 504-7840
rdonaldson@mmwr.com

*Attorneys for Defendant ING Bank, fsb*

Of Counsel:

Frank A. Hirsch, Jr., Esquire
Matthew P. McGuire, Esquire
Heather Adams, Esquire
Ryan P. Ethridge, Esquire
ALSTON & BIRD LLP
4721 Emperor Blvd., Ste. 400
Durham, NC 27703
(919) 862-2200