# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHNATHAN AND TRUDE YARGER, a married couple,<br><br>                 Plaintiffs,<br><br>          v.<br><br>ING BANK, FSB D/B/A/ ING DIRECT,<br><br>                 Defendant. | Case No.:  11-154-LPS |

## PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF IN
## SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111-3339

David P. Meyer
Matthew R. Wilson
**MEYER WILSON, CO., LPA**
1320 Dublin Road, Ste. 100,
Columbus, Ohio 43215

Jeffrey S. Goddess  (Del. Bar No. 630)
P. Bradford deLeeuw  (Del. Bar No. 3569)
**ROSENTHAL, MONHAIT & GODDESS, P.A.**
919 Market Street, Suite 1401
Wilmington, Delaware 19899-1070

July 23, 2012

-i-

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | Delaware law applies. | 1 |
| II. | Multistate classes are not disfavored. | 3 |
| III. | The only differences that matter are differences that matter. | 3 |
| IV. | Timing of conduct relevant to Plaintiffs' claims. | 4 |
| V. | The state consumer protection law at issue. | 5 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*Burger King Corp. v. E-Z Eating*,
  572 F.3d 1306 (11th Cir. 2009) .................................................................................................. 4

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ........................................................................................................ 3

*Daigle v. Ford Motor Co.*,
  713 F.Supp.2d 822 (D. Minn. 2010) ........................................................................................... 4

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ...................................................................................................... 1

*Gunnells v. Healthplan Servs.*,
  348 F.3d 417 (4th Cir. 2003) ...................................................................................................... 1

*In re Average Wholesale Pricing* ("*AWP*"),
  252 F.R.D. 83 (D. Mass. 2008) ........................................................................................... 3, 4, 5

*In re Complaint of Bankers Trust Co.*,
  752 F.2d 874 (3d Cir. 1984) ....................................................................................................... 4

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002) ....................................................................................................... 3

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006) ....................................................................................................... 3

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ................................................................................................... 3, 5

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002),
  *aff'd*, 391 F.3d 516 (3d Cir. 2004) ......................................................................................... 1, 2

*Keilholtz v. Lennox Hearth Prods.*,
  268 F.R.D. 330 (N.D. Cal. 2010) ................................................................................................ 4

*Lony v. E. I. Du Pont de Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989) ................................................................................................... 1, 2

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Marshall v. Priceline.com*,
  No. 05C-02-195, 2006 Del. Super. LEXIS 447 (Del. Super. Ct. Oct. 31, 2006) ....................... 1

*Mass. Mutual Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282 (Cal. App. 4th Dist. 2002) .................................................................... 5

*Nieves v. All Star Title, Inc.*,
  No. N10C-03-191, 2010 Del. Super. LEXIS 319 (Del. Super. Ct. July 27, 2010)..................... 2

*Pa. Emple. Benefit Trust Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010)..................................................................................... 2, 3

*Phillips Petro. Co. v. Shutts*,
  472 U.S. 797 (1987)................................................................................................................. 3

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009),
  *aff'd*, 606 F.3d 391 (7th Cir. 2010)........................................................................................... 3

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009) ....................................................................................................... 4

*Sullivan v. DB Invs., Inc.*,
  613 F.3d 134 (3d Cir. 2010) ..................................................................................................... 1

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .................................................................................................. 1, 3

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)............................................................................................................. 1

Controlling Third Circuit law holds that the Delaware Consumer Fraud Act ("DCFA") applies where, as here, most of the allegedly wrongful conduct took place in Delaware. *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 643 (3d Cir. 1989). And, even if it did not, controlling Third Circuit law holds that such does not defeat predominance, as the Court should then "group" multistate claims. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc), *cert denied sub nom.*, *Murray v. Sullivan*, 2012 U.S. LEXIS 2656 (2012). Yet, ING's brief does not even cite, much less distinguish, that law. Nor does ING show how the variations in law it identifies – many of which are, in any event, in error – preclude such grouping. The only differences that matter are differences that matter on these facts, and even then, such differences only preclude a finding of predominance if they cannot be effectively managed through grouping. Respectfully, they can.

**I.    Delaware law applies.**

On these facts, Delaware law – at the very least the Delaware Consumer Fraud Act ("DCFA") – governs all Class members' claims. *Lony*, 886 F.2d at 643; *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 251 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *see also Sullivan v. DB Invs., Inc.*, 613 F.3d 134, 154 n.15 (3d Cir. 2010) (panel opinion), *vacated on other grounds*, 667 F.3d 273 (3d Cir. 2011) (en banc); *Marshall v. Priceline.com*, No. 05C-02-195, 2006 Del. Super. LEXIS 447, at *7 (Del. Super. Ct. Oct. 31, 2006). ING all but ignores this caselaw.[1]

---

[1] Given ING's cite to *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n. 21 (5th Cir. 1996), it bears emphasis that **_this Court has the authority to certify some claims or issues, but not others_**. Fed.R.Civ.P. 23(c)(4); *see also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 443 (4th Cir. 2003) (discussing a "wealth of authority," including from the Third Circuit). This analysis is not altered when plaintiffs seek separate certification under Rule 23(b)(2) & (b)(3): *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558-59 (2011) forecloses certification of damages under Rule 23(b)(2); it is inapposite when separate certification is sought for injunctive relief. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 427-29 (6th Cir. 2012).

