## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHNATHAN AND TRUDE YARGER, a married couple, | : |
| Plaintiffs, | : |
| v. | : C.A. No. 11-154-LPS |
| ING BANK, FSB d/b/a ING DIRECT, | : Public Version |
| Defendant. | : Released August 31, 2012 |

Jeffery S. Goddess, Esq. and P. Bradford deLeeuw, Esq., ROSENTHAL MONHAIT & GODDESS, P.A., Wilmington, DE.
Jonathan D. Selbin, Esq., Jason L. Lichtman, Esq., Daniel R. Leathers, Esq., LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, New York, NY
Daniel M. Hutchinson, Esq., LIEFF CABRASER HEIMANN & BERNSTEIN, LLP, San Francisco, CA.
David P. Meyer, Esq. and Matthew R. Wilson, Esq., MEYER WILSON, CO., LPA, Columbus, OH

> Attorneys for Plaintiffs.

R. Montgomery Donaldson, Esq. and Lisa Z. Brown, Esq., MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP, Wilmington, DE.
Frank A. Hirsch, Jr., Esq., Matthew P. McGuire, Esq., Heather Adams, Esq., Ryan P. Ethridge, Esq., ALSTON & BIRD LLP

> Attorneys for Defendant.

## MEMORANDUM OPINION

August 27, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is a Motion for Class Certification filed by plaintiffs Johnathan and Trude Yarger ("Plaintiffs"). (D.I. 44) For the reasons discussed below, the Court will grant in part and deny in part Plaintiffs' Motion for Class Certification.

**BACKGROUND**

## I. Factual Background

### A. ING's Business Practices

Defendant ING Bank, Fsb, doing business as ING Direct ("Defendant" or "ING"), is a portfolio lender that originates, holds, and services all of its mortgage loans. (D.I. 67 ¶ 15) From October 1, 2005 through the present, ING has offered its Orange home mortgage loan, an adjustable rate mortgage which provides for a three, five, or seven year period of fixed rate interest before requiring a yearly interest-rate adjustment. (*See* D.I. 47, Ex. 3 at 55:1-10; *id.*, Ex. 4 at 56:9-12)[1] From July 2006 through the present, ING has offered its Easy Orange home mortgage loan, which provides for a five or ten year period of fixed interest before requiring either a balloon payment or another mortgage. (*See id.*, Ex. 3 at 55:11-17)

ING marketed its Rate Renew to Plaintiffs and other Orange and Easy Orange mortgage borrowers. ING has conducted a uniform advertising campaign for its Rate Renew program from its headquarters in Wilmington, Delaware. (D.I. 45 at 4) ING advertised its Rate Renew program to customers and potential customers through its website, direct mail, postcards, emails, electronic and paper statements, and through its call centers. (*See* D.I. 47, Ex. 3 at 25:10-26:10, 45:4-13)

---

[1]All citations to deposition transcripts are in the format of page#:line#.

1

From October 2005 to May 2008, ING advertised a $500 Rate Renew through▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At least

21,000 ING customers received messages with their monthly statements reminding them they

could Rate Renew at any time; these advertisements did not mention any eligibility

requirements.[2]  (D.I. 45 at 5)

From May 2008 to May 2009, quarterly newsletters sent to all current ING customers

promised: "Extend your fixed rate period at any time after the first six months for another five

years by locking in at the current rate for only $750." (*Id.*, Ex. I)  Postcards regularly sent to ING

customers also offered Rate Renew. (*See id.*, Ex. H ("Renew your rate for another five years at

the then current Easy Orange rate for only $750"))  Additionally, ING emailed current customers,

reminding them of the Rate Renew option and reinforcing the price points in the original

advertising. (*See id.*, Ex. J)  In direct mail advertisements, ING encouraged customers to call

ING to discuss the Rate Renew feature. (*See id.*, Ex. K)  ING's call center employees were

trained to use common procedures and sales points when speaking with a customer, reinforcing

the advertised rates. (*See id.*, Ex. 3 at 51:13-15, 137:16-18, 141:1-5)

Some of the direct mail and emails sent to customers advertising Rate Renew did not

inform consumers that the Rate Renew fees were subject to change at any time or that there may

---

[2]Specifically, the message stated:

> Is your fixed period about to end?

> Relax, you probably won't need a new loan.  Simply adjust your
> existing Orange Mortgage.  For $500, you can lock your low rate
> for another five years at the great low rate of [amount] percent.

(D.I. 47, Ex. C)

2

be qualifications that a consumer had to meet before being eligible to take advantage of Rate
Renew. However, other emails and direct mail did inform customers of either the possibility that
the rates may increase or that a consumer had to meet certain requirements to be eligible to take
advantage of Rate Renew.[3] (*See* D.I. 66 at 6-8 (detailing various forms of email, direct mail, and
monthly statement updates sent by ING, as well as contents of these communications))

ING Customers who took advantage of Rate Renew were not charged the promised ING's
$500 or $750 rate, but rather paid a rate that was steadily increased to the equivalent of one-
monthly or two bi-weekly mortgage payments.[4] (*See id.*, Ex. 2) ING did not inform some
customers of the rate increase. (*See id.*, Ex. 4 at 98:10-99:9)

## B.    Plaintiffs' Transaction History

Plaintiffs first learned about ING through their mortgage broker, Jim Wasieleski. (D.I. 36
¶ 37) Mr. Wasieleski informed Plaintiffs that ING offered "a flat fee Rate Renewal Program"
that would be offered for "the life of their loan." (D.I. 66, Ex. 8 at 5-6) On May 15, 2006,
Plaintiffs took out an Orange home mortgage loan through ING. (D.I. 36 ¶ 36) Plaintiffs
received a mailer from ING in Spring 2008 offering them a Rate Renewal. (D.I. 66, Ex. 8 at 6)
In May 2008, they contacted ING via phone and were informed that they were eligible to Rate

---

[4]The fee was subject to various caps during certain time periods. From May 1, 2009
through May 30, 2009, the Rate Renew fee was subject to a $2500 cap. From June 1, 2009
through September 30, 2009, the Rate Renew fee was not subject to any cap. From October 1,
2009 through April 30, 2010, the Rate Renew fee was subject to a $2500 cap. From May 1, 2010
through the present, the Rate Renew fee has been subject to a $5000 cap. (*See* D.I. 66, Ex. 2
¶ 24; D.I. 45 at 9)

3

Renew at $750. (*Id.*; D.I. 36 ¶ 39) During the phone call, an ING representative informed Mr. Yarger that ING could stop offering Rate Renew at any time. (D.I. 66, Ex. 9 at 10:25-11:12) In June 2008, Plaintiffs obtained their first Rate Renewal for the price of $750. (D.I. 36 ¶ 39)

On September 20, 2009, Plaintiffs voluntarily paid ING their monthly mortgage payment amount of $788.93 to obtain a second Rate Renewal, which lowered their interest rate. (*See* D.I. 66, Ex. 2B) On August 23, 2010, Mr. Yarger contacted ING to request a third Rate Renewal, but ING informed Mr. Yarger that he was ineligible for Rate Renew at that time due to a decline in the value of his property. (*See id.*, Ex. 2 ¶¶ 25-26, 31-36)

## II.   Procedural History

On January 21, 2011, Plaintiffs filed a putative class action complaint alleging, individually and on behalf of all others similarly situated, that ING changed the "flat-fee" promised to the amount of each loan holder's monthly mortgage payment and added qualification requirements to the Rate Renew guarantee that are not described in its advertising. (D.I. 1, Ex. 1 ¶ 21) In their complaint, Plaintiffs asserted six causes of action: violation of the Delaware Consumer Fraud Act ("DCFA"), 6 DEL. C. §§ 2511-27, 2580-84; fraud; promissory estoppel; breach of the implied covenant of good faith and fair dealing; violation of the Truth in Lending Act ("TLA"), 15 U.S.C. § 1600, *et seq.*; and unjust enrichment. (D.I. 1, Ex. 1 ¶¶ 65-116) Plaintiffs filed an amended complaint on December 8, 2011, in which they no longer assert a cause of action for violation of the TLA. (*See* D.I. 36 and, hereinafter, "Complaint") Plaintiffs seek a declaratory judgment of their rights as well as damages and injunctive relief. (*Id.*)

On February 18, 2011, Defendant removed this case to federal court. (*See* D.I. 1) On January 10, 2012, after completing discovery related to class certification, Plaintiffs filed the

4

pending Motion for Class Certification. (D.I. 44)  Plaintiffs seek to certify a class (the "Proposed

Class") consisting of: "[A]ll individuals who purchased or retained an ING . . . Easy Orange or

Orange Loan at any time between October 1, 2005 and [April 23, 2009.]"[5]  (*Id.* at 1; *see also* D.I.

84 at 4)  Plaintiffs seek class certification pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of

the Federal Rules of Civil Procedure. (D.I. 44 at 1)  Additionally, pursuant to Federal Rule of

Civil Procedure 23(g), Plaintiffs seek appointment of the law firms of Lieff, Cabraser, Heimann

& Bernstein, LLP ("LCHB"); Meyer Wilson Co., LPA ("Meyer Wilson"); and Rosenthal,

Monhait & Goddess, P.A. ("Rosenthal") as class counsel.  (*Id.*)

The parties completed briefing on the class certification motion on April 9, 2012.  (*See*

D.I. 84)  The Court heard oral argument on May 29, 2012.  *See* Mot. Hr'g Tr. (D.I. 88 and,

hereinafter, "Tr.").  Following the class certification hearing, the Court ordered the parties to

submit supplemental briefing regarding (1) state law variations for the fraud, breach of implied

covenant of good faith and fair dealing, unjust enrichment, and consumer fraud claims, and (2)

whether the claims were based on when putative class members took out their mortgages with

ING or when class members took advantage of Rate Renew.  (D.I. 89)  This supplemental

briefing was completed on July 23, 2012.  (*See* D.I. 95)  Subsequently, in light of the Third

Circuit's opinion in *Marcus v. BMW of North America, LLC*, __ F.3d ___, 2012 WL 3171560

(3d Cir. Aug. 7, 2012), the Court ordered the parties to address the applicability of *Marcus* to the

---

[5]The Proposed Class explicitly excludes (1) ING, any entity in which ING has a
controlling interest, and its legal representatives, officers, directors, employees, assigns, and
successors; (2) the undersigned Judge and his immediate family; and (3) claims for emotional
distress.  (D.I. 44 at 1 n.1)

instant motion.[6] (D.I. 106) The parties' letter briefs on the applicability of *Marcus* were completed on August 15, 2012. (*See* D.I. 113; D.I. 114)

## LEGAL STANDARDS

### I.   Class Certification

"Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal quotation marks omitted). In reviewing a motion for class certification, such "rigorous analysis may include performing a preliminary inquiry into the merits." *Id.* at 317 (internal quotation marks omitted). "Although the district court's findings for the purpose of class certification are conclusive on that topic, they do not bind the fact-finder on the merits." *Id.* at 318.

Class certification under Rule 23 has two principal components. First, the party seeking certification must establish the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

*Id.* at 309 n.6 (internal quotation marks omitted). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, ___

---

[6]At the request of Plaintiffs (*see* D.I. 93), the Court also permitted the parties to file letter briefs regarding the impact of the Third Circuit's decision in *In re K-Dur Antitrust Litig.*, ___ F.3d ___, 2012 WL 2877662 (3d Cir. July 16, 2012), and this Court's decision in *O'Gara v. Countrywide Home Loans, Inc.*, ___ F.R.D. ___, 2012 WL 2943676 (D. Del. July 12, 2012). (*See* D.I. 98; D.I. 99; D.I. 100; D.I. 101)

U.S. ___, 131 S. Ct. 2541, 2548 (2011).

Here, Plaintiffs rely on Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart*, 131 S. Ct. at 2548-49. Class certification under Rule 23(b)(3) "is permissible when the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Hydrogen Peroxide*, 552 F.3d at 310 (internal quotation marks omitted).

Importantly, "a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Id.* at 320.

## II.   **Appointment of Class Counsel**

Pursuant to Rule 23(g)(1), "a court that certifies a class must appoint class counsel." In appointing class counsel, a court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

## DISCUSSION

In order to determine if Plaintiffs have proven by a preponderance of the evidence that the Proposed Class satisfies all of the Rule 23 requirements, the Court will address each requirement in turn.

### I.     Rule 23(a) Requirements

####     A.     Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "No minimum number of plaintiffs is required to maintain a suit as a class action," but the Third Circuit has generally found that classes with over forty members satisfy the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Plaintiffs assert that numerosity is easily satisfied because Defendant admits to originating 76,487 mortgage loans from October 2005 through May 2009 (the "Class Period"). (D.I. 84 at 2-3)  Plaintiffs contend that ING offered Rate Renew to all of these mortgage customers.[7] (*Id.* at 3)  Defendant argues that Plaintiffs' Proposed Class is indefinite and not sufficiently ascertainable, which defeats numerosity. (D.I. 66 at 12-13)

The Court concludes that Plaintiffs have presented sufficient evidence to satisfy the numerosity requirement.[8] The record evidence indicates that ING originated ▮▮▮ mortgage

---

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs estimate that 77,060

people were offered Rate Renew during the Class Period. (D.I. 45 at 13)

[8]At the class certification hearing, Defendant indicated that it was not challenging numerosity based on whether the Proposed Class contains a sufficient number of class members. (Tr. at 91)  Even so, the Court must engage in a "rigorous analysis" of the Rule 23 requirements and "cannot be bashful" in doing so. *See Marcus*, 2012 WL 3171560, at *4.  Hence, the Court cannot merely accept Defendant's concession regarding numerosity. *See Hydrogen Peroxide*,

8

loans during the Class Period. (*See* Tr. at 17██████ █ █) The record evidence also indicates

that at least ██████ Orange mortgage customers received messages with their monthly mortgage

statements offering them the opportunity to take advantage of Rate Renew. ███████████████

███████████████████████ The record further shows that Delaware and Illinois residents account

for ██████ING mortgages that were originated during the Class Period.[9] ███████ █ █

The record evidence does not indicate how many people actually took advantage of Rate

Renew – either overall or within the states on which the Court focuses.[10] Nonetheless, Plaintiffs

have presented "sufficient circumstantial evidence specific to the products, problems, parties, and

geographic areas actually covered by the class definition" to allow the Court to make a factual

finding regarding numerosity, and rely on its "common sense," to conclude that at least over forty

people who were residents of Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts,

Minnesota, New Jersey, New York, or Washington took advantage of Rate Renew. *Marcus*,

2012 WL 3171560, at *9. There were 10,849 ING mortgages initiated during the Class Period in

the states of Delaware and Illinois alone; the Court can infer from this high number of mortgages

that at least forty mortgagors took advantage of Rate Renew.

---

552 F.3d at 316.

[9]The evidence regarding the number of ING mortgages taken out during the Class Period groups various states together. As will be discussed *infra*, the Court will certify a class consisting of Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts, Minnesota, New Jersey, New York, and Washington residents. Other than for Delaware and Illinois, the exact number of ING mortgages opened during the Class Period is not in the record.

[10]Although Plaintiffs contend that there is evidence in the record regarding the number of mortgagors who took advantage of Rate Renew nationwide, they were unable to point the Court to a specific location in the record. (*See* Tr. at 18) After reviewing the record, the Court is unable to find any such evidence.

Additionally, the Proposed Class is sufficiently ascertainable. Defendant's contention that the Proposed Class must be limited to those who have been harmed by ING's practices is without merit, as defining a class to consist of solely those who have certainly suffered injury is forbidden. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 969-70 (N.D. Ill. 2011) (collecting cases); *see also generally Alberton v. Commonwealth Land Title Ins. Co.*, 264 F.R.D. 203, 206-07 (E.D. Pa. 2010) (reforming definition of class, which had been proposed as "'fail safe' class that impermissibly determine[d] membership based upon a determination of liability"); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250-51 (W.D. Pa. 2008) (altering class definition to avoid having class in which membership depended upon determination of liability). A class will "almost inevitabl[y]" include people who have not been injured, but this "does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677 (7th Cir. 2009); *see also DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010) ("Rule 23's certification requirements [do not] require all class members to suffer harm. . . .").[11] The Third Circuit recently clarified that "requiring plaintiffs to show that no class member benefitted from the challenged conduct . . . is contrary to the Supreme Court's decision in *Hanover Shoe*." *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 223 (3d Cir. 2012) (citing *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968)). Accordingly, the mere fact a potential class member may not have suffered injury as a result of a defendant's conduct is not a reason to deny class certification.

---

[11]In order to determine which class members suffered harm, the Court would need to undertake a merits inquiry of each potential class member's claim, which is improper at this stage of the litigation. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (en banc) ("[T]he Rules and our case law have consistently made clear that plaintiffs need not actually establish the validity of claims at the certification stage.").

Furthermore, the Proposed Class is readily ascertainable based on objective criteria. Unlike situations in which a class fails for lack of ascertainability because "nothing in company databases shows or could show whether individuals should be included in the proposed class," *Marcus*, 2012 WL 3171560, at *6, here ING is able to identify which customers in which states opened ING mortgages during the Class Period, as well as which advertisement(s) regarding Rate Renew these customers received. (*See* D.I. 47, Ex. 1 at 98:9-99:6)

**B.    Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "A finding of commonality does not require that all class members share identical claims." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). Rather, commonality requires "the plaintiff to demonstrate that the class members have suffered the same injury," which means more than "that they have all suffered a violation of the same provision of law." *Wal-Mart*, 131 S. Ct. at 2551 (internal quotation marks omitted). Plaintiffs must demonstrate that their claims depend on "a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Here, the claims of both Plaintiffs and the Proposed Class depend on the contention that ING promised Rate Renew at specific prices and then broke this promise by charging higher fees than advertised. Proof that ING advertised specific fees, but then ultimately charged different fees, would help resolve the claims of all class members. Thus, the Proposed Class satisfies the commonality requirement.

11

## C.   **Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Third Circuit has identified three interrelated considerations to assess in determining whether typicality is satisfied:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying the theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

Here, all three considerations weigh in favor of finding typicality. Plaintiffs' legal claims – violation of the DCFA, fraud, promissory estoppel, unjust enrichment, and breach of the implied covenant of good faith and fair dealing – are identical to those of the Proposed Class. The basic factual circumstances supporting Plaintiffs' claims – namely, Defendant's advertisement of specific Rate Renew offers and failure to honor these advertised Rate Renew prices – are shared by the rest of the Proposed Class.

The fact that Plaintiffs used a mortgage broker does not defeat typicality, as the asserted legal claims do not depend on Plaintiffs or any class members actually seeing the advertising materials themselves.[12] (*See* D.I. 46, Ex. 2 (setting forth elements of each cause of action and listing how Plaintiffs intend to prove these causes of action)) Specifically, the record evidence shows that Plaintiffs' mortgage broker conveyed ING's advertised Rate Renew promise to them.

---

[12]Additionally, it appears that ING did convey the alleged misrepresentations directly to Plaintiffs. (*See* D.I. 87, Ex. 2 at 101:11-102:11)

(*See* D.I. 85, Ex. 2 at 93:2-8 (Q: The advertisements that are referenced on paragraphs 11 and 12 of the complaint are not the ones that you looked at or saw . . . correct? A: This is what our broker communicated to us."); *see also* Tr. at 20) Defendant does not dispute that Plaintiffs' mortgage broker conveyed the ING advertised Rate Renew information. (*See* Tr. at 86 (Defendant's counsel conceding that there is nothing in record contradicting Mr. Yarger's testimony that mortgage broker conveyed same information as ING advertisements))[13] Thus, just as in *Marcus*, in which the Third Circuit determined that there was not a predominance problem where the named plaintiff did not have independent knowledge about the product that other class members lacked, *see* 2012 WL 3171560, at *11, here there is not a predominance problem simply because Plaintiffs dealt with a mortgage broker; the mortgage broker conveyed the same information other customers received directly from ING.

Moreover, the fact that class members received different advertisements does not defeat typicality because all of the advertisements contained the same allegedly misleading information disseminated by Defendant.[14] *See generally Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) ("[F]actual differences will not render a claim atypical if the claim arises from the same

---

[13]There is not evidence that Plaintiffs' mortgage broker conveyed inaccurate Rate Renew information or informed Plaintiffs of facts outside of the ING Rate Renew advertisements. *See Jordan v. Paul Fin., LLC*, 2009 WL 192888, at *5 (N.D. Cal. Jan. 27, 2009) (finding typicality requirement not satisfied where claims required proof of reliance and plaintiff was subject to unique defense that mortgage broker had disclosed fact which had not been disclosed to proposed class).

[14]Although Defendant contends that certain advertisements contained deadlines for when customers had to take advantage of Rate Renew as well as information about eligibility requirements (*see* D.I. 66 at 18-19; Tr. at 76), Plaintiffs have presented evidence that these ads date from a time outside the Class Period and are, therefore, irrelevant (*see* D.I. 84 at 9; *id.*, Ex. C (listing dates of advertisements)).

event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.") (internal quotation marks omitted); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002) ("[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members.").

Plaintiffs are not subject to a unique defense that is inapplicable to many members of the class and likely to become a major focus of the litigation. Although ING contends that it will assert a voluntary repayment defense that may be applicable to Plaintiffs (*see* D.I. 66 at 15), there is no evidence that this defense is unique to Plaintiffs. Rather, it appears that this defense (if it applies at all) would apply to the claims of all class members who voluntarily paid more than the promised Rate Renew cost.[15]

There is no evidence that Plaintiffs' interests are not aligned with those of the Proposed Class. Plaintiffs and all members of the Proposed Class have a common interest in obtaining recovery from ING.

Accordingly, the Proposed Class satisfies the typicality requirement.

### D.    Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "First, the adequacy inquiry tests the qualifications of the counsel to

---

[15]The foregoing analysis presumes that the voluntary repayment defense can be asserted. *But see Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at \*8 (Del. Super. Ct. July 27, 2010) (stating that voluntary repayment defense "could not be applied if a plaintiff presented a viable claim of common-law or consumer fraud").

represent the class. Second, it seeks to uncover conflicts of interests between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004) ("*Warfarin II*") (internal citations and quotation marks omitted).

Defendants do not object to the adequacy of the attorneys of LCHB, Meyer Wilson, and Rosenthal to serve as class counsel. (Tr. at 98) The attorneys of LCHB, Meyer Wilson, and Rosenthal are experienced class action attorneys who have been successful in prosecuting class actions and complex civil litigation in courts throughout the country. (*See* D.I. 46; D.I. 48; D.I. 49) Thus, the Court concludes that LCHB, Meyer Wilson, and Rosenthal will adequately represent the interests of the Proposed Class.

Additionally, the Court concludes that Plaintiffs will fairly and adequately protect the interests of the Proposed Class. There is no indication in the record of a conflict between Plaintiffs and the Proposed Class. Both Plaintiffs and the Proposed Class have a strong interest in establishing ING's liability.

Therefore, Plaintiffs and the proposed class counsel satisfy the adequacy of representation requirement.

## II.    Rule 23(b) Requirements

Having determined that the Proposed Class meets the prerequisites of Rule 23(a), the Court will next address whether the Proposed Class meets the additional requirements of Rule 23(b). For the reasons set forth below, an injunctive-relief only class cannot be certified under Rule 23(b)(2). However, certain claims of a modified version of the Proposed Class can be certified pursuant to Rule 23(b)(3).

15

A.     **Rule 23(b)(2)**

First, Plaintiffs seek class certification pursuant to Rule 23(b)(2), under which class

certification is appropriate if "the party opposing the class had acted or refused to act on grounds

generally applicable to the class." Plaintiffs contend that the Proposed Class can be certified

pursuant to Rule 23(b)(2) because ING has acted or refused to act on grounds that apply

generally to the Proposed Class by refusing to honor its Rate Renew guarantee. Although one

goal of this action is to obtain injunctive relief for the Proposed Class, this alone is not sufficient

to certify a class under Rule 23(b)(2) given that the class also seeks monetary damages. In *Wal-*

*Mart Stores, Inc. v. Dukes*, the Supreme Court stated that Rule 23(b)(2) "does not authorize class

certification when each class member would be entitled to an individualized award of monetary

damages." 131 S. Ct. at 2557. Here, if the members of the Proposed Class were to prevail, each

would be entitled to different amounts of monetary damages based upon the specific amounts

that they paid to Rate Renew in comparison to the advertised price.

The Supreme Court left open the possibility that monetary awards incidental to injunctive

relief may be permissible under Rule 23(b)(2). *See Wal-Mart*, 131 S. Ct. at 2561; *see also Gates*

*v. Rohm & Haas Co.*, 655 F.3d 255, 264 n.13 (3d Cir. 2011). "Incidental damages are those that

flow directly from liability to the class *as a whole* on the claims forming the basis of the

injunctive or declaratory relief." *Barabin v. Aramark*, 2003 WL 355417, at *2 (3d Cir. Jan. 24,

2003) (emphasis in original) (internal quotation marks omitted).

The Proposed Class's claims for monetary damages are not incidental to injunctive relief.

Here, the damages will not flow to the class as a whole, but rather will go to individual class

members based on the amount that they overpaid in comparison to the amount advertised for

Rate Renew. Accordingly, the Proposed Class cannot be certified pursuant to Rule 23(b)(2).

Plaintiffs request that, in the event the Court declines to certify the entirety of the Proposed Class's claims pursuant to Rule 23(b)(2), the Court should instead take a hybrid approach, certifying the equitable portion of the case under Rule 23(b)(2) and the damages portion of the case under Rule 23(b)(3). (D.I. 45 at 18) In response, Defendant contends that no single injunction could satisfy Rule 23(b)(2), rendering class certification under this subsection inappropriate. (D.I. 66 at 16) The Court agrees with Defendants that injunctive relief in this case would need to be tailored to individual class members because Plaintiffs' requested injunction would grant each class member the Rate Renew deal that was in effect at the time that class member closed on his or Rate Renew loan. Although it is possible that the number of different Rate Renew offers is quite small – for instance, just $500 and $750 – this still prevents certification under Rule 23(b)(2). *See Wal-Mart*, 131 S. Ct. at 2557 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant.") (emphasis in original). By Plaintiffs' own class definition, at least two injunctions would be necessary, as there were different Rate Renewal offers for the Orange and Easy Orange mortgages. Accordingly, even under a hybrid approach, class certification under Rule 23(b)(2) is not appropriate.

**B.    Rule 23(b)(3)**

Alternatively, Plaintiffs seek class certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions

17

affecting only individual members, and that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy." As discussed below, Plaintiffs have

demonstrated that a modified class meets the predominance and superiority requirements of Rule

23(b)(3) with respect to the DCFA claim.

### 1. **Predominance**

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide*, 552

F.3d at 310-11. To establish predominance, issues common to class members must predominate

over individual issues. *See In re Prudential*, 148 F.3d at 314-15. Common issues do not

predominate if "proof of the essential elements of the cause of action require individual

treatment." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir.

2001). Whether an element requires individual or common treatment depends on the nature of

the evidence that will suffice to resolve it. *See In re Hydrogen Peroxide*, 552 F.3d at 311. When

an issue requires both individual and common proof, the Court must determine which proof is

key to its outcome. *See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162-63 (3d Cir. 2002).

Plaintiffs contend that the Proposed Class satisfies the predominance requirement because

this litigation focuses on the uniform conduct of ING: the dissemination of false marketing

materials and charging of higher Rate Renewal fees than promised. (D.I. 84 at 8) In response,

Defendant asserts that individualized issues predominate: each borrower's understanding of, and

expectations for, their individualized loans, as well as the communications that each had with

ING and third-party brokers. (D.I. 66 at 17)

In order to resolve the predominance inquiry, the Court must first determine which state's

18

law(s) govern the Proposed Class's claims. Then, the Court will address whether predominance is satisfied on a claim-by-claim basis.

### a.    Choice of Law Issues[16]

Plaintiffs contend that Delaware law applies to all asserted claims because ING imposed a choice-of-law provision on Plaintiffs and all members of the Proposed Class. Plaintiffs base their argument on a choice-of-law provision contained on ING's website. However, the "Terms and Conditions for Use of this Web Site," which contains the choice-of-law provision on which Plaintiffs rely, is limited to ING's website and does not apply to ING's products. There is no evidence that Plaintiffs or any Proposed Class members purchased their Rate Renew via the ING website. (*See* Tr. at 35-36) Accordingly, the website choice-of-law provision is not applicable to the Proposed Class's claims.

Defendant's arguments for why Delaware law does not apply to any of the claims of the Proposed Class are similarly unpersuasive. Defendant contends that because the Proposed Class members' mortgage instruments contained choice-of-law provisions requiring the application of the laws of the borrower's home state,[17] Delaware law cannot uniformly apply to the Proposed Class's claims. However, the parties' dispute does not arise exclusively out of the Proposed Class members' mortgage instruments but, rather, relates to the advertisements and subsequently-

---

[16]The Court's choice of law discussion is limited to Plaintiffs' DCFA claim, unjust enrichment claim, and breach of the implied covenant of good faith and fair dealing claim. This is because, as will be discussed, the Court concludes that, even assuming Plaintiffs are correct that Delaware law applies, Plaintiffs have failed to demonstrate that predominance can be satisfied with respect to the common law fraud and promissory estoppel claims.

[17]The mortgage instruments contained the following choice-of-law provision: "[t]his security instrument shall be governed by . . . the law of the jurisdiction in which the Property is located." (D.I. 67, Ex. A at 18525)

executed Rate Renewal agreements. (*See* D.I. 90 at 14-19 (discussing relevant timing for asserted claims and noting that, with respect to each asserted claim, timing focuses not only on mortgage instrument itself, but also on when proposed class members took advantage of Rate Renew); *see also* Tr. at 43 (Defendant's counsel stating that when mortgagor opts to take advantage of Rate Renew, new contractual agreements are executed)) Thus, the choice-of-law provisions contained in the mortgage instruments are not applicable to the Proposed Class's claims. *See generally Nuzzi v. Aupaircare, Inc.*, 341 Fed. Appx. 850, 852-53 (3d Cir. Aug. 12, 2009) (choice-of-law provision governing "This Agreement" does not extend to non-contractual claims); *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003) (clause stating that choice-of-law provision "applies to the 'rights of the parties' derived from the contract" is not broad enough to cover tort claims related to contract).

Because the parties have failed to demonstrate that Delaware law uniformly does or does not apply to the Proposed Class's claims, the Court will engage in a choice-of-law analysis on a claim-by-claim basis. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (stating Court "must apply an individualized choice of law analysis to each plaintiff's claims"); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822-23 (1985).

### i.  **DCFA Claim**

The DCFA prohibits "unfair or deceptive merchandising practices" that occur "in part or wholly within" Delaware. *See* DEL. C. § 2512. The DCFA "protects non-residents as well as residents" of Delaware. *In re Warfarin*, 212 F.R.D. 231, 248 n.15 (D. Del. 2002) ("*Warfarin I*"), *aff'd, Warfarin II*, 391 F.3d 516; *see also Lony v. E.I. du Pont de Nemours & Co.*, 821 F. Supp. 956, 961 (D. Del. 1993) (finding standing for citizen of Germany to challenge conduct under

DCFA when alleged misrepresentation commenced in Delaware); *Marshall v. Priceline.com*,

2006 WL 3175318, at *2 n.10 (Del. Super. Ct. Oct. 31, 2006) (noting that "non-resident

consumers are protected under the DCFA").

     In particular, the DCFA may be applied to class members outside of Delaware "so long as

the members' own state consumer fraud statutes do not have material conflicts with the Delaware

statute and Delaware has significant contacts with the asserted claims of these plaintiffs."

*Warfarin I*, 212 F.R.D. at 248 n.15.[18] Here, Delaware has significant contacts with the asserted

claims of members of the Proposed Class from every state because: (1) the allegedly misleading

Rate Renew ads which are the subject of the claims emanated from Delaware, and (2) ████████

████████████████████████████████████████████████████████████████████████████████████

---

    [18]Plaintiffs rely on *Warfarin I* to support their assertion that Delaware law should apply to a nationwide class of DCFA claimants regardless of any choice-of-law analysis. (*See* D.I. 90 at 1 (citing *Warfarin I*, 212 F.R.D. at 251 ("Where the defendant's headquarters are located in Delaware and the alleged deceptive acts originated in Delaware, it is proper to apply the Delaware consumer fraud statute to a nationwide class.")) The *Warfarin I* Court overruled an objection to a settlement class that applied Delaware law to class members in every state, without undertaking a choice-of-law analysis. *See* 212 F.R.D. at 251-52; *see also id.* at 250 ("This court also notes that, so far as differences between state laws impact only on case management, these differences are irrelevant to the certification of a settlement class."); *Warfarin II*, 391 F.3d at 529 ("[W]hen dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class."). By contrast, under the circumstances presented in the instant case, the Court has concluded that it must conduct a choice-of-law analysis for each state in order to determine whether Delaware law may apply to a nationwide Rule 23(b)(3) class. *See Phillips*, 472 U.S. at 822-23; *see also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (stating that, in order to comply with due process requirements, "an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action . . . [and] [t]herefore, [the Court] must first decide whether any conflicts actually exist"); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 439 (C.D. Cal. 2007) (noting that "choice of law issues with regard to every class member" must be decided "in order to avoid due process problems"); *Warfarin I*, 212 F.R.D. at 248 n.15 ("[C]lass members from other states can assert Delaware law . . . so long as [inter alia] the members' own state consumer fraud statutes do not have material conflicts with the Delaware statute . . . .").

███████████[19] ██████████████

Notwithstanding the Court's Order (D.I. 89 ¶ 2(A)(ii) (directing parties to brief "the variations in each state's consumer fraud statute and a choice of law analysis regarding what state law(s) the Court should apply to the consumer fraud claims of the proposed class")), neither party briefed the relevant choice-of-law analysis with respect to all fifty states' consumer fraud acts. Plaintiffs briefed the applicability of the consumer fraud statutes of eleven states: California, Colorado, Connecticut, Delaware, Florida, Illinois, Massachusetts, Minnesota, New Jersey, New York, and Washington. (*See* D.I. 90 at 11-14) Having reviewed these states' consumer fraud statutes, the Court concludes that, for all but California,[20] there is not a material conflict between the DCFA and those state statutes, as those states – like Delaware – do not require reliance.[21]

---

[19]The Court is not basing its contacts analysis on the fact that ING is incorporated in Delaware, as incorporation in Delaware is not sufficient to permit application of the DCFA to out-of-state conduct. *See Marshall*, 2006 WL 3175318, at *2 ("[W]hile incorporation may be enough to allow Delaware law to apply to a dispute, it is not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware.").

[20]Although Plaintiffs contend California does not require proof of reliance under the California Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, the California Supreme Court has stated that reliance is required. *See In re Tobacco II Cases*, 207 P.3d 20, 39-40 (Cal. 2009) ("[W]e concluded that [the] language [of the statute] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.").

[21]Another court within this District has determined that New York's consumer protection law has an actual conflict with Delaware law. *See Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 473-475 (D. Del. 2010). *Zeneca* found a conflict between the DCFA and NEW YORK STATE GEN. BUS. LAW § 349 ("GBL 349") because GBL 349 requires a causation element linking the plaintiff's damages to the defendant's deceptive act. *See id.* However, the DCFA similarly contains a causation requirement, albeit implicitly. *See Smith v. Peninsula Adjusting Co., Inc.*, 2011 WL 2791252, at *5 (Del. Super. Ct. June 16, 2011) ("A private cause of action may be brought by a consumer under the Act to recover for *losses suffered as a result of* fraud or deception under 6 Del. C. § 2513.") (emphasis added); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. Super. Ct. 1983) (noting that, except with respect to specifically

Accordingly, the Court will apply the law of Delaware, specifically the DCFA, to the claims of

putative class members who are residents of Colorado, Connecticut, Delaware, Florida, Illinois,

Massachusetts, Minnesota, New Jersey, New York, and Washington.

### ii.    Unjust Enrichment

Notwithstanding the Court's Order (D.I. 89 ¶ 2(A)(i) (directing parties to brief "the

variations (if any) in state law for the fraud, breach of implied covenant of good faith and fair

dealing, and unjust enrichment claims . . . and any impact state law variations may have on the

pending Motion for Class Certification")), Plaintiffs did not conduct a choice-of-law analysis

under the RESTATEMENT (SECOND) OF CONFLICTS §§ 6, 145, 146 (hereinafter, "the Restatement")

to determine whether Delaware or putative class members' home states had the most significant

relationship to the unjust enrichment cause of action.  Thus, Plaintiffs have failed to meet their

burden of demonstrating that Delaware law could apply to a nationwide class with respect to the

unjust enrichment claim.  *See In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)

(noting plaintiff's burden to demonstrate, through "extensive analysis" of state law variances,

that "class certification does not present insuperable obstacles"); *see also Sanders v. Johnson &*

*Johnson, Inc.*, 2006 WL 1541033, at *4 (D.N.J. June 2, 2006) ("The plaintiff has the burden to

creditably demonstrate, through an extensive analysis of state law variances, that class

certification does not present insuperable obstacles.") (internal quotation marks omitted); *see*

*also generally Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306 (3d Cir. 2011) (en banc) (stating it is

---

enumerated differences, DCFA "must be in interpreted in light of established common law
definitions of fraud and deceit," which would require causal link between defendant's conduct
and plaintiff's resulting damages); *see also Crowell Corp. v. Himont USA, Inc.*, 1994 WL
762663, at *4 (Del. Super. Ct. Dec. 8, 1994) (stating that, under DCFA, "all damages
proximately caused by and naturally flowing from a violation of the Act are recoverable").

"plaintiff['s] . . . burden [to] establish each of the Rule 23 class action requirements").

Plaintiffs request that, if the Court determines that Delaware law does not apply to the unjust enrichment claims of residents in all fifty states, the Court instead certify a class of sixteen states whose unjust enrichment laws do not vary materially: Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, Virginia, and Washington.[22] (*See* D.I. 90 at 9-11)

Numerous courts have concluded that states' unjust enrichment laws vary significantly.[23]

---

[22]Plaintiffs concede that the sixteen states' laws vary with respect to whether they require appreciation of a benefit and whether they impose a requirement that there be no adequate remedy at law. (*See* D.I. 90 at 10) Plaintiffs contend, nonetheless, that these variations are immaterial, as it is undisputed that (1) Plaintiffs (and all members of the Proposed Class) conferred a benefit on ING, and (2) there will be no recovery for a member of the Proposed Class under an unjust enrichment theory if there is an adequate remedy at law. (*See id.* at 10-11)

[23]*See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state."); *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortgage Ass'n.*, 624 F.3d 185, 195-96 (5th Cir. 2010) ("Plaintiffs' survey here fails to show that . . . differences in state unjust enrichment laws are insignificant."); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("[T]he law of unjust enrichment varies too much from state to state to be amenable to national or even to multistate class treatment."); *Thompson v. Bayer Corp.*, 2009 WL 362982, at \*4 (E.D. Ark. Feb. 12, 2009) ("After an extensive review of the law, the Court finds that the states' different approaches to, or elements of, unjust enrichment are significant."); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 697 (N.D. Ga. 2008) (discussing "lack of uniformity of unjust enrichment law" and stating there are "important variances, namely state of mind, the effect of implied warranties, and direct benefit requirements"); *Lilly v. Ford Motor Co.*, 2002 WL 507126, at \*2 (N.D. Ill. Apr. 3, 2002) (denying class certification because "[t]he variations in state common laws of unjust enrichment demonstrate that class certification of such a claim would be unmanageable"). *But see Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 710 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state."); *Zeneca*, 710 F. Supp. 2d at 477 ("With respect to Plaintiffs' unjust enrichment claims, neither party has raised an issue as to an actual conflict between the laws of the potentially applicable jurisdictions, and the Court *sua sponte* has determined that the basic elements required under the relevant states' laws do not create an actual conflict.").

Plaintiffs have failed to meet their burden of establishing that there is not a material variation among the unjust enrichment laws of the sixteen states, as they have merely "provid[ed] excerpts of the elements of the [sixteen] states' unjust enrichment claims as proof of their similarity, [and they] notably fail to discuss the states' laws in detail or address the concerns raised by numerous other courts that have found significant differences in the laws." *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532 (N.D. Ill. 2008) (finding plaintiff had failed to meet burden of proving common issues predominated, where plaintiff provided essentially same information that Plaintiffs have provided to this Court).

After reviewing the unjust enrichment laws of the sixteen states for which Plaintiffs seek class certification, the Court concludes that these states' laws have material variations. For instance, the requisite level of fault required to hold a defendant liable varies by state.[24]  In some states a cause of action is not available where there is an underlying contract, whereas other states have carved out exceptions to this rule.[25]  The availability of affirmative defenses also varies by

---

[24]Minnesota requires illegal or unlawful conduct. *See First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Illinois requires a showing of fraud. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Prac. Litig.*, 2007 WL 4287511, at *9 (N.D. Ill. 2007) ("[A]t least under Illinois law the[ ] unjust enrichment claims require proof of fraud. . . ."). Massachusetts requires only "some misconduct, fault or culpable action." *DeSanctis v. Labell's Airport Parking, Inc.*, 1991 Mass. App. Div. 37, 40 (Mass. App. Ct. 1991).

[25]*Compare Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between the parties that gives rise to the unjust enrichment claim."), *with Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000) (noting that Maryland law recognizes claim for unjust enrichment even if there is contract "when there is evidence of fraud or bad faith . . . or when the express contract does not fully address a subject matter"); *see also* D.I. 92, Ex. A at 16 (listing additional state law variations with respect to this issue).

state.[26] Although Plaintiffs contend that these differences are not material, the Court disagrees, as these differences go directly to whether Defendant will be held liable under a specific state law. These material differences raise state law specific questions that defeat predominance.

### iii.   Breach of Implied Covenant

Notwithstanding the Court's Order (D.I. 89 ¶ 2(A)(i)), Plaintiffs did not conduct a choice-of-law analysis under the Restatement factors with respect to their breach of implied covenant claim. Thus, Plaintiffs have failed to meet their burden of demonstrating that Delaware law could apply to a nationwide class with respect to this claim. *See In re Sch. Asbestos Litig.*, 789 F.2d at 1010; *see also Sanders*, 2006 WL 1541033, at *4; *see also generally Sullivan*, 667 F.3d at 306.

Plaintiffs request that, if the Court determines that Delaware law does not apply to the breach of implied covenant of good faith and fair dealing claims of residents in all fifty states, the Court instead certify a class of sixteen states whose breach of implied covenant laws do not vary materially: Arizona, California, Colorado, Connecticut, Delaware, Florida, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, Virginia, and Washington. (*See* D.I. 90 at 6) Plaintiffs also suggest that, if necessary, the Court break down this sixteen state class into sub-classes: one sub-class consisting of those states with laws that require plaintiff to demonstrate defendant acted "without good faith" and another sub-class consisting of those states with laws that require plaintiff to demonstrate that defendant acted with

---

[26]*Compare Partipilo v. Hallman*, 510 N.E.2d 8 (Ill. App. Ct. 1987) (prohibiting application of laches to unjust enrichment claim under Illinois law), *with Crown Linen Serv., Inc. v. CT Appliance & Fireplace Distrib., LLC*, 2009 WL 765531, at *5 (Conn. Super. Ct. 2009) (noting that laches may apply to unjust enrichment claim under Connecticut law).

"bad faith." (*See id.* at 7-8)

Plaintiffs have failed to meet their burden of establishing that there is not a material variation among the breach of implied covenant laws of the sixteen states. *See Vulcan Golf*, 254 F.R.D. at 532. The states' laws vary as to whether there is an intent element and, if so, what intent must be proven.[27] Additionally, some (but not all) of the states require a plaintiff's performance under the contract (or excuse for non-performance) and/or establishment of conditions precedent.[28] These material differences raise state law specific questions that defeat predominance.

### b. Predominance Analysis for Surviving Claims

#### i. DCFA Claim

Common issues predominate with respect to the DCFA claim. To prove a claim under the DCFA, a plaintiff must show: (1) that ING Rate Renew advertisements contained a false

---

[27]*Compare, e.g., Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 162 (Ill. App. Ct. 2007) (prohibiting defendant's "[im]proper motive"), *with T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 924 N.E.2d 696, 706 (Mass. 2010) (stating defendant's motive must be to "affect negatively the plaintiff's rights under the [contract]"); *Katz v. Bd. of Managers*, 2009 WL 4673749, at *4 (N.Y. Nov. 6, 2009) ("malvolen[ce]"); *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 659 (E.D. Pa. 2003) (prohibiting "willful rendering of imperfect performance," among other things), *and Seidenberg v. Summit Bank*, 791 A.2d 1068, 1078 (N.J. Super. Ct. App. Div. 2002) (requiring "bad faith or ill motive"). Other states, including Washington, do not impose an intent requirement beyond lack of good faith. *See Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 291 (Wash. Ct. App. 2008).

[28]*Compare, e.g., Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d 412, 425 n.6 (Cal. Ct. App. 2004) (requiring plaintiff's performance); *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011) (same), *and Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (requiring conditions precedent), *with Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004) (including neither requirement), *and Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (same).

representation and/or omitted a material fact; (2) that ING intended for Plaintiffs to rely on the
representation or omission; and (3) damages. *See Nash v. Hoopes*, 332 A.2d 411, 413 (Del.
Super. Ct. 1975).[29]  Each of these elements involves questions common to the class.

The allegations of the DCFA claim arise out of a common course of conduct by
Defendant: namely the dissemination of written advertisements informing consumers that they
could take advantage of the Rate Renewal offer for a fee of $500 or $750, without mentioning
there were any qualifications that the consumer must meet or that the Rate Renewal fee was
subject to change.[30]  (*See* D.I. 85, Ex. B (compiling all advertisements disseminated during Class
Period))  Defendant contends that predominance is not satisfied here because each member of the
Proposed Class may have received different communications regarding Rate Renewal.  However,
it is the common content of these advertisements that drives resolution of the Proposed Class's
claims; in any event, the Court perceives no material differences in content among the
advertisements in the record.[31]  Numerous courts have concluded that the mere fact class

---

[29]The DCFA does not have an individualized reliance requirement. *See Johnson v.
GEICO Cas. Co.*, 673 F. Supp. 2d 255, 267 (D. Del. 2009) (stating plaintiffs do not need to
prove individual reliance under 6 DEL. C. § 2513); *S&R Assocs., L.P. v. Shell Oil Co.*, 725 A.2d
431, 440 (Del. Super. Ct. 1998) ("While a fraud action at common law requires the plaintiff to
prove reliance, there is no corresponding requirement in 6 DEL. C. § 2513.").

[30]Although ING advertised to the Proposed Class through multiple media, including
emails, newsletters, monthly sales statements, direct mail, and the ING website, the content of
these advertisements was uniform. (*See* D.I. 84 at 9 (listing uniform content of advertisements))
Defendant points to a variety of communications that contained non-uniform information about
the Rate Renewal offer, but these advertisements were all disseminated outside the Class Period.
(*See* D.I. 85 ¶ 7)  The materials disseminated during the Class Period are uniform in that they did
not disclose that the Rate Renewal is subject to change or that there were qualification
requirements. (*See id.*, Ex. B (compiling advertisements disseminated during Class Period))

[31]Even if it was later discovered that there were material differences among the
communications, ING's records establish which members of the Proposed Class received which

28

members received different communications does not defeat predominance. *See, e.g., In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) (certifying class of consumers exposed to different written disclosures); *In re Honeywell Int'l Inc., Secs. Litig.*, 211 F.R.D. 255, 267 (D.N.J. 2002) ("[E]ven if Plaintiffs' claims are viewed as based upon a series of discrete statements rather than upon a single scheme, issues peculiar to individual Plaintiffs will not predominate."). Defendant's arguments relying on oral misrepresentations are misplaced because the Proposed Class's claims are based solely on written misrepresentations. (*See* Tr. at 6, 21-22, 107) ████████████████████████████

████████████████████████████

████████████████████████████

████

Further, each element of the DCFA claim can be proven on a class-wide basis through common proof. First, Plaintiffs will present evidence of ING's Rate Renew guarantee advertised to all class members. Although Rate Renew guarantee information was advertised in various media, this does not defeat predominance because each advertisement contained the same allegedly misleading information. *See generally Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 238-39 (D.N.J. 2008) (finding predominance satisfied and rejecting defendant's argument that "the representations at issue [were] varied and diverse" where "defendants' conduct subjected each purchaser to the same wrongful course of conduct and thereby produced the same claims, supported by the same evidence"). Second, Plaintiffs will rely on internal ING

---

ads and, therefore, the Court could modify the class definition or create subclasses based upon which ad was received. (*See* D.I. 47, Ex. 4 at 98:9-99:6; *id.*, Ex. 3 at 181:13-17)

documents and testimony from ING's representatives to show that ING intended for all members

of the Proposed Class to rely on the information contained in the advertisements. Finally,

Plaintiffs have presented the declaration of Stephen J. Scherf, a certified public accountant, who

attests that damages can be demonstrated via use of a damages model that will not require

individualized proof.[32] (*See* D.I. 51)  Thus, common evidence will prove the gravamen of all

Proposed Class Members' claims, and, consequently, predominance is satisfied with respect to

the DCFA claim.

### ii.     Fraud Claim[33]

Even assuming, arguendo, Delaware law applies uniformly to Plaintiffs' common law

fraud claims, common issues do not predominate with respect to these claims. Under Delaware

law, in order to prove a common law fraud claim the plaintiff must show: (1) a false

representation of (or concealment of) a fact; (2) defendant's knowledge or belief that the

representation was false, or was made with reckless indifference to the truth; (3) an intent to

induce the plaintiff or to cause plaintiff to refrain from acting; (4) plaintiff's action or inaction

taken in justifiable reliance upon the representation; and (5) damage to plaintiff as a result of

such reliance. *See Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). Elements 1-3 and 5

will likely be proven with the same common evidence used to prove the DCFA claim. However,

element 4, reliance, cannot be proven through class-wide evidence and will, instead, require

---

[32]Specifically, the Court notes that to the extent there would be any individualized damages inquiries, such inquiries would go to the "quantum of damages, rather than the fact of injury," and, thus, these potential damages questions do not pose a predominance problem. *See In re K-Dur Antitrust Litig.*, 2012 WL 2877662, at *60.

[33]Plaintiffs seek to certify a common law fraud claim only in the event the Court determines Delaware law is applicable to a nationwide class. (*See* D.I. 100 at 1)

30

individualized proof demonstrating that each member of the Proposed Class took action in justifiable reliance upon ING's representation.

Plaintiffs' assertion that reliance can be presumed is misplaced. Plaintiffs rely on various cases presuming reliance in the securities fraud context,[34] which are not necessarily applicable to consumer fraud. *See Aubrey v. Sanders*, 346 Fed. Appx. 847, 856 (3d Cir. Sept. 24, 2009) (rejecting application of fraud-on-the-market theory for common law fraud claims); *Gaffin*, 611 A.2d at 474 (stating that fraud-on-the-market presumption of reliance is not available in common law fraud actions); *see also generally McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223 (2d Cir. 2008) (refusing to apply "presumption of reliance" in putative class action where defendants had conducted "national marketing campaign," noting that "reliance on the misrepresentation [ ] cannot be the subject of general proof"). Numerous courts have denied class certification of claims where reliance is an element based on their conclusion that proving reliance would cause individual issues to predominate over common questions. *See, e.g., Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified when individual reliance will be an issue."); *In re Neurotin Mktg., Sales Practices & Prods. Liab. Litig.*, 257 F.R.D. 315, 326 (D. Mass. 2009) (discussing "courts' general unwillingness to permit a presumption of reliance/causation in consumer fraud cases"); *Gaffin*, 611 A.2d at 474 ("A class action may not be maintained in a purely common law fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over

---

[34]Although *Spark v. MBNA Corp.*, 178 F.R.D. 431 (D. Del. 1998), is a consumer fraud case in which the Court presumed reliance, the Court's presumption of reliance was based on securities fraud cases. Also, in *Spark* the Court found it "logical" to presume reliance, based on facts that are not present here. *See id.* at 435-36.

common questions of law or fact.").

Proving that members of the Proposed Class relied on ING's allegedly misleading advertisements will require the Court to examine if each class member was given any additional information through phone conversations or other media that are not common to the entire class. Even presuming that all class members received the same communications, reliance still raises individual questions regarding the subjective state of mind of each class member. Because reliance is a central question that goes to the heart of the merits of the Proposed Class's fraud claims and must be proven through individualized evidence, the predominance requirement is not met with respect to the fraud claims.

### iii.    Promissory Estoppel Claim

Even assuming, arguendo, Delaware law applies uniformly to Plaintiffs' promissory estoppel claims, common issues do not predominate with respect to these claims. Under Delaware law, in order to establish a claim for promissory estoppel the plaintiff must show: (1) a promise made to the plaintiff, and (2) the plaintiff's reasonable reliance on that promise to its detriment. *See Borisch v. Graham*, 655 A.2d 831, 835-36 (Del. Super. Ct. 1994). Although the fact that a promise was made to Plaintiffs can be demonstrated via common proof in the form of the advertisements, reliance will need to be proven on an individual class member basis and, as discussed previously, this defeats predominance.

32

## 2.    Superiority[35]

Evaluating the superiority requirement involves "balanc[ing], in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Georgine*, 83 F.3d at 632 (internal quotation marks omitted). There are four nonexclusive factors that a court should consider under the superiority inquiry of Rule 23(b)(3):

> (1) the interest of individual members of the class in controlling the prosecution of the action, (2) the extent of litigation commenced elsewhere by class members, (3) the desirability of concentrating claims in a given forum, and (4) the management difficulties likely to be encountered in pursuing the class action.

*Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008); *see also* FED. R. CIV. P. 23(b)(3)(A)-(D).

### a.    DCFA

All four factors counsel in favor of finding that the superiority requirement is satisfied with respect to the DCFA claim. With regard to the interest of individual class members in prosecuting this action and the extent of litigation commenced elsewhere, the parties have presented no evidence that there is any other litigation concerning ING's Rate Renew pending elsewhere. Hence, to date, the members of the Proposed Class have exhibited no interest in controlling the prosecution of this action. Indeed, given the likely relatively small recovery each individual class member will obtain if Plaintiffs prevail, it does not appear likely that any individual class member would have an interest in controlling prosecution of this case. *See In re*

---

[35]The Court will address superiority not only with respect to the DCFA claim, which meets all of the other Rule 23 prerequisites, but also with respect to the other claims, even though the predominance requirement was not satisfied. These other claims raise superiority concerns which are material to the Court's ultimate certification decision.

*Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 191 (D.N.J. 2003) ("[T]he relatively small amount at stake for each claimant vitiates any argument that each has an interest in controlling the prosecution of the case."). The desirability of concentrating claims in a given forum also supports a finding of superiority, as concentrating this litigation in Delaware will allow it to proceed in an efficient manner. Delaware, as home to ING and a place where many key documents and witnesses are located, is a desirable forum for this litigation. Defendants have identified no management difficulties likely to be encountered in this class action that have not already been considered by the Court in shaping the class it will certify.

### b.    Unjust Enrichment and Breach of Implied Covenant

The fourth superiority factor – the management difficulties likely to be encountered in pursuing the class action – counsels strongly against a finding of superiority with respect to the unjust enrichment and breach of implied covenant claims.

Plaintiffs' proposed jury instructions and verdict forms for the breach of implied covenant claim (*see* D.I. 90, Ex. A) fail to take into account the varying differences in states' laws discussed above. With respect to both the unjust enrichment and the implied covenant claims, Plaintiffs have failed to propose a case management strategy to enable the Court to deal with the "monumental case management problems" that would arise with a class of varying state laws that necessarily raise state-specific issues the jury would need to assess. *See In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 565 (E.D. Ark. 2005) ("In the absence of a satisfactory showing that the variations in state laws can be reasonably reconciled with, at the very least, jury instructions capable of being understood by a jury, and a trial plan that adequately sets forth how the case will proceed, class certification is not warranted."); *see also Sullivan*, 667 F.3d at 304 (recognizing

34

"the difficulties inherent in proving the elements of varied claims at trial [and] instructing the jury on varied state laws"); *Smith v. Merial Ltd.*, 2012 WL 2020361, at *4 (D.N.J. June 5, 2012) (stating that when multiple states' laws govern claims, certification is "unlikely because the variances in the states' laws governing each plaintiff's claims create manageability concerns which can render class certification inappropriate, particularly because these matters have the potential to be tried before a jury").

The Court has considered potential case management strategies but concludes that it is unfeasible to have a jury apply sixteen state laws to the unjust enrichment and implied covenant claims, as the elements of each of these claims varies state to state, including by requiring differing levels of proof regarding Defendant's state of mind. *See In re Am. Med Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing the jury on the relevant law.").

### c.      Fraud and Promissory Estoppel

The fourth factor counsels strongly against finding that a class action is a superior means for adjudicating the common law fraud and promissory estoppel claims. The multitude of individualized issues present in proving reliance would entail complicated mini-litigations focusing on the individual class members' knowledge and state of mind. It would be neither more fair nor more efficient to proceed with these claims as a class action.

35

### III.     Appointment of Class Counsel

In support of their request for appointment of class counsel, Plaintiffs include

declarations of attorneys from LCHB, Meyer Wilson, and Rosenthal detailing the qualifications

of each firm. (*See* D.I.  46, Ex. A; D.I. 48; D.I. 49)  As previously discussed in connection with

the adequacy of representation requirement, the Court concludes that these firms are qualified to

fairly and adequately represent the interests of the class.  Accordingly, pursuant to Rule 23(g), the

Court will appoint the firms of LCHB, Meyer Wilson, and Rosenthal as class counsel.

### CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Plaintiffs'

Motion to Certify Class.  The Court will certify the following class: "All individuals who

purchased or retained an ING Easy Orange or Orange Loan at any time between October 1, 2005

and April 23, 2009 who were residents of the following states at the time of purchase: Colorado,

Connecticut, Delaware, Florida, Illinois, Massachusetts, Minnesota, New Jersey, New York, and

Washington." The Class will be permitted to pursue a claim under the DCFA.  Additionally, the

Court will appoint the law firms of LCHB, Meyer Wilson, and Rosenthal as class counsel and

appoint Plaintiffs as class representatives.  The Court will deny Plaintiffs' Motion for Class

Certification with respect to all other asserted claims.  An appropriate Order follows.