## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Johnathan and Trude Yarger, a married couple, Donna Insalaco, Jeffrey Gerbitz, and Joshua Richman,<br><br>        Plaintiffs,<br><br>        v.<br><br>Capital One, N.A., successor by merger to ING Bank, F.S.B., d/b/a ING Direct,<br><br>        Defendant. | Case No. 11-154-LPS |

## BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS <u>REPRESENTATIVE SERVICE PAYMENTS</u>

Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**Lieff Cabraser Heimann & Bernstein, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013

Daniel M. Hutchinson
**Lieff Cabraser Heimann & Bernstein, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111

David P. Meyer
Matthew R. Wilson
Michael J. Boyle
**Meyer Wilson, Co., LPA**
1320 Dublin Road, Ste. 100
Columbus, OH 43215

Jeffrey S. Goddess (Del. Bar No. 630)
P. Bradford deLeeuw (Del. Bar No. 3569)
**Rosenthal, Monhait & Goddess, P.A.**
919 Market Street, Suite 1401
Wilmington, DE 19899

*Counsel for Plaintiffs and the Certified Class*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL BACKGROUND ........................................................................... 1

    A.      Work Performed by Class Counsel ........................................................ 1

    B.      Class Counsel's Fee and Cost Request .................................................. 4

    C.      The Settlement and Class Notice ........................................................... 5

III.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS'
    FEES AND COSTS IS WELL SUPPORTED .................................................. 5

    A.      Percentage-of-Recovery vs. Lodestar Recoveries .................................. 5

    B.      The Percentage-of-Recovery Approach Is Preferable Here ..................... 6

    C.      A Fee Award of 27.5% the Common Fund Is Fair and Reasonable .......... 7

        1.      The Size Of The Fund and Number of Beneficiaries
        Supports the Fee .......................................................................... 8

        2.      The Absence of Objections Supports the Fee ............................... 8

        3.      The Skill and Efficiency of Class Counsel Support the Fee .......... 9

        4.      The Complexity and Duration of the Litigation Support the
        Fee ............................................................................................. 10

        5.      Class Counsel's Risk of Nonpayment Supports the Fee .............. 10

        6.      The 7,847 Hours Class Counsel  Devoted to this Case
        Supports the Fee ......................................................................... 11

        7.      Awards in Similar Cases Supports the Requested Fee. ............... 12

        8.      The Fact that the Settlement Resulted Exclusively from
        Class Counsel's Efforts Supports the Fee. ................................. 13

        9.      Private Contingent Fee Agreements Support the Fee. ................. 13

        10.     The Settlement's Innovative Terms Support the Fee .................... 14

    D.      The Lodestar Cross-Check Validates the Reasonableness of the
    Requested Fee. ..................................................................................... 14

IV.     CLASS COUNSEL ARE ENTITLED TO EXPENSE REIMBURSMENT ....... 17

V.      SERVICE PAYMENTS ARE WARRANTED FOR THE NAMED
    PLAINTIFFS ................................................................................................ 18

VI.     CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

Page

## CASES

*Alexander v. Washington Mut.*,
  No. 07-4426, 2012 U.S. Dist. LEXIS 171611 (E.D. Pa. Dec. 4, 2012)................................... 18

*Boone v. City of Philadelphia*,
  668 F. Supp. 2d 693 (E.D. Pa. Nov. 3, 2009) ........................................................................ 19

*Bredbenner v. Liberty Travel, Inc.*,
  Nos. 09-905, 09-1248, 09-4587,  2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011).... 13, 19

*Brumley v. Camin Cargo Control, Inc.*,
  Nos. 08-1798, 10-2461, 09-6128, 2012 U.S. Dist. LEXIS 40599 (D.N.J. Mar. 26, 2012) ........ 8

*Chakejian v. Equifax Info. Serv., LLC.*,
  275 F.R.D. 201 (E.D. Pa. June 15, 2011) .............................................................................. 11

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010) ......................................................................................... 6

*E. Aaron Enters., Inc. v. Carolina Classified.com*,
  No. 10-1087, 2010 U.S. Dist. LEXIS 76237 (E.D. Pa. Jul. 27, 2010) ................................... 16

*Flickering v. C.I. Planning Corp.*,
  646 F. Supp. 622 (E.D. Pa. 1986) ........................................................................................... 6

*Frederick v. Range Resources-Appalachia, LLC*,
  C.A. No. 08-288, 2011 U.S. Dist. LEXIS 27350 (W.D. Pa. Mar. 17, 2011)........................... 12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV-08-1365, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ........................... 9

*Godshall v. Franklin Mint Co.*,
  No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004)........................... 8, 20

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................................................... 7

*Hall v. Best Buy Co.*,
  274 F.R.D. 154 (E.D. Pa. Mar. 24, 2011) ................................................................... 11, 12, 19

*In re Aetna, Inc. Sec. Litig.*,
  No. 1219, 2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) ................................................ 17

*In re Am. Bus. Fin. Serv. Inc., Noteholders Litig.*,
  No. 05-2322, 2008 U.S. Dist. LEXIS 95437 (E.D. Pa. Nov. 21, 2008) .................................. 17

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  263 F.R.D. 226 (E.D. Pa. 2009)....................................................................................... 10, 19

*In re AT&T Corp. Secs. Litig.*,
  455 F.3d 160 (3d Cir. 2006) .............................................................................................. 6, 15

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  No. 07-md-01871, 2012 U.S. Dist. LEXIS 180561 (E.D. Pa. Oct. 19, 2012)............... 7, 14, 15

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Budeprion XL Marketing & Sales Litig.*,
  No. 09-md-2107, 2012 U.S. Dist. LEXIS 91176 (E.D. Pa. July 2, 2012) .................................. 7

*In re Cendant Corp. Sec. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................ 6, 10

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
  269 F.R.D. 468 (E.D. Pa. 2010)................................................................................ 19

*In re Computron Software, Inc.*,
  6 F. Supp.2d 313 (D.N.J. 1998) ............................................................................... 9

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08- MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009).................... 9

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ........................................................................... passim

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*General Motors*"),
  55 F.3d 768 (3d Cir. Pa. 1995) ......................................................................... 6, 15

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)................................................................................ 9

*In re Linerboard Antitrust Litig.*,
  No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. Jun. 2, 2004).............................. 9

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................... 12

*In re Processed Egg Prod.*,
  No. 08-md-2002, 2012 U.S. Dist. LEXIS 160764 (E.D. Pa. Nov. 9, 2012)........................... 13

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
  148 F.3d 283 (3d Cir. 1998) ..................................................................... 7, 16, 17

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. 03-0085-FSH, 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005)................................ 8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .......................................................................... passim

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231 (D. Del. 2002) ........................................................................... 13

*In re: Auto. Paint.*,
  MDL No. 1426, 2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) ....................................... 8

*Int'l Union v. Ford Motor Co.*,
  No. 07- CV-14845, 2008 U.S. Dist. LEXIS 66899 (E.D. Mich. Aug. 29, 2008)..................... 9

*Kirsch v. Delta Dental*,
  534 Fed. Appx. 113 (3d Cir. 2013)......................................................................... 12

## TABLE OF AUTHORITIES
### (continued)

Page

*Lachance v. Harrington,*
   965 F. Supp. 630 (E.D. Pa. 1997) ........................................................................ 15

*Lazy Oil Co. v. Witco Corp.,*
   95 F. Supp. 2d 290 (W.D. Pa. 1997)..................................................................... 13

*Lenahan v. Sears, Roebuck and Co.,*
   Civ. No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006),
   *aff'd,* No. 06-3837, 266 Fed. Appx. 114, 2008 U.S. App. LEXIS 3798 (3d Cir. Feb 21,
   2008) ..................................................................................................................... 13

*McLennan v. LG Elecs. USA, Inc.,*
   No. 2:10-cv-03604, 2012 U.S. Dist. LEXIS 27703 (D.N.J. Mar. 2, 2012) ............ 16

*Mehling v. New York Life Ins. Co.,*
   248 F.R.D. 455 (E.D. Pa. 2008)........................................................................... 13

*Milliron v. T-Mobile United States,*
   423 Fed. Appx. 131 (3d Cir.  2011) ................................................................ 15, 17

*Nieto v. Unitron, LP.,*
   No. 06-cv-11966, 2009 U.S. Dist. LEXIS 13230 (E.D. Mich. Feb. 20, 2009)........... 9

*O'Brien v. Brain Research Labs, LLC,*
   No. 12-204, 2012 U.S. Dist. LEXIS 113809 (D.N.J. Aug. 9, 2012) ...................... 19

*Perry v. FleetBoston Financial Corp.,*
   229 F.R.D. 105 (E.D. Pa. 2005)........................................................................... 19

*Rode v. Dellarciprete,*
   892 F. 2d 1177 (3d Cir. 1990) ............................................................................. 16

*Smith v. Dominion Bridge Corp.,*
   No. 96-7580, 2007 U.S. Dist. LEXIS 26903 (E.D. Pa. April 11, 2007)................... 8

*Stagi v. Nat'l. R.R. Passenger Corp.,*
   No. 03-5702, 2012 U.S. Dist. LEXIS 91897 (E.D. Pa. July 3, 2012) .................... 15

*Yarger v. ING Bank,*
   No. 12-8103, 2013 U.S. App. LEXIS 3376 (3d Cir. Jan. 4, 2013)........................... 3

### STATUTES

28 U.S.C. § 1715(b) ................................................................................................. 8

Delaware Consumer Fraud Act ("DCFA"), 6 Del. C. §§ 2511 et seq. ..................... 1, 2

### RULES

Fed. R. Civ. P. 30(b)(6)............................................................................................. 2

### TREATISES

THE MANUAL FOR COMPLEX LITIGATION § 14.121 (4th ed. 2004)................................ 7

**I.      INTRODUCTION**

On May 7, 2014, this Court preliminarily approved a $20,350,000 settlement between

Plaintiffs and Defendant Capital One, N.A., successor by merger to ING Bank, FSB ("ING").  (D.I.

232.)  After years of difficult and tenaciously fought litigation, the Settlement represents an

overwhelmingly positive outcome for Class members.  Class counsel respectfully request an award

of $5,596,250 in attorneys' fees, and reimbursement of $1,026,661 in out-of-pocket costs.  The fees

represent 27.5% of the Settlement Fund, which is less than the 30% noticed to the Class and

provided for in the Settlement, and well within the range approved in the Third Circuit for common

fund fees. *See In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009).  As detailed below, Class

counsel's fee and cost request is reasonable and appropriate given the work performed by Class

counsel, the risks presented by this case, the result achieved for the Class, and the role Class counsel

performed in achieving it.

Class counsel also respectfully move the Court for an award of modest Service Awards of

$3,500 for Plaintiffs Johnathan and Trude Yarger, and Jeffrey Gerbitz, and $1,500 for Plaintiffs

Joshua Richman, and Donna Insalaco for their work on behalf of the Class.

Class counsel respectfully request that the Court grant their motion.

**II.     FACTUAL BACKGROUND**

      **A.      Work Performed by Class Counsel**

Pre-filing Investigation and Complaint.  Beginning in late 2010, Class counsel devoted

significant resources to client interviews and legal research on ING's Rate Renew program. *See*

Declaration of Jonathan D. Selbin in Support of Motion ("Selbin Decl.") ¶ 39.  On January 25, 2011,

the *Yarger* plaintiffs filed a class action complaint in Delaware state court.  Plaintiffs alleged that

ING violated the Delaware Consumer Fraud Act ("DCFA"), 6 Del. C. §§ 2511 et seq., and brought

claims for  common law fraud, promissory estoppel, and breach of the implied covenant of good

faith and fair dealing.  Broadly speaking, all of these claims were based on the same factual

allegation:  Plaintiffs alleged that ING was not permitted to charge its customers more to use a

certain feature of their loans known as "Rate Renew" than was initially-advertised, nor to deny its

customers the ability to Rate Renew altogether based on newly-imposed, undisclosed qualification

requirements.  On February 18, 2011, ING removed the case to this Court.  (D.I. 1.)

Exhaustive Discovery.  The parties engaged in exhaustive discovery efforts.  Plaintiffs

served comprehensive written discovery on ING: four sets of Interrogatories, six sets of Requests

for Admission, and two sets of Requests for Production.  (D.I. 26, 27, 34, 109, 117, 147, 150-52);

*see also* Selbin Decl. ¶ 40.  In response, ING produced approximately 40,000 pages of documents,

which Class counsel reviewed, coded, and analyzed.  Class counsel obtained extensive and key

discovery from third-parties through subpoena efforts.  *Id.* ¶ 40(b).  Plaintiffs took six depositions of

ING executives and Rule 30(b)(6) designees. *Id.* ¶ 41(a).  These individuals were responsible for

overseeing the Rate Renew program, as well as ING's communication with customers.  ING

deposed both of the Yargers, as well as Jim Wasilewski, the broker through whom the Yargers

purchased their ING mortgage. *Id.* ¶ 41(b).  The parties also engaged in significant motion practice

regarding this discovery.  (*See, e.g.*, D.I. 55, 56, 65 (granting Plaintiffs' motion to compel, finding

key ING documents neither privileged nor protected work product).)

Class Certification Briefing and Class Notice.  On January 10, 2012, Plaintiffs moved for

class certification.  (D.I. 44-51.)  Plaintiffs' briefing efforts, however, went far beyond the normal

course—the parties engaged in several additional rounds of briefing regarding conflicts of law (D.I.

90, 92, 95, 107) and the implications of intervening Third Circuit (D.I. 111, 114) and District of

Delaware case law (D.I. 98, 100).  Ultimately, after full briefing (D.I. 84, 95, 108, 113) and

extensive argument (D.I. 88), this Court granted Plaintiffs' motion in part and certified a ten-state

class as to the DCFA claim.  (D.I. 115, 116.)  Plaintiffs successfully opposed ING's motion for

reconsideration of the Court's Class certification order (D.I. 120, 121, 122) and ING's interlocutory appeal to the Third Circuit.  (D.I. 125); *see also Yarger v. ING Bank*, No. 12-8103, 2013 U.S. App. LEXIS 3376 (3d Cir. Jan. 4, 2013).  Class counsel's substantive briefing during the course of the contested Class certification proceedings totaled in excess of 200 pages.  Selbin Decl. ¶ 44(c).

Following Class certification, Class counsel obtained from ING mailing and e-mail lists of Class members, negotiated the content of Class Notice with ING, and paid for mailed Class Notice to Class members.  *Id.* ¶ 45.

Expert Discovery.  The parties engaged in extensive expert discovery.  Plaintiffs vetted and retained numerous academic and industry experts in connection with this action, each of whom added substantial value to both the litigation and settlement efforts.  *Id.* ¶ 42(a) (outlining each of the expert's qualifications). Class counsel consulted and worked extensively with these experts in the litigation, including their preparation of reports. Class counsel also prepared for and defended damages expert Stephen Scherf's deposition. *Id.* ¶ 42(c).  Plaintiffs deposed ING's experts Ravi Dhar, Richard Kulka, and Sonya Kwon.  *Id.* ¶ 43(a).  These depositions covered a wide range of topics, including analysis of ING's marketing materials and expert surveys of ING's customers.  *Id.*

Extensive Motion Practice.  Pre-class certification litigation was only the beginning of Class counsel's efforts.  Since the Class certification, the parties engaged in extensive motion practice. ING filed a contested Motion to file an Amended Answer raising a preemption defense (D.I. 148), to which Plaintiffs responded (D.I. 153), and the Court granted (D.I. 181).  At the time the parties agreed in principle to settle this litigation, three separate motions were pending before the Court: a Motion to Permit Expert Testimony (D.I. 192); Motion for Judgment on the Pleadings (D.I. 173); and Motion to Amend/Correct the Class Definition (D.I. 196).  On January 6, 2014, this Court deferred consideration of all pending motions in light of ongoing mediation and settlement efforts. (D.I. 220).

The *Gerbitz* and *Richman* Actions.  After the Court declined to include residents of California in the *Yarger* class (D.I. 115, 116), Class counsel continued to advocate for those persons by filing *Gerbitz v. ING Bank, fsb*, Case No. 12-cv-01670 (D. Del.) ("*Gerbitz*"), on December 7, 2012, which was related to *Yarger*.  Like *Yarger*, *Gerbitz* was hotly contested.  ING moved to dismiss the action, a motion the Court granted in part and denied in part.  (D.I. 24, 25.)  Additional counsel filed a case in California on behalf of California residents styled *Richman v. ING Bank, FSB et al.*, Case No. 13-cv-01132 (S.D. Cal.) ("*Richman*").  Both *Gerbitz* and *Richman* were consolidated with the *Yarger* action for the purposes of settlement.  (*See* D.I. 232, 233.)

The Mediation.  At various times throughout the litigation, the parties attempted to settle this matter through arm's-length mediations.  They did so in person three separate times in front of two mediators.  The third in person-mediation occurred on January 17, 2014 and was ultimately successful.  Selbin Decl. ¶ 46(b)-(c).  In reaching the Settlement, Plaintiffs—aided by their damages experts—carefully analyzed evidence uncovered during discovery, the strengths of ING's legal defenses, and the value of the case to members of the settlement Class.  *Id*. ¶ 46(d)-(e).

## B.  Class Counsel's Fee and Cost Request

Class counsel request an award of $5,596,250 in attorneys' fees, which represents 27.5% of the $20,350,000 Settlement Fund.  As of August 18, 2014, Class counsel have dedicated 7,847.2 hours to this litigation, for a total lodestar of $3,391,539.50.  Based on this lodestar, the requested fee reflects a multiplier of approximately 1.65.  Class counsel has also incurred $1,036,477.92 in actual out-of-pocket costs related to the litigation, which are described in Class counsel's supporting declarations.  *See* Selbin Decl., Ex. C ; Wilson Decl., Ex. C; Goddess Decl., Ex. C.  However, Class counsel request reimbursement of $1,026,661 in costs.

C.      **The Settlement and Class Notice**

Under the Settlement, ING will provide significant financial compensation to the Class.  The Settlement provides that ING shall pay $20,350,000, as well as all costs of notice and claims administration on top of that amount.[1]  All of that money, less fees for Class counsel and Class representatives' service awards, will be paid out to Class members.  ***All Class members who do not opt out will receive a check in the mail***.  There is no claims process—if a person is in the Class, and no borrower on her loan opts out, she will receive money.  (*See* D.I. 225 at 8-10 (detailing the per-loan settlement amounts).)  Further, any Class members whose mailed class notices were returned as undeliverable and those whose e-mail notices did not receive a read receipt in response will automatically be opted out, meaning their claims will not be released. (D.I. 225-1 (Settlement Agreement) at §3.8.2(a).)  Class Members could also visit a dedicated settlement website to learn their estimated Settlement share.  (*See* D.I. 225-1 at 55.)

III.    **CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND COSTS IS WELL SUPPORTED**

Class counsel's requested fee cost reimbursement is fair and reasonable in light of counsel's significant and successful efforts throughout this litigation.  Class counsel's request is also well-within the legal bounds of reasonableness given the duration and complexity of this case.

A.      **Percentage-of-Recovery vs. Lodestar Recoveries**

Courts in the Third Circuit assess attorneys' fees in class cases in one of two ways: the "percentage-of-recovery" method, or the "lodestar-multiplier" method.  *See In re Rite Aid Corp. Sec.*

---

[1] This is an unusual provision—and extremely beneficial to the Class.  In almost all common fund settlements, the Class pays for settlement class notice and claims administration out of the fund itself; here, ING bears those costs on top of the fund.  In part for this reason, the Parties agreed that any proceeds from uncashed checks will be used to reimburse ING for its notice and claims administration costs. In other words, the only exception to ING paying all settlement Class notice and administration costs is in the unlikely event that any Class members do not cash their settlement checks after several attempts to re-send the checks pursuant to §7.4 of the Settlement.

*Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  "The former applies a certain percentage to the [settlement] fund.  The latter multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services."  *In re Diet Drugs*, 582 F.3d at 540  (internal quotation marks and citations omitted); *see also In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).  Courts in the Third Circuit typically apply the percentage-of-recovery method of assessing fees in cases with an established common fund, like the present case.  *See*, *e.g.*, *In re Rite Aid*, 396 F.3d at 306-07; *cf. Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 593 (D.N.J. 2010) (explaining that the lodestar method generally only takes on significance when the amount of recovery is "uncertain").  Under either method, courts have discretion to consider factors that are "useful and relevant with respect to the particular facts of the case."  *In re AT&T Corp.*, 455 F.3d at 166.

      **B.**      <u>**The Percentage-of-Recovery Approach Is Preferable Here**</u>

      Fee awards derived from the common fund avoid "the unjust enrichment of those who otherwise would benefit from the fund without sharing in the expenses incurred by the successful litigant."  *Flickering v. C.I. Planning Corp.*, 646 F. Supp. 622, 632 (E.D. Pa. 1986).  The percentage-of-the-fund method has become the prevailing method for awarding fees in common fund cases.  Courts have long recognized that "'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'"  *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*General Motors*"), 55 F.3d 768, 820 n. 39 (3d Cir. Pa. 1995); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-md-01871, 2012 U.S. Dist. LEXIS 180561, at *2 (E.D.

Pa. Oct. 19, 2012) (applying the percentage of the fund method to award up to $143,750,000 in

fees).[2]

### C.     A Fee Award of 27.5% the Common Fund Is Fair and Reasonable

To determine whether a potential fee award is reasonable, a district court must consider the

factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) and *In re*

*Prudential Ins. Co. of America Sales Practices Litig.,* 148 F.3d 283, 317 (3d Cir. 1998).  *See In re*

*Diet Drugs*, 582 F.3d at 540.  Those are:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or
> absence of substantial objections by members of the class to the settlement terms
> and/or fees requested by counsel, (3) the skill and efficiency of the attorneys
> involved, (4) the complexity and duration of the litigation, (5) the risk of
> nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7)
> the awards in similar cases, *Gunter*, 223 F.3d at 195 n.1; *Prudential*, 148 F.3d at
> 336-40, (8) the value of benefits attributable to the efforts of class counsel relative to
> the efforts of other groups, such as government agencies conducting investigations,
> (9) the percentage fee that would have been negotiated had the case been subject to a
> private contingent fee arrangement at the time counsel was retained, and (10) any
> innovative terms of settlement, *Prudential*, 148 F.3d at 338-40; *see also AT&T*, 455
> F.3d at 165 n.34.

*In re Diet Drugs*, 582 F.3d at 540.  While a court may consider each factor, "[t]he fee award

reasonableness factors 'need not be applied in a formulaic way' because each case is different, 'and

in certain cases, one factor may outweigh the rest.'"  *AT&T*, 455 F.3d at 166 (quoting *Rite Aid*, 396

F.3d at 301).  As explained below, each of these ten factors supports the reasonableness of the fee

request here.

---

[2] *See also, e.g.*, *In re Budeprion XL Marketing & Sales Litig.*, No. 09-md-2107, 2012 U.S. Dist.
LEXIS 91176, *67 (E.D. Pa. July 2, 2012) ("The percentage-of-recovery method is preferred when
the fee is to be paid from a common fund because it allows courts to award fees from the fund in a
manner that rewards counsel for success and penalizes it for failure" (quoting *In re Rite Aid Corp.,
Sec. Litig.*, 396 F. 3d 294, 300 (3d Cir. 2005) (internal quotations marks omitted)); *see also In re
Diet Drugs*, 582 F.3d at 540; *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148
F.3d 283, 333 (3d Cir. 1998) (When calculating attorneys' fees in a common fund case "the
percentage-of-recovery method is generally favored"); *see also* THE MANUAL FOR COMPLEX
LITIGATION § 14.121 (4th ed. 2004) (reporting that "the vast majority of courts of appeals now
permit or direct district courts to use the percentage method in common-fund cases").

1.      **The Size Of The Fund and Number of Beneficiaries Supports the Fee.**

The Settlement Fund in this case is $20,350,000, with nothing deducted for notice and

claims administration.  The Class is comprised of Class members holding approximately 115,000

loans, each of whom will benefit directly by receiving a cash payment without filing a claim form.

The average payment will be approximately $175.  A 27.5% award of this fund is reasonable and

falls within the range approved in similar cases.  Indeed, "courts within this Circuit have typically

awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." *Ravisent*, No. 00-CV-1014,

2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005).[3]

2.      **The Absence of Objections Supports the Fee**

Plaintiffs will address the substance of any objections to the Settlement in their Final

Approval Brief on September 23, 2014.  To date, only few Class members have submitted any

objection to the Settlement.  (D.I. 234, 236, 238.)  In addition, ING provided notice to all of the

appropriate officials as required by the Class Action Fairness Act on April 14, 2014.  (D.I. 231); *see*

*also* 28 U.S.C. § 1715(b).  Significantly, none of the officials have filed an objection to the

Settlement.  Courts routinely cite this fact as supporting final approval. *See, e.g.*, *Garner v. State*

*Farm Mut. Auto. Ins. Co.*, No. CV-08-1365, 2010 U.S. Dist. LEXIS 49477, at *37 (N.D. Cal. Apr.

---

[3] *See also, e.g.*, *Brumley v. Camin Cargo Control, Inc.*, Nos. 08-1798, 10-2461, 09-6128, 2012 U.S.
Dist. LEXIS 40599 (D.N.J. Mar. 26, 2012) (approving a 33.3% fee recovery); *In re: Auto. Paint.*,
MDL No. 1426, 2008 U.S. Dist. LEXIS 569, at *7  (E.D. Pa. Jan. 3, 2008) (awarding requested fees
of 33.3% of the multi-million dollar settlement fund); *Smith v. Dominion Bridge Corp.,* No. 96-
7580, 2007 U.S. Dist. LEXIS 26903 (E.D. Pa. April 11, 2007) (approving a 33.3% fee recovery); *In*
*re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085-FSH, 2005 U.S. Dist. LEXIS 27013 at
*32 (D.N.J. Nov. 9, 2005) (awarding fees of 33.3% of $75 million settlement fund); *Godshall v.*
*Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *19 (E.D. Pa. Dec. 1, 2004)
(awarding a fee  of 33.3% and noting that "[t]he requested percentage is in line with percentages
awarded in other cases").

22, 2010) ("CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").[4]

### 3.      The Skill and Efficiency of Class Counsel Support the Fee.

The reputation, experience, and ability of Class counsel were essential to success in this litigation. *See, e.g., In re Rite Aid*, 396 F.3d at 304 (noting that skill of counsel resulted in significant cash relief for class). Class counsel have substantial experience in consumer class action litigation. *See* Selbin Decl., Ex. A ; Wilson Decl., Ex. A; Goddess Decl., Ex. A. Class counsel's skill in navigating significant and complex motions practice and in mediating this dispute before professional mediators was essential to achieving this Settlement.

Class counsel's history of aggressive and successful prosecution of nationwide consumer class actions made credible their commitment to pursue this litigation until ING provided a fair result for the Class members. Through their skill, reputation, and ability, Class counsel successfully battled ING's barrage of motions before, through, and after class certification, and obtained a settlement that provides an outstanding result for the Class, one that likely could not have been achieved by less experienced or less capable counsel. Selbin Decl. ¶ 44.

Respectfully, Class counsel submit that the manner in which they "conducted all aspects of this litigation, including the very successful settlement negotiations," exemplifies their "significant skill" and "expertise." *Cf. Auto. Paint.*, No. 1426, 2008 U.S. Dist. LEXIS 569, at *13 (E.D. Pa. Jan. 3, 2008).[5] ING and its counsel proved to be a tenacious opponent, and settlement would have been

---

[4]*See also Nieto v. Unitron, LP.*, No. 06-cv-11966, 2009 U.S. Dist. LEXIS 13230, at *4 (E.D. Mich. Feb. 20, 2009); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08- MD-01998, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009); *Int'l Union v. Ford Motor Co.*, No. 07- CV-14845, 2008 U.S. Dist. LEXIS 66899 (E.D. Mich. Aug. 29, 2008).

[5] *Cf. also In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *19 (E.D. Pa. Jun. 2, 2004) ("[t]he [settlement] result achieved is the clearest reflection of [Class counsel's] skill and expertise."); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.*, 6 F. Supp.2d 313, 323 (D.N.J. 1998) ("The most

impossible without Class counsel's experience, ability, and professionalism.  *Cf. In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 244 (E.D. Pa. 2009) (granting fee request where plaintiffs' counsel were highly skilled class action litigators, the defendants were represented by a leading law firm, and both parties vigorously litigated the case).

### 4.      The Complexity and Duration of the Litigation Support the Fee.

"[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are "the factors which increase the complexity of class litigation."  *In re Cendant Corp. Prides Litig.*, 243 F.3d at 741; *see also In re Rite Aid*, 396 F.3d at 305 (complexity and duration of litigation favored significant award where litigation lasted several years and settlement was reached only through mediation).

As detailed above, the Court witnessed the abundance of complex issues that arose over the last three-and-one-half years. The long road to settlement was filled with great adversity.  At the time of settlement, Class counsel completed all merits discovery, including reviewing and coding nearly 40,000 pages of documents.  Selbin Decl. ¶ 40(a).  Class counsel diligently responded to ING's various discovery requests.  Moreover, Class counsel took, defended or attended twelve depositions; analyzed numerous expert reports; consulted with five experts of their own, each of whom issued his or her own report; fully briefed numerous potentially-dispositive motions; drafted three-rounds of mediation briefs and participated in in-depth settlement negotiations.  *Id*. ¶¶ 42(d), 44, 46(a)-(f).

### 5.      Class Counsel's Risk of Nonpayment Supports the Fee.

A court may consider that "while this case has been pending, Class counsel have not received any payment, and, by proceeding on a contingent-fee basis, ran substantial risk of

---

significant factor in this case is the quality of representation, as measured by the quality of results achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel").

nonpayment….." *Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. Mar. 24, 2011).  Certainly, here, there was a chance that Plaintiffs would not prevail.  Consumer class actions, especially those involving attempts to certify multi-state classes, are notoriously complex and uncertain.

Class counsel assumed the significant risk of establishing liability at trial.  Class counsel prosecuted this matter on a wholly contingent basis, which placed at risk their own resources, with no guarantee of recovery.  Selbin Decl. ¶ 16-18.  There was no guarantee that Plaintiffs would succeed in further motion practice, at trial, or on appeal. ING has at no time conceded liability, the appropriateness of Class certification, the availability of damages, or the proper measure thereof.  *Id*. In short, since the beginning of this litigation, recovery by Plaintiffs was far from assured.  Despite such challenges, Class counsel succeeded in reaching a settlement in which ING will provide immediate, guaranteed, and significant relief to the Class.  Class counsel have spent significant time and resources to prosecute the case successfully on behalf of the Class, and will continue to assist the Class until the conclusion of the claims process.  *Id*. ¶ 23; *cf. Chakejian v. Equifax Info. Serv., LLC.*, 275 F.R.D. 201, 219 (E.D. Pa. June 15, 2011) (explaining that where contingent attorneys risk not being able to prove their burden at trial, "substantial attorney's fees should be awarded with settlement approval").

### 6.        The 7,847 Hours Class Counsel  Devoted to this Case Supports the Fee.

Class counsel dedicated significant time and effort to prosecuting this case.  As set forth in the attached exhibits, together, Class counsel have devoted over 7,847 hours to this litigation, from its initial investigation though August 18, 2014.  *See* Selbin Decl., Ex. B ; Wilson Decl., Ex. B; Goddess Decl., Ex. B.  During that span of over three-and-one-half years, and as detailed above,

Class counsel's efforts included (but certainly were not limited to) a large number of challenging tasks.  Selbin Decl. ¶ 24.[6]

Class counsel developed a litigation plan early in this case through which they divided the primary litigation responsibilities, allowing them to prosecute this case jointly while preventing inefficiency and duplication of effort.  *Id.* ¶ 20.  The 7,847 hours recorded in this case to date are reasonable.  *Cf. In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (court considered the fact that the litigation lasted for four years when approving attorneys' fees in the amount of $143,780,000.00); *cf. also Hall v. Best Buy Co.*, 274 F.R.D. at 173 (finding this factor weighed in favor of a one-third fee award where three firms devoted a combined 1,027 hours to prosecuting the class action).

### 7.    Awards in Similar Cases Supports the Requested Fee.

A 27.5% fee award is standard in complex consumer cases of this kind; indeed, recoveries from 30% to one-third (33.3%) are common in complex class action litigation against major banks. *See, e.g.*, *Esslinger v. HSBC Bank Nev., N.A.*, 2012 U.S. Dist. LEXIS 165773, at*37  (E.D. Pa. Nov. 19, 2012) (awarding reasonable attorneys' fees in the amount of 30% of a $23.5 million settlement).[7]

---

[6] Class counsel have devoted, and will devote, even more time to this case.  Class counsel deleted all time billed by attorneys and staff who contributed only minimal time to prosecuting the Actions. Selbin Decl. ¶ 52.  Counsel's responsibilities will not end with final approval.  Class counsel will continue to answer Class member inquiries and work with the Settlement Administrator to remedy any issues that may arise.  *Id.* ¶ 23.  Prior experience indicates that this ongoing work will add significant time to the work Class counsel and their staff have performed in this case.  *Id.*

[7] *See also Rite Aid*, 396 F.3d at 303 (discussing with approval three studies of attorneys' fees awarded in class-action settlements finding that "an average percentage fee recovery of 31%; . . . a median percentage recovery range of 27-30%; . . . and . . . recoveries in the 25-30% range were fairly standard."  (internal quotation marks and citation omitted)); *Kirsch v. Delta Dental*, 534 Fed. Appx. 113, 115 (3d Cir. 2013) (refusing to overturn a fee award because "a percentage fee award of 33% is not unusual"); *Frederick v. Range Resources-Appalachia, LLC*, C.A. No. 08-288, 2011 U.S. Dist. LEXIS 27350, at *9 (W.D. Pa. Mar. 17, 2011) ("'[S]everal courts in this circuit have observed that fee awards under [this] approach typically range from 19% to 45% of the settlement fund.'"

**8.     The Fact that the Settlement Resulted Exclusively from Class Counsel's Efforts Supports the Fee.**

Courts in this Circuit must consider whether Class counsel benefitted from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165 (citation omitted).  Here, Class counsel never relied on "the Government or other public agencies to do their work for them as has occurred in some cases."  *In re Diet Drugs Prods. Liab. Litig.,* 553 F. Supp. 2d 442, 481-482 (E.D. Pa. 2008); *see also Esslinger*, 2012 U.S. Dist. LEXIS 165773, at *44 (approving final settlement and stating that "[t]here is no contention, by objectors or otherwise, that the settlement could be attributed to work done by other groups, such as government agencies"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) ("[T]he litigation was entirely initiated and pursued by class plaintiffs, not as a tagalong to a government enforcement action").  This Settlement is the result solely of the work performed by Class counsel.

**9.     Private Contingent Fee Agreements Support the Fee.**

The 27.5% fee requested here is lower than private contingent fee arrangements within this Circuit.  *See, e.g.*, *In re Processed Egg Prod.*, No. 08-md-2002, 2012 U.S. Dist. LEXIS 160764, at *14 (E.D. Pa. Nov. 9, 2012) (finding "contingency fees of 30 percent or higher are standard"); *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905, 09-1248, 09-4587,  2011 U.S. Dist. LEXIS 38663, at *52 and 60 (D.N.J. Apr. 8, 2011) (approving a 32.6% fee recovery and noting that one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, n. 18 (E.D. Pa. 2008) (finding a fee of 35% to be consistent with private contingent fee arrangements).

---

(quoting *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 341 (W.D. Pa. 1997)); *Lenahan v. Sears, Roebuck and Co.*, Civ. No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) (fees award equaled 30% of a $15 million fund), *aff'd,* No. 06-3837, 266 Fed. Appx. 114, 2008 U.S. App. LEXIS 3798 (3d Cir. Feb 21, 2008).

10.    **The Settlement's Innovative Terms Support the Fee.**

This Settlement includes particularly innovative and pro-Class member terms, which further support the requested fees.  First, every Class member who does not opt out will receive an automatic payment.  The automatic payments here are unlike most class settlements where class members must file a claim form to receive compensation.  Second, any Class member not reachable by either mail or e-mail will be deemed an opt out, i.e., will not release her claims. (D.I. 225-1 (Settlement Agreement) at §3.8.2(a).)   This provision ensures that any Class member who cannot receive an automatic will preserve her claims.  Third, ING will pay all costs of settlement Class notice and claims administration.  (*Id.* at §6.7.)  This provision is unlike almost all common fund settlements where the class pays for settlement Class notice and claims administration costs out of the fund itself; here, ING bears those costs on top of the fund.[8]   These innovative terms are unusual—extremely beneficial to the Class—and support the requested fee.

D.    **The Lodestar Cross-Check Validates the Reasonableness of the Requested Fee.**

A lodestar calculation is used to cross-check the percentage fee award.  The cross-check is not designed to be a "full-blown lodestar inquiry," but rather an estimation of the value of Counsel's investment in the case.  *See Third Circuit Task Force Report, Selection of Class counsel*, 208 F.R.D. 340, 422-23 (2002) (noting that "[t]he lodestar remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class"); *see also In re Avandia Marketing, Sales Practices and Prod. Liability Litig.*, No. 07-md-01871, 2012 U.S. Dist. LEXIS 180561, at *21 (E.D. Pa. Oct. 19, 2012) (quoting *Rite Aid*, 396F.3d at 305-306) ("When used as a cross-check, the lodestar analysis may be abridged, requires 'neither

---

[8] The Parties agreed that any proceeds from uncashed checks will be used to reimburse ING for its notice and claims administration costs.  In other words, the only exception to ING paying all settlement Class notice and administration costs is in the unlikely event that enough Class members do not cash their settlement checks after several attempts to re-send the checks pursuant to §7.4 of the Settlement.

mathematical precision nor bean counting,' and need not involve a review by the district court of actual billing records"). Rather, the Third Circuit applies the lodestar cross-check "as a means of assessing whether the percentage-of-recovery award is too high or too low." *In re Diet Drugs*, 582 F.3d at 558, n. 42 (citing *Rite Aid*, 396 F.3d at 306- 07). In other words, "[t]he lodestar crosscheck is intended to gauge the reasonableness of the attorneys' fee award as a whole." *Milliron v. T-Mobile United States*, 423 Fed. Appx. 131, 136 (3d Cir. 2011) (citing *AT&T*, 455 F.3d at 164; *Rite Aid*, 396 F.3d at 306); *see also Lachance v. Harrington*, 965 F. Supp. 630, 649 (E.D. Pa. 1997) (quoting *General Motors*, 55 F. 3d at 822) (court "use[d] the lodestar method to assure that the precise percentage awarded [did] not create an unreasonable hourly fee").

The lodestar cross-check requires a two-prong analysis. First, the number of hours reasonably expended is multiplied by the attorneys' reasonable rates. *See In re Rite Aid Corp. Securities Litig.,* 396 F. 3d at 305; *see also In re Avandia Litig.*, No. 07-md-01871, 2012 U.D. Dist. LEXIS 180561 (E.D. Pa. Oct. 19, 2012). Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by Counsel, and determines whether the multiplier falls within the accepted range for such a case. *See Stagi v. Nat'l. R.R. Passenger Corp.*, No. 03-5702, 2012 U.S. Dist. LEXIS 91897 (E.D. Pa. July 3, 2012). But "the crosscheck is not the primary analysis [for percentage-of-recovery] case[s] and does not entail 'mathematical precision []or bean-counting.'" *Milliron v. T-Mobile United States*, 423 Fed. Appx. at 135 (citing *Rite Aid*, 396 F.3d at 306).

Here, the lodestar cross-check confirms that the 27.5% request is reasonable. Class counsel have invested considerable time prosecuting this case. *See* Selbin Decl., Ex. B ; Wilson Decl., Ex. B; Goddess Decl., Ex. B. As explained in each firm's declaration, the stated hours were incurred by

extensive, and necessary, litigation efforts.[9]  Given these efforts, the complexity of the legal issues involved, and the intensity of ING's defense, the hours incurred are reasonable.  Additionally, the Settlement effectively vitiated multiple pending motions would have enlarged the current lodestar.  The hourly rates charged by Class counsel are reasonable based on each individual's position, experience level, and location.  Selbin Decl. ¶ 34.

These rates can be based on the prevailing rates in the communities in which Class counsel practices or on hourly rates obtained by counsel in other complex or class action litigation.  *Rode v. Dellarciprete*, 892 F. 2d 1177, 1183 (3d Cir. 1990) ("Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community"); *E. Aaron Enters., Inc. v. Carolina Classified.com*, No. 10-1087, 2010 U.S. Dist. LEXIS 76237, at *6 (E.D. Pa. Jul. 27, 2010) ("The prevailing market rate is ordinarily reflected in a law firm's normal billing rate").

Class counsel's hourly rates have been approved by courts across the country, including in this Circuit. *See, e.g. McLennan v. LG Elecs. USA, Inc.*, No. 2:10-cv-03604, 2012 U.S. Dist. LEXIS 27703, at *27 (D.N.J. Mar. 2, 2012) ("The Court finds that Class counsel's hours and hourly rates are reasonable"); *see also* Selbin Decl. ¶ 36 (listing additional cases from this Circuit).

Given the result achieved, the litigation's complexity and inherent risk, and Class counsel's experience and ability, Class counsel's rates are reasonable and appropriate.  Thus, Class counsel's reasonable hours and reasonable rates produced a lodestar of $3,391,538 as of August 18, 2014.

Class counsel's requested fee of $5,596,250 equates to a 1.65 multiplier on their lodestar.  A 1.65 multiplier is well within the acceptable cross-check range to approve Class counsel's fee request.  There is no pre-defined range for lodestar multipliers and "multiples ranging from one to

---

[9] "The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-307; *Prudential*, 148 F.3d at 341 (finding no abuse of discretion where district court "reli[ed] on time summaries, rather than detailed time records").

four are frequently awarded in common fund cases when the lodestar method is applied."

*Prudential*, 148 F.3d at 341) (internal quotation and citation omitted); *see also In re Diet Drugs*,

582 F.3d at 558, n. 42 (finding that a multiplier, in a lodestar crosscheck, in the range of "2.6, 3.4,

or somewhere in that neighborhood, it is not problematically high.  It is either below or near the

average multiplier…."); *Milliron v. T-Mobile United States*, 423 Fed. Appx. at 135 (noting that the

Third Circuit has "approved a multiplier of 2.99 in a relatively simple case").  Under the

circumstances of this case—including, *inter alia*, the exceptional monetary relief obtained for the

Class; the risk involved with continued litigation; the contingent nature of the fee; the arm's length

nature of difficult and protected negotiations; and the experience of Class counsel in litigating

consumer class actions—a significant multiplier is well justified here under applicable law when

performing a cross-check.  A 1.65 lodestar multiplier cross-check supports the reasonableness of the

requested 27.5% fee.

## IV.    <u>CLASS COUNSEL ARE ENTITLED TO EXPENSE REIMBURSEMENT</u>

"Attorneys who create a common fund for the benefit of a class are entitled to

reimbursement of reasonable litigation expenses from the fund."  *In re Aetna, Inc. Sec. Litig.*, No.

1219, 2001 U.S. Dist. LEXIS 68, at *40 (E.D. Pa. Jan. 4, 2001).  More specifically, various courts

in this Circuit have reimbursed counsel for "filing fees, expert consulting, telephone and fax

charges, copying charges, computer assisted research, travel expenses and mailing charges."  *In re*

*Am. Bus. Fin. Serv. Inc., Noteholders Litig.*, No. 05-2322, 2008 U.S. Dist. LEXIS 95437, at *52

(E.D. Pa. Nov. 21, 2008).

The Class notice informed all Class members that Class counsel would seek $1,026,661 in

actual incurred costs.  (D.I. 225-1 at 55.) At the time of Class counsel's Motion for Preliminary

Approval, on April 9, 2014, $1,026,661 represented the actual costs Class counsel had incurred to

date.  Selbin Decl. ¶ 30.  Since April 9, 2014, however, Class counsel have incurred additional costs

above and beyond $1,026,661.  *Id.* ¶¶ 29, 31; *see also* Wilson Decl., Ex. C; Goddess Decl., Ex. C..

However, Class counsel are seeking reimbursement only for the $1,026,661 in the Notice.

The $1,026,661 amount requested includes costs for (1) mediation fees; (2) travel to the

mediations, meetings with Counsel, and court hearings; (3) hard costs such as legal research

through LEXIS and Westlaw and Federal Express, postage, and messengering fees; and (4) other

costs such as printing, copying, and telephone charges.  Selbin Decl. ¶ 32.  The biggest litigation

expense by far was the cost to retain the multiple experts needed for successful litigation of the case.

*Id.*, Ex. C.  Those experts produced reports related to consumer expectations, banking, and damages.

*Id.* ¶ 42(a).  Class counsel fronted these out-of-pocket costs with no assurance they would be repaid.

*Id.* ¶ 16-18.

The Court should consider a case's complexity and duration when deciding whether to grant

expense reimbursement.  *See Alexander v. Washington Mut.*, No. 07-4426, 2012 U.S. Dist. LEXIS

171611 (E.D. Pa. Dec. 4, 2012) ("The [expense] totals for each category are reasonable given the

complexity and duration of this action").[10]  Class counsel's expenses are the type routinely

reimbursed by courts.  *Id.*; *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343, 344 (D.N.J. 2002).

**V.**     **SERVICE PAYMENTS ARE WARRANTED FOR THE NAMED PLAINTIFFS**

Finally, Class counsel request that the Court award of $3,500 each for Johnathan and Trude

Yarger, $3,500 for Jeffrey Gerbitz, $1,500 for Joshua Richman, and $1,500 for Donna Insalaco for

their efforts in representing the Class.[11]

---

[10] Similar to this case, the *Alexander* litigation lasted about four years.  In *Alexander*, the court found reimbursement of "expenditures for purposes of prosecuting [the] action, including filing fees, electronic research, travel and lodging, expert witness fees, costs of mediation and photocopying" to be reasonable.

[11] Johnathan and Trude Yarger are the named Class representatives for case number11-154, Jeffrey Gerbitz is the named Class representative for the California-only case, case number 12-1670, Joshua Richman is a named class representative in a California-only case (No. 3:13-cv-01132 (S.D.Cal.)) that was filed after the *Gerbitz* case, and Donna Insalaco retained the undersigned after the above-

"Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248 MF, 2011 U.S. Dist. LEXIS 38663, at *64 (D.N.J. Apr. 8, 2011) (collecting cases). The factors considered are:

> [T]he risk to the plaintiff in commencing suit, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class.

*Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005).

Here, the named Plaintiffs "expended significant time and resources for the benefit of the class." *Id*. Throughout this protracted litigation, the named plaintiffs were actively engaged and willingly available to assist Class counsel with the effective prosecution of the case. Plaintiffs have performed numerous tasks as outlined in the accompanying declaration. Selbin Decl. ¶ 57.

The requested awards are sound when compared to those approved in other cases. *See, e.g., Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 715 (E.D. Pa. Nov. 3, 2009) (court approved $15,000 awards for each class representative finding that "[t]hese awards, though high, are justified by the benefit provided to the absent class members").[12] Consequently, Class counsel respectfully

---

referenced cases were filed but provided helpful information to Class counsel prior to the final mediation. Selbin Decl. ¶ 56.

[12] *See also, e.g., O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 U.S. Dist. LEXIS 113809, at *100 (D.N.J. Aug. 9, 2012) ("Incentive awards are 'important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff'" (citation omitted)); *Hall*, 274 F.R.D. at 173-174 (approving incentive award of $5,000.00 per named plaintiff); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) ("If the named plaintiff was deposed, the named plaintiff's incentive payment will be $5,000; if the named plaintiff was not deposed, the named plaintiff's incentive payment will be $2,500"); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 245 (E.D. Pa. 2009) (incentive award of between $5,000.00 and $10,500.00 where named plaintiffs prepared for and testified in depositions that exposed their private financial affairs, participated in

request that the Court award service payments in the amounts listed above for their invaluable service on behalf of the Class.

## VI.    CONCLUSION

For the reasons stated above, Class counsel respectfully request that the Court grant their motion for an award of attorneys' fees and litigation costs, and for service awards to the named Plaintiffs.


Dated:  August 29, 2014                ROSENTHAL, MONHAIT & GODDESS, P.A.

By:   */s/ Jeffrey S. Goddess*
            Jeffrey S. Goddess

Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
**ROSENTHAL, MONHAIT & GODDESS, P.A.**
919 Market Street, Suite 1401
Wilmington, DE  19899-1070
Telephone:  (302) 656-4433
Facsimile:  (302) 658-7567

Jonathan D. Selbin
Jason L. Lichtman
Daniel R. Leathers
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

---

preparing responses to interrogatories, and produced extensive documents); *Godshall v. Franklin Mint Co.*, No. 01-cv-6539, 2004 U.S. Dist. LEXIS 23976, at *19? (E.D. Pa. Dec. 1, 2004) (granting special award of $20,000 to each named plaintiff for their work as class representatives).

David P. Meyer
Matthew R. Wilson
Michael J. Boyle, Jr.
**MEYER WILSON, CO., LPA**
1320 Dublin Road, Ste. 100,
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs and the Certified Class*