ING does not address the Third Circuit's opinion in *Lony*, asserting only that the district court opinion is "wildly off-point" because the conduct their "occurred in Delaware." (ING Opp. at 3, n.1.) As detailed in Exhibit A, the facts tying the relevant conduct to Delaware in this case are significantly *more* compelling than those in *Lony*. In both cases, defendant's primary conduct occurred in Delaware (here, creation of Rate Renew and related advertising, and ING's decision not to honor it). *See* Ex. A. In both, some secondary conduct occurred elsewhere (here, some transmission of ING's advertising). *See id*. And in both, the ultimate communication and harm to plaintiff occurred where he resided. *See id*. ING's attempt to distinguish *Lony* on its facts plainly fails, and its holding controls. *See* Ex. A; *cf.* Ex. B (comparing this case with *Warfarin*).

ING's assertion that the above controlling caselaw is "beyond the scope of the Court's Order" (ING Opp. at 3 n.1) is wrong. The Court ordered Plaintiffs to provide "choice of law analysis regarding what state law(s) the Court should apply to the consumer fraud claims of the proposed class." (D.I. 89 at 1-2.) That ING wishes the answer were not "Delaware" does not somehow make that answer out of scope.[2]

ING's passing citation to *Nieves v. All Star Title, Inc.*, No. N10C-03-191, 2010 Del. Super. LEXIS 319, at *14 (Del. Super. Ct. July 27, 2010), and *Pa. Emple. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 473-77 (D. Del. 2010), is unavailing. *Nieves* supports Plaintiffs: it explains that the DCFA applies when there is evidence that some relevant conduct occurred in Delaware. 2010 Del. Super. LEXIS 319 at *14; (*see* Pl. Reply at 12 n.34 (collecting this evidence).) As for *Zeneca*, Plaintiffs respectfully submit that it was wrongly decided.

---

[2] Similarly, the Court asked Plaintiffs to answer what "impact state [common] law variations may have on the pending Motion for Class Certification." (D.I. 89 at 1.) Plaintiffs responded directly that the answer was "none," particularly with respect to Plaintiffs' fraud claim, because Delaware law applies there, too. (*See* Pl. Br. at 3-4.)

*Zeneca* does not cite or discuss the panel opinion in *Sullivan*, *Warfarin*, either *Lony* opinion, or *Marshall*, nor Supreme Court precedent affirming application of one state's law so long as it has sufficient connection to the claims, *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 823 (1987).

## II.   Multistate classes are not disfavored.

ING's bald assertion that multistate classes are disfavored is not correct. Indeed, the Third Circuit has expressly mandated that courts consider grouping of state laws precisely to enable certification of such classes. *Sullivan*, 667 F.3d at 297. The Fifth and Seventh Circuit cases ING cites were never the law in this Circuit, *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998), and, critically, predate the Class Action Fairness Act ("CAFA"). As Judge Scirica explained in his *Sullivan* concurrence, CAFA "encourage[s] the consolidation of mass claims national in scope . . . with particular reference to class actions based on state law claims." 667 F.3d at 339.[3]

## III.  The only differences that matter are differences that matter.

ING devotes most of its brief to listing purported differences among state laws. Yet, 1) those differences are not relevant to the Court's predominance analysis because they either are not material on these facts or can be readily grouped, as the Third Circuit recommends; and 2) ING has misapprehended state law and thus found differences where none exist. For example:

- ING argues that statute of limitations issues defeat predominance, but it ignores the long-settled rule that even *individual* variations in the statute of limitations rarely defeat predominance. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002). Applying different *states*' statutes of limitations is a similarly ministerial task: the jury determines the date(s) on which relevant conduct occurred and that date is then mechanically applied across jurisdictions. *See In re Average Wholesale Pricing* ("*AWP*"), 252 F.R.D. 83, 94 (D. Mass. 2008).

---

[3] The Seventh Circuit has walked back its jurisprudence here post-CAFA. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010). As for *Castano*, 84 F.3d at 745 n. 21 (5th Cir. 1996), few non-constitutional cases are as criticized. *See, e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006).

- ING's assertion that some states limit application of the covenant of good faith and fair dealing to certain contracts is wrong.  *See, e.g.*, *Burger King Corp. v. E-Z Eating*, 572 F.3d 1306, 1312 (11th Cir. 2009) ("Under Florida law, every contract contains an implied covenant of good faith and fair dealing."); Ex. C; *cf.* Ex. D (enumerating "lack of good faith" states and "bad faith" states).

- ING is not correct to assert that some jurisdictions do not recognize a breach of good faith and fair dealing claim when plaintiff contends that the defendant improperly exercised "an unlimited discretionary power over a term in the contract."  *Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 828 (D. Minn. 2010); *see also* Ex. E.

- ING's assertion that a single jury cannot determine both whether ING's conduct lacked good faith and whether it was in bad faith is baffling; one is merely a subset of the other.

- It is irrelevant whether damages are articulated as part of a claim for breach of contract or Plaintiffs' performance is part of such a claim.  Such elements are easily addressed through jury instructions, *see AWP*, 252 F.R.D. at 99-100, and neither issue is relevant here, *see In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir. 1984).  Plaintiffs' proposed jury questions illustrate that the same jury can easily make findings for Arizona, New Jersey, and California, in which no independent breach of contract is required, along with findings for those states in which it is.

- ING contends that differences among state consumer fraud statutes' standards for deceptiveness and state of mind defeat predominance.  But *AWP* – never distinguished by ING – explains that this is not so.  252 F.R.D. at 99-100.

- The voluntary payment doctrine could not possibly apply to this case.  *See, e.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) ("[The] voluntary payment doctrine [is] not applicable when [a] claim is predicated on lack of full disclosure" (quotation marks and citation omitted)); Ex. F.

- Many courts have certified multistate unjust enrichment classes, finding that the law does not vary materially.  *See, e.g.*, *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 341-42 (N.D. Cal. 2010) (analyzing this issue thoroughly).

**IV.    Timing of conduct relevant to Plaintiffs' claims.**

ING makes two primary arguments relating to timing, but both fail.  First, ING notes that it may have breached implied terms of the contracts formed by the ads themselves, language found in the mortgage notes, or both.  But in all cases, the timing of relevant conduct is the same.  (*See* Pl. Br. at 14.)  The contractual obligation formed when Class Members entered into

mortgages; breach and damages focus on when they attempted to Rate Renew.  (*See id.*)  Second, ING argues that some consumer fraud statutes govern only pre-mortgage conduct, but  ING fails to support its novel contention that some states permit "unfair" or "deceptive" conduct that occurs after a consumer enters into a mortgage.

**V.      The state consumer protection law at issue.**

Plaintiffs mistakenly did not expressly identify the eleven states for which they seek certification of the consumer protection claim should Delaware law not apply, an oversight for which Plaintiffs apologize.[4]  Plaintiffs ask the Court to group six states whose consumer fraud statutes prohibit unfair acts (CA, CT, FL, IL, MA, and WA), as well as five that prohibit deceptive or misleading ones (CO, DE, MN, NJ, and NY).  *See AWP*, 252 F.R.D. at 99-100.  None of these states requires proof of individual reliance by class members.  *See id*.  In particular, ING's assertion that California law requires additional proof of reliance unless the defendant is a cigarette manufacturer is creative, but wrong.  *See, e.g.*, *Mass. Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1289 (Cal. App. 4th Dist. 2002) ("[Liability] may be found without any individualized proof of deception and solely on the basis a defendant's conduct was likely to deceive consumers.").  The cases ING cites merely explain that *Tobacco II* does not apply when the vast majority of class members were not exposed to a defendant's advertising.  In any event, as the Third Circuit held in *Prudential* – which involved multiple schemes to defraud millions of insurance purchasers through affirmative misrepresentations – individual reliance issues do not necessarily defeat predominance.  148 F.3d at 311, 14-15.

\*     \*     \*

---

[4] Plaintiffs have always referred to the Consumer Fraud Statutes enumerated in *AWP*.  *See* Ex. G.

Respectfully submitted,

Dated: July 23, 2012        ROSENTHAL, MONHAIT & GODDESS, P.A.

By: */s/ P. Bradford deLeeuw*
Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
**ROSENTHAL, MONHAIT & GODDESS, P.A.**
919 Market Street, Suite 1401
Wilmington, DE 19899-1070
(302) 656-4433
jgoddess@rmgglaw.com
bdeleeuw@rmgglaw.com


Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500


Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
(415) 956-1000


David P. Meyer
Matthew R. Wilson
**MEYER WILSON, CO., LPA**
1320 Dublin Road, Ste. 100,
Columbus, OH 43215
(614) 224-6000


*Attorneys for Plaintiffs and the Proposed Class